COOLEY LLP
MAZDA K. ANTIA (214963)
(mantia@cooley.com)
JEANNE L. DETCH (296160)
(jdetch@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Phone: (858) 550-6000
Fax: (858) 550-6420

MATTHEW D. CAPLAN (260388)
(mcaplan@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111
Phone: (415) 693-2000
Fax: (415) 693-2222

*Attorneys for Defendants Cigna Corporation,
Cigna Health and Life Insurance Co., Connecticut
General Life Insurance Co., Cigna Behavioral
Health, Inc., Cigna Behavioral Health of California,
Inc., Cigna Health Management, Inc., and Cigna
Healthcare of California, Inc.*

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TML RECOVERY, LLC, a California limited liability company, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION, a Delaware corporation, *et al.*,<br><br>Defendants. | Case No. 8:20-cv-0269-DOC-JDE<br><br>Consolidated with the following cases for pretrial proceedings:<br><br>8:20-cv-0271   8:20-cv-0274<br>8:20-cv-0272   8:20-cv-0787<br>8:20-cv-0273   8:20-cv-0788<br><br>**CIGNA'S NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed concurrently with Declaration of Emily Russell and [Proposed] Order<br><br>**Hearing:**<br>Judge:   Hon. David O. Carter<br>Date:    July 27, 2020<br>Time:    8:30 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 27, 2020, at 8:30 a.m. in the above-captioned Court, located in the Ronald Reagan Federal Building, United States Courthouse, 411 West Fourth Street, Courtroom 9D, Santa Ana, California, 92701-4516, Defendants Cigna Corporation, Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, Cigna Behavioral Health, Inc., Cigna Behavioral Health of California, Inc., Cigna Health Management, Inc., and Cigna Healthcare of California, Inc. (collectively, "Cigna") will and do move the Court to dismiss Consolidated First Amended Complaint (the "Complaint," Dkt. 20) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

All counts should be dismissed for failure to state a claim.  Counts 1 through 3 should be dismissed with prejudice to the extent they relate to non-assignable plans. Counts 4 through 7 should be dismissed in their entirety and with prejudice.

This motion is based on this Notice of Motion, Motion, and Memorandum of Points and Authorities, the Declaration of Emily Russell and the attached exhibits, any evidence or argument presented at the hearing, and all papers on file with the Court. This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 26, 2020.

Dated: June 3, 2020

Respectfully submitted,

COOLEY LLP

*/s/ Mazda K. Antia*
Mazda K. Antia

*Attorneys for Defendants Cigna Corporation, Cigna Health and Life Insurance Co., Connecticut General Life Insurance Co., Cigna Behavioral Health, Inc., Cigna Behavioral Health of California, Inc., Cigna Health Management, Inc., and Cigna Healthcare of California, Inc.*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................ 1

II.  BACKGROUND ................................................................................. 2

III. THE COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF. ............. 3

   A.   Plaintiffs Improperly Aggregate Claims and Defendants. ......................... 4

   B.   The Claims for Breach of ERISA Plan Fail (Count 1). ........................... 5

      1.   Plaintiffs Fail to Plead the Relevant Plans and Terms. ................. 5

      2.   Plaintiffs Fail to Plead Any Plausible Breach. .............................. 7

      3.   Plaintiffs Fail to Plead Exhaustion for Each Claim. ...................... 8

      4.   Plaintiffs Do Not Adequately Allege the Assignments
           and Lack Standing to Assert Claims Related to Plans
           with Anti-Assignment Provisions. .................................................. 9

   C.   Counts 4 Through 7 Are Preempted to the Extent They Relate
        to Individuals with ERISA Plans. ............................................................. 10

   D.   The Claims for Breach of Written Contract Fail (Count 2). ................... 12

      1.   Plaintiffs Fail to Plead the Relevant Plan Terms. ........................ 12

      2.   Plaintiffs Fail to Plead Any Plausible Breach. ........................... 13

      3.   Plaintiffs Are Not Third-Party Beneficiaries of the Plans. ........... 14

      4.   Plaintiffs Do Not Adequately Allege the Assignments
           and Lack Standing to Assert Claims Related to Plans
           with Anti-Assignment Provisions. .................................................. 15

   E.   The Claims for Bad Faith Fail (Count 3). ................................................. 16

   F.   The Claims for Breach of Implied Contract Fail (Count 4). ................... 18

      1.   Plaintiffs Are Not Entitled to Implied-in-Fact Recovery. ........... 18

      2.   Plaintiffs Are Not Entitled to Implied-in-Law Recovery. ........... 20

   G.   The Claims for Breach of Oral Contract Fail (Count 5). ....................... 22

   H.   The Claims for Promissory Estoppel Fail (Count 6). ............................. 23

**CIGNA'S NOTICE & MOTION TO DISMISS;
MEMORANDUM OF POINTS & AUTHORITIES**

**TABLE OF CONTENTS**
**(continued)**

I.    The Claims for Unfair Competition Fail (Count 7). ...............................25

      1.    Plaintiffs Can Only Assert Their Own Claims. ...........................25

      2.    Plaintiffs Have an Adequate Remedy at Law...............................25

      3.    Plaintiffs Cannot Recover Damages............................................26

      4.    Plaintiffs Cannot Plead an "Unfair" Violation. ...........................27

      5.    Plaintiffs Cannot Plead a "Fraudulent" Violation. ......................28

      6.    Plaintiffs Have Not Pled an "Unlawful" Violation. ....................29

IV.   CONCLUSION ...............................................................................29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*ABC Services Group, Inc. v. Health Net of Cal.*,
    2020 WL 2121372 (C.D. Cal. May 4, 2020) (Carter, J.) .................... 11, 12, 13, 18

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ............................................................................... 11

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
    99 F. Supp. 3d 1110 (C.D. Cal. 2015) ................................................... 25

*Amalgamated Transit Union, Local 1756 v. Superior Court*,
    46 Cal. 4th 993 (2009) .......................................................................... 25

*Amato v. Bernard*,
    618 F.2d 559 (9th Cir. 1980) .................................................................. 8

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ *passim*

*B.R. v. Beacon Health Options*,
    2017 WL 5665667 (N.D. Cal. Nov. 27, 2017) ................................... 7, 21

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254 (1992) .......................................................................... 26

*Bates v. Blue Shield of Cal.*,
    2019 WL 2177641 (C.D. Cal. May 17, 2019) (Carter, J.) ....................... 7

*Baugh v. CBS, Inc.*,
    828 F. Supp. 745 (N.D. Cal. 1993) ........................................................ 27

*Bautista v. Los Angeles Cnty.*,
    216 F.3d 837 (9th Cir. 2000) .................................................................. 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................ 3

1
2

# TABLE OF AUTHORITIES
## (Continued)

3
4

*Bell v. Blue Cross of Cal.*,
  131 Cal. App. 4th 211 (2005) ...................................................................... 21, 22

5
6

*Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross Blue Shield of Ill.*,
  2019 WL 2568343 (C.D. Cal. June 20, 2019) ................................................ 10

7

*Buss v. Superior Court*,
  16 Cal. 4th 35 (1997) ..................................................................................... 24

8
9

*Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc.*,
  1 Cal. 5th 994 (2016) ..................................................................................... 14

10
11

*Yvanova v. New Century Mortg. Corp.*,
  62 Cal. 4th 919 (2016) ................................................................................... 24

12
13

*Cal. Emergency Physicians Med. Grp. v. PacifiCare of Cal.*,
  111 Cal. App. 4th 1127 (2003) ................................................................. 14, 15

14
15

*Cal. Grocers Ass'n v. Bank of Am.*,
  22 Cal. App. 4th 205 (1994) .................................................................... 20, 23

16
17

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  94 Cal. App. 4th 151 (2001) .......................................................................... 19

18
19

*Cal. Surgical Inst., Inc. v. Aetna Life & Cas. (Bermuda) Ltd.*,
  2019 WL 1581415 (C.D. Cal. Feb. 6, 2019) .................................................. 16

20

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990) .................................................................. 16, 17

21
22

*Carlin v. DairyAmerica, Inc.*,
  978 F. Supp. 2d 1103 (E.D. Cal. 2013) ......................................................... 28

23
24

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.*,
  2017 WL 6030260 (C.D. Cal. Nov. 27, 2017) .............................. 14, 19, 21, 23, 24

25
26

*Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*,
  118 F. Supp. 2d 1002 (C.D. Cal. 2000) ......................................................... 18

27
28

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ................................................................................... 27

iv

1

2

## TABLE OF AUTHORITIES
### (Continued)

3

4

*Cleghorn v. Blue Shield of Cal.*,
408 F.3d 1222 (9th Cir. 2005) ................................................................ 10, 11

5

6

*Corazon v. Aurora Loan Servs., LLC*,
2011 WL 1740099 (N.D. Cal. May 5, 2011) ........................................... 5

7

8

*Davidowitz v. Delta Dental Plan of Cal., Inc.*,
946 F.2d 1476 (9th Cir. 1991) ............................................................. 9, 16

9

*Day v. AT&T Corp.*,
63 Cal. App. 4th 325 (1998) ................................................................. 27

10

11

*Day v. AT&T Disability Income Plan*,
698 F.3d 1091 (9th Cir. 2012) ............................................................... 5

12

13

*DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*,
852 F.3d 868 (9th Cir. 2017) ................................................................ 10

14

15

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ................................................................ 11

16

17

*Diaz v. United Agrc. Emp. Welfare Benefit Plan & Tr.*,
50 F.3d 1478 (9th Cir. 1995) ................................................................. 8

18

19

*Div. of Labor Law Enf't v. Transpacific Transp. Co.*,
69 Cal. App. 3d 268 (1977) .................................................................. 20

20

*Doe One v. CVS Pharmacy, Inc.*,
348 F. Supp. 3d 967 (N.D. Cal. 2018) ............................................. 5, 6, 7

21

22

*Dougherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ............................................................... 29

23

24

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*,
2016 WL 6892140 (C.D. Cal. Nov. 22, 2016) (Carter, J.) ...................... 9

25

26

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ............................................................. 28

27

28

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) ...................................... 26

CIGNA'S NOTICE & MOTION TO DISMISS;
MEMORANDUM OF POINTS & AUTHORITIES

1
2

# TABLE OF AUTHORITIES
## (Continued)

3
4

*Eden Surgical Ctr. v. B. Braun Med., Inc.*,
  420 F. App'x 696 (9th Cir. 2011)..................................................................... 10

5
6

*Flores v. EMC Mortg. Co.*,
  997 F. Supp. 2d 1088 (E.D. Cal. 2014) .......................................................... 29

7
8

*Fontenot v. Wells Fargo Bank, N.A.*,
  198 Cal. App. 4th 256 (2011)......................................................................... 24

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,
  2011 WL 2748724 (N.D. Cal. July 13, 2011) ................................................. 6

9
10

*In re Gilead Sciences Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ......................................................................... 4

11
12

*Glendale Outpatient Surgery Center v. United HealthCare Services Inc.*,
  2019 WL 8888246 (C.D. Cal. Apr. 2, 2019) .................................................. 4

13
14

*Glendale Outpatient Surgery Center v. United HealthCare Services Inc.*,
  2019 WL 8888305 (C.D. Cal. Mar. 26, 2019) ............................................... 4

15
16

*Glendale Outpatient Surgery Ctr. v. United Healthcare Servs., Inc.*,
  2020 WL 2537317 (9th Cir. May 19, 2020)....................................... 4, 6, 7, 8

17
18

*Gorlach v. Sports Club Co.*,
  209 Cal. App. 4th 1497 (2012) ...................................................................... 18

19
20

*Grenell v. UPS Health & Welfare Package*,
  390 F. Supp. 2d 932 (C.D. Cal. 2005)............................................................. 8

21
22

*IV Sols., Inc. v. Conn. Gen. Life Ins. Co.*,
  2015 WL 12843822 (C.D. Cal. Jan. 29, 2015)............................................... 27

23
24

*IV Sols., Inc. v. United HealthCare Servs., Inc.*,
  2017 WL 6372488 (C.D. Cal. Sept. 27, 2017)............................................... 20

25
26

*Jones v. Aetna Cas. & Surety Co.*,
  26 Cal. App. 4th 1717 (1994) ........................................................................ 15

27
28

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ....................................................................... 29

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

3

4

*Kent v. Microsoft Corp.*,
   2013 WL 3353875 (C.D. Cal. July 1, 2013) (Carter, J.) ........................ 14

5

6

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1143 (2003) ................................................................25, 27

7

8

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ................................................................ 27

9

*Long Beach Mem'l Med. Ctr. v. Cal. Mart Emp. Benefit Plan*,
   172 F.3d 57 (9th Cir. 1999) .................................................................... 10

10

11

*Love v. Fire Ins. Exchange*,
   221 Cal. App. 3d 1136 (1990) .........................................................16, 17

12

13

*Manlin v. Ocwen Loan Servicing, LLC*,
   2018 WL 3326656 (C.D. Cal. June 5, 2018) ........................................... 13

14

15

*Med. Instrument Dev. Labs. v. Alcon Labs.*,
   2005 WL 1926673 (N.D. Cal. Aug. 10, 2005) ........................................ 28

16

17

*Miron v. Herbalife Int'l, Inc.*,
   11 F. App'x 927 (9th Cir. 2001) ............................................................. 13

18

19

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. July 14, 2016) .................................... 26

20

21

*Mountain View Surgical Ctr. v. Cigna Health Corp.*,
   2013 WL 6491159 (C.D. Cal. Dec. 10, 2013) ...................................19, 20

22

*Mullins v. Premier Nutrition Corp.*,
   2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ........................................... 26

23

24

*Neumann v. Allstate Ins. Co.*,
   638 F. App'x 619 (9th Cir. 2016) ........................................................... 12

25

26

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   781 F. Supp. 2d 926 (N.D. Cal. 2011) .................................................... 14

27

28

*Ochs v. PacifiCare of Cal.*,
   115 Cal. App. 4th 782 (2004) ...........................................................15, 24

CIGNA'S NOTICE & MOTION TO DISMISS;
MEMORANDUM OF POINTS & AUTHORITIES

1
2

# TABLE OF AUTHORITIES
## (Continued)

3
4
*Opsal v. United Servs. Auto. Ass'n*,
  2 Cal. App. 4th 1197 (1991) ............................................................ 17

5
6
*Orthopedic Specialists of So. Cal. v. Cal. Pub. Emps. Ret. Sys.*,
  228 Cal. App. 4th 644 (2014) .................................................. 18, 22

7
8
*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
  12 Cal. App. 5th 200 (2017) ........................................ 19, 20, 23, 24

9
*Philips v. Ford Motor Co.*,
  2015 WL 4111448 (N.D. Cal. July 7, 2015) ................................. 26

10
11
*Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*,
  2017 WL 4340272 (E.D. Cal. Sept. 29, 2017) ...................... 15, 28, 29

12
13
*Raygoza v. ConAgra Foods, Inc. Welfare Benefit Wrap Plan*,
  2016 WL 9454419 (C.D. Cal. Nov. 4, 2016) .................................. 7

14
15
*Redlands Country Club Inc. v. Cont'l Cas. Co.*,
  2011 WL 13224843 (C.D. Cal. Jan. 28, 2011) .............................. 17

16
17
*Romero v. Countrywide Bank, N.A.*,
  740 F. Supp. 2d 1129 (N.D. Cal. 2010) ......................................... 5

18
19
*Salone v. Bank of Am., N.A.*,
  2018 WL 3815041 (C.D. Cal. June 22, 2018) .............................. 24

20
21
*San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*,
  213 Cal. App. 4th 418 (2013) ...................................................... 19

22
*Searles Valley Mineral Operations Inc. v. Ralph M. Parsons Serv. Co.*,
  191 Cal. App. 4th 1394 (2011) .................................................... 18

23
24
*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
  2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) .............................. 26

25
26
*Simi Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*,
  2018 WL 6332285 (C.D. Cal. Jan. 4, 2018) ............................ 4, 6, 7

27
28
*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
  770 F.3d 1282 (9th Cir. 2014) ..................................................... 9

CIGNA'S NOTICE & MOTION TO DISMISS;
MEMORANDUM OF POINTS & AUTHORITIES

**TABLE OF AUTHORITIES**
**(Continued)**

*Stockton Mortg., Inc. v. Tope*,
233 Cal. App. 4th 437 (2014) ...................................................................... 22

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
83 F. Supp. 3d 855 (N.D. Cal. 2015) ........................................................... 19

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*,
520 F. Supp. 2d 1184 (C.D. Cal. 2007) ....................................................... 18

*The H.N. & Frances C. Berger Found. v. Perez*,
218 Cal. App. 4th 37 (2013) ........................................................................ 14

*TML Recovery, LLC v. Humana Inc.*,
2018 WL 8806104 (C.D. Cal. Nov. 26, 2018) ................................ 13, 19, 23, 24

*TomTom Int'l, B.V. v. Broadcom Corp.*,
2015 WL 1608621 (C.D. Cal. Apr. 9, 2015) ............................................... 28

*Total Recall Techs. v. Luckey*,
731 F. App'x 706 (9th Cir. 2018) ................................................................ 17

*U.S. Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013) ......................................................................................... 5

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ......................................................................... 9

*US Ecology, Inc. v. State of Cal.*,
129 Cal. App. 4th 887 (2005) ...................................................................... 25

*US Ecology, Inc. v. State of Cal.*,
92 Cal. App. 4th 113 (2005) .................................................................. 20, 23

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
546 F.3d 620 (9th Cir. 2008) ........................................................................ 8

*Wal-Noon Corp. v. Hill*,
45 Cal. App. 3d 605 (1975) ......................................................................... 19

*Wall St. Network, Ltd. v. N.Y. Times Co.*,
164 Cal. App. 4th 1171 (2008) .................................................................... 12

ix

1

**TABLE OF AUTHORITIES**
**(Continued)**

2

3

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
   178 F. Supp. 2d 1099 (C.D. Cal. 2001) ................................................. 27

4

5

*In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) ................................................. 25

6

7

*Zepeda v. PayPal, Inc.*,
   777 F. Supp. 2d 1215 (N.D. Cal. 2011) ................................................. 17

8

9

**Federal Statutes & Rules**

10

Employee Retirement Income Security Act of 1974
   Section 502(a) ................................................................................ 10
   Section 514(a) ......................................................................... 10, 11
   29 U.S.C. § 1132(a)(1) ...................................................................... 9

11

12

13

Federal Rules of Civil Procedure
   Rule 8 ....................................................................................... 4, 5
   Rule 9(b) ...................................................................................... 29
   Rule 12(b)(6) ................................................................................. 3

14

15

16

**California Statutes & Regulations**

17

California Business & Professions Code
   § 17200 .................................................................................. 25, 27
   § 17203 ....................................................................................... 26
   § 17204 ....................................................................................... 25

18

19

20

California Civil Code
   § 1550 .................................................................................. 20, 23
   § 1559 ....................................................................................... 15
   § 1621 ....................................................................................... 19

21

22

23

California Insurance Code
   § 10133.5 ..................................................................................... 21

24

25

California Code of Regulations
   Tit. 10 § 2240.1 ......................................................................... 21, 22

26

27

28

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

3

**Other Authorities**

4

Rutter Group, California Practice Guide: Civil Procedure Before Trial,
    Claims and Defenses Ch. 9 § 9:581 (2019)............................................................ 16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2          Despite receiving and accepting payment for services they allegedly provided to

3    Cigna's members, Plaintiffs want more money.  Their claims are inadequately pled and

4    legally defective.  Plaintiffs, a collection of nine separate non-contracted substance use

5    disorder treatment and clinical laboratory service providers, have sued nine different

6    Defendants for claims related to more than 500 individual patients.  Plaintiffs allege

7    essentially two theories: (1) the terms of the patients' plans required more payment,

8    and (2) Defendants agreed to pay more.  However, Plaintiffs plead these claims only

9    generally and in conclusory terms, without providing facts to make it plausible that they

10   are entitled to further payment for any of the claims at issue.  These allegations do not

11   satisfy federal pleading standards, fail as a matter of law, and should be dismissed.

12         First, the Complaint improperly lumps together transactions related to hundreds

13   of different patients, and general allegations against "Defendants," without identifying

14   the facts for each transaction or which of the nine Defendants supposedly did what.

15   The Ninth Circuit recently affirmed a *sua sponte* dismissal of similar allegations, stating

16   that such allegations ***cannot*** give rise to a reasonable inference that the insurer is liable.

17   This pleading defect permeates the Complaint and the hundreds (or thousands) of claims

18   it asserts.

19         Second, Plaintiffs' claims for plan benefits under ERISA—*i.e.*, breach of ERISA

20   plan (Count 1)—fail because the Complaint does not identify the relevant ERISA plans

21   or specific plan terms, does not plausibly plead breach, and fails to plead the mandatory

22   exhaustion of remedies for each claim.  Moreover, Plaintiffs have standing to raise these

23   claims only if the patients validly assigned them to Plaintiffs.  But Plaintiffs plead the

24   assignments only in conclusory terms, and many of the plans contain express anti-

25   assignment provisions that invalidate any assignments under binding Ninth Circuit law.

26   All claims governed by non-assignable plans should be dismissed with prejudice.

27         Third, Plaintiffs' state-law claims for breach of implied contract, breach of oral

28   contract, promissory estoppel, and unfair competition (Counts 4 through 7) should be

dismissed with prejudice because—as this Court recently ruled in a similar case—the state-law claims are preempted to the extent they relate to individuals with ERISA plans because they are premised on the same conduct as the ERISA claims—*i.e.*, the alleged wrongful denial of benefits.

Fourth, each of the state-law claims also fails to state a claim for relief. The claims for breach of written contract and bad faith (Counts 2 and 3) fail for essentially the same reasons the ERISA claims do—*i.e.*, the Complaint only generally alleges the relevant terms and fails to plausibly plead breach, Plaintiffs do not plausibly plead that they are intended third-party beneficiaries or assignees, and they lack standing to the extent the plans contain anti-assignment provisions. All claims related to non-assignable plans should be dismissed with prejudice. The claims for breach of implied contract, breach of oral contract, and promissory estoppel (Counts 4 through 6) should be dismissed with prejudice, as they are premised on preauthorization and verification communications, which are not enforceable promises to pay. Finally, the claims for unfair competition (Count 7) should be dismissed with prejudice because Plaintiffs only have standing to raise their own claims, have an adequate remedy at law, and cannot seek damages disguised as restitution, and have not—and cannot—state facts sufficient to support these claims.

## II.  BACKGROUND[1]

According to Plaintiffs, after verifying benefits and obtaining prior authorization, they provided "medically necessary . . . and covered" substance use disorder treatment and laboratory services to 508 individuals who were covered under health benefit plans issued or administered by Defendants. (¶ 23.) Plaintiffs were "out-of-network" (¶ 23), meaning that they had not contracted with Defendants and had not "agreed to accept any pre-negotiated contract rates." (¶ 194.) Plaintiffs claim they are assignees and

---

[1] "¶" refers to the paragraphs of the Complaint (Dkt. 20). "Dkt." refers to the docket in Case No. 8:20-cv-0269. "Russell Decl." refers to the Declaration of Emily Russell filed with this motion.

third-party beneficiaries of the individuals' plans (¶¶ 147, 159), but the Complaint does not quote the language that purportedly gives Plaintiffs standing to raise these claims.

Plaintiffs claim Defendants paid them less than the amount they are "owed under the plans and the law" to the tune of "millions" (¶ 29), and assert claims for (1) plan benefits under ERISA, (2) breach of written contract, (3) breach of the implied covenant of good faith and fair dealing, (4) breach of implied contract, (5) breach of oral contract, (6) promissory estoppel, and (7) unfair competition (¶¶ 144–219). However, Plaintiffs do not allege the specific plans, terms, or services at issue, and instead offer only a generalized assertion as to the alleged effects of all 508 plans. (¶ 25.) Plaintiffs argue that Defendants were obligated to pay them "100% of covered charges" (¶ 42), which they refer to elsewhere as "their fully billed charges" (¶¶ 136–137),[2] and which they describe as being "substantially more than the contracted rates agreed to by an in-network provider" (¶ 197), because of a purported "network gap"—*i.e.*, a lack of in-network providers—that Plaintiffs believe existed "at all times" (¶ 42).

## III.   THE COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. The plaintiff must plead an entitlement to relief beyond mere labels and conclusions. *See Twombly*, 550 U.S. at 555–57. Unlike

---

[2] Plaintiffs' previous complaints alleged the same underpayments but referred to the amounts they believe they are owed as their "billed charges" or "fully billed charges." *Compare, e.g.*, Case. No. 8:20-cv-0271, Dkt. 1-1 ¶ 17 (MMR Services, LLC was paid "a mere 18.9% of its **billed charges**") *with* Dkt. 20 ¶ 51 (MMR Services, LLC was paid "a mere 18.9% of its **covered charges**").

proper factual allegations, conclusory statements, unwarranted deductions of fact, and unreasonable inferences are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681; *see also In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Complaint does not comply with these standards and should be dismissed.

### A.   Plaintiffs Improperly Aggregate Claims and Defendants.

Plaintiffs assert seven causes of action related to 508 individuals with different health plans, which arise from unidentified benefit denials, underpayments, or other alleged misconduct that Plaintiffs attribute generally to "Defendants." (*E.g.*, ¶¶ 24–29.) These allegations fail for at least two reasons.

First, Plaintiffs lump together transactions related to more than 500 individual patients, without providing details regarding how or why the hundreds or thousands of transactions at issue supposedly support a claim for relief. This manner of pleading is inadequate because where multiple, independent claims are aggregated in a single case, a plaintiff may not rely on group pleading as Plaintiffs attempt to do here:

> Each plaintiff's right to relief . . . depends upon proof of the operative facts giving rise to an enforceable right in favor of that plaintiff. . . . To comply with Rule 8 each plaintiff must plead a short and plain statement of the elements of his or her claim, ***identifying the transaction or occurrence giving rise to the claim*** and the elements of the prima facie case.

*Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000).[3]

Indeed, the Ninth Circuit recently affirmed a *sua sponte* dismissal of a case where a single health care provider similarly lumped together insurance claims against two defendants related to only 40 or so patients. *See Glendale Outpatient Surgery Ctr. v. United Healthcare Servs., Inc.*, 2020 WL 2537317, at *1 (9th Cir. May 19, 2020).[4] As the Ninth Circuit put it: "Such allegations ***cannot*** give rise to a reasonable inference that the insurer is liable . . . ." *Id.*; *see Simi Surgical Ctr., Inc. v. Conn. Gen. Life Ins.*

---

[3] Throughout this brief, internal quotation marks and brackets have been omitted, text has been cleaned up, and quoted text has been emphasized without further notation.

[4] The underlying decisions are *Glendale Outpatient Surgery Center v. United Health-Care Services Inc.*, 2019 WL 8888305 (C.D. Cal. Mar. 26, 2019) and *Glendale Outpatient Surgery Center v. United HealthCare Services Inc.*, 2019 WL 8888246 (C.D. Cal. Apr. 2, 2019).

*Co.*, 2018 WL 6332285, at *3 (C.D. Cal. Jan. 4, 2018) (dismissing group-pled benefits claims with prejudice, and noting that "there could be 100 different plans at issue, and thus 100 different plan sponsors and terms").  The allegations in this case are far worse, as this case involves claims by nine separate Plaintiffs against nine different Defendants for claims involving more than 500 patients.

Second, Plaintiffs assert all claims and allegations against all "Defendants" as a group (*e.g.*, ¶¶ 24–28), depriving each of them a fair and meaningful opportunity to defend itself. *See Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 979 (N.D. Cal. 2018) (noting, in an ERISA case, that the "prohibition against group pleading" applies not only to fraud, but to the "general pleading standard" under Rule 8); *Corazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because it fails to provide Aurora with fair notice of its alleged misconduct."); *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129, 1136 (N.D. Cal. 2010) (similar undifferentiated allegations were "insufficient to meet the 'showing' requirement of Rule 8," and "deprive[d] each individual party of a fair and meaningful opportunity to defend itself").  It is impossible to determine what each Defendant is accused of doing.

## B.    The Claims for Breach of ERISA Plan Fail (Count 1).

In Count 1, Plaintiffs assert claims for plan benefits under ERISA—*i.e.*, breach of ERISA plan—related to 508 different individual patients and plans.  (¶¶ 144–157.) These claims fail because the Complaint does not plausibly plead the elements of an ERISA claim or Plaintiffs' standing to raise these claims, and Plaintiffs lack standing to the extent these claims relate to plans that contain anti-assignment provisions.  All claims governed by non-assignable plans should be dismissed with prejudice.

### 1.    Plaintiffs Fail to Plead the Relevant Plans and Terms.

ERISA's statutory scheme is "built around reliance on the face of written plan documents."  *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013); *Day v.*

*AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) ("We begin with the relevant portions of the Plan . . . ."). Thus, to state an ERISA claim for benefits, Plaintiffs must "allege plausible facts showing they were owed benefits under the Plan." *Doe One*, 348 F. Supp. 3d at 992. At minimum, this requires plaintiffs to (1) adequately allege "the existence of an ERISA plan," and (2) identify "a specific plan term that confers the benefit in question." *Id.* at 992–93. Plaintiffs' claims fall short on both requirements.

Regarding the existence of ERISA plans, Plaintiffs say only that they assert their claims in connection with "services rendered to the 508 insureds with a health benefits plan governed by ERISA." (¶ 147.) These allegations are inadequate because they do not make it possible to "ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits" for each plan at issue. *See Simi Surgical Ctr.*, 2018 WL 6332285, at *3 ("there could be 100 different plans at issue, and thus 100 different sponsors and terms"); *see also Glendale Outpatient Surgery Ctr.*, 2020 WL 2537317, at *1 ("Such allegations cannot give rise to a reasonable inference that the insurer is liable . . . ."); *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) (rejecting a provider's bare allegations that the plans "include employee welfare benefit plans covered by ERISA," and stating that these deficiencies "mandate the dismissal of the ERISA cause of action").

Regarding the specific plan terms that supposedly confer the benefit in question, Plaintiffs allege generally that the 508 plans pay benefits for various "out-of-network substance use disorder treatment and laboratory services . . . at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts . . . )) until the insured's nominal out-of-pocket maximum is met at which time Defendants pay 100%," and that "[t]he plans also pay 100% of covered charges in the event of a . . . network gap for the services received." (¶ 25.)

These allegations are inadequate because they are nothing more than conclusions and generalizations about the terms of hundreds of plans as a group, which "cannot give rise to a reasonable inference that the insurer is liable." *Glendale Outpatient Surgery Ctr.*, 2020 WL 2537317, at *1; *see also, e.g.*, *Bates v. Blue Shield of Cal.*, 2019 WL 2177641, at *3 (C.D. Cal. May 17, 2019) (Carter, J.) (rejecting "vague and conclusory" plan-term allegations in an ERISA case); *Simi Surgical Ctr.*, 2018 WL 6332285, at *3 (dismissing provider's claim because the allegations did not identify for "each plan" the terms that (1) "provide coverage for each of the procedures at issue"; and (2) "dictate that those covered services would be paid according to a specific reimbursement rate . . . which must be specified"); *Raygoza v. ConAgra Foods, Inc. Welfare Benefit Wrap Plan*, 2016 WL 9454419, at *5 (C.D. Cal. Nov. 4, 2016) ("[A] plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question.").

### 2.   Plaintiffs Fail to Plead Any Plausible Breach.

In addition to failing to allege the relevant plans and terms, the Complaint also fails to set forth plausible facts showing that Plaintiffs are owed benefits under the plans. *See Doe One*, 348 F. Supp. 3d at 992 (dismissing claim for ERISA benefits because the plaintiff did not plausibly show entitlement to benefits); *see also B.R. v. Beacon Health Options*, 2017 WL 5665667, at *1–4 (N.D. Cal. Nov. 27, 2017) (same).

Plaintiffs claim Defendants paid only a percentage of their "***covered charges***." (¶¶ 44, 51, 58, 65, 72, 79, 86, 93, 100.)  That argument, however, relies on a series of unsupported assertions as to what Plaintiffs believe they are entitled to be paid and why. Plaintiffs claim they provided "***medically necessary . . . and covered***" services to 508 individuals insured "***by Defendants***" (¶ 23), and that Plaintiffs are "***owed under the plans and the law***" (¶ 29) because "***at all times***" there was supposedly a "***network gap***" that purportedly required Defendants to pay "***100% of covered charges***" (¶ 25), which Plaintiffs also refer to as their "***fully billed charges***" (¶¶ 136–137), and which they describe as being "***substantially more*** than the contracted rates agreed to by an in-

network provider" (¶ 197).  Plaintiffs also recite a list of statutes and regulations, and simply assert that "Defendants . . . have failed to process Plaintiffs' claims in a manner consistent with ERISA." (¶ 153.)  However, there are no facts alleged to support these claims.  These generalized, conclusory assertions do not plausibly suggest that Plaintiffs were paid less than they were owed for any of the hundreds or thousands of transactions at issue.  *See Iqbal*, 556 U.S. at 678–80; *Glendale Outpatient Surgery Ctr.*, 2020 WL 2537317, at *1 (such allegations "cannot give rise to a reasonable inference that the insurer is liable").

### 3.    Plaintiffs Fail to Plead Exhaustion for Each Claim.

The Ninth Circuit has "consistently held that before bringing suit . . . , an ERISA plaintiff claiming a denial of benefits must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008).  The administrative exhaustion doctrine reinforces Congress's requirement that employee benefit plans provide an administrative process for denied claims, which serve to "reduce the number of frivolous lawsuits," "promote the consistent treatment of claims for benefits," "provide a nonadversarial method of claims settlement," and "minimize the costs of claims settlement." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980).

For all claims related to all 508 individuals, Plaintiffs allege in a single sentence that they both "exhausted their administrative remedies" and that exhaustion would be futile. (¶ 152.)  These generalized allegations are inadequate because they are nothing more than legal conclusions; they do not plead exhaustion for each claim. *See Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1485 (9th Cir. 1995) ("[B]are assertions of futility are insufficient to bring a claim within the futility exception . . . ."); *Grenell v. UPS Health & Welfare Package*, 390 F. Supp. 2d 932, 935–36 (C.D. Cal. 2005) (rejecting similar allegations that any attempt "to file further appeals, or to perfect additional or new claims, would have met with the same result: denial").

### 4.    Plaintiffs Do Not Adequately Allege the Assignments and Lack Standing to Assert Claims Related to Plans with Anti-Assignment Provisions.

Only an ERISA "participant or beneficiary" can assert a claim to recover ERISA plan benefits.  29 U.S.C. § 1132(a)(1).  Providers like Plaintiffs are not "participants" or "beneficiaries," so their standing, if any, is purely derivative of their patients' rights. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) ("[A] nonparticipant health care provider . . . cannot bring claims for benefits on its own behalf.  It must do so derivatively, relying on its patients' assignment of their benefits claims.").[5]

Plaintiffs have not adequately alleged ERISA standing.  Plaintiffs argue that they obtained assignments "from each of the 508 insureds at issue" that assigned "not only rights to payment of claims but to assert all rights and causes of action . . . in connection with such claims."  (¶ 26.)  But the Complaint does not quote or attach the assignments for any of the nine Plaintiffs or 508 patients, making it impossible to ascertain what, if anything, was assigned.  *See Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2016 WL 6892140, at *3 (C.D. Cal. Nov. 22, 2016) (Carter, J.) (noting, when ruling on a motion to dismiss, that "the first question is whether Plaintiffs were assigned the rights they now seek to vindicate," and that "[t]he Court *must* look to the contracts").

Moreover, many of the plans at issue contain express anti-assignment clauses that prohibit the assignment of plan benefits and ERISA claims.[6]  (Russell Decl. ¶¶ 3–4 & Exhibit A.)  Binding Ninth Circuit precedent provides that these provisions are valid and enforceable.  *See Spinedex*, 7770 F.3d at 1296 ("Anti-assignment clauses in ERISA plans are valid and enforceable."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946

---

[5] As this Court observed in an earlier case, ERISA standing is not jurisdictional, but a merits issue as to whether "that particular plaintiff has a cause of action under the statute." *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2016 WL 6892140, at *3 (C.D. Cal. Nov. 22, 2016).

[6] Because Plaintiffs seek relief under terms of plan documents, their claims necessarily incorporate by reference the plans at issue. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (such documents are treated as part of the complaint, and their contents are assumed to be true).

F.2d 1476, 1481 (9th Cir. 1991) ("ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan."); *Long Beach Mem'l Med. Ctr. v. Cal. Mart Emp. Benefit Plan*, 172 F.3d 57, 57 (9th Cir. 1999) (unpublished table decision) (similar); *Eden Surgical Ctr. v. B. Braun Med., Inc.*, 420 F. App'x 696, 697 (9th Cir. 2011) (similar).

For plans containing these provisions, any assignment Plaintiffs purportedly received is void, and Plaintiffs do not have standing to assert ERISA claims based on the non-assignable plans. These claims should be dismissed with prejudice. *See, e.g.*, *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 876 (9th Cir. 2017) ("The governing employee benefit plans contain non-assignment clauses that override any purported assignments."); *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross Blue Shield of Ill.*, 2019 WL 2568343, at *3 n.4 (C.D. Cal. June 20, 2019) ("[E]very Ninth Circuit decision . . . that has addressed [anti-assignment provisions] has found them to be enforceable.").

## C. Counts 4 Through 7 Are Preempted to the Extent They Relate to Individuals with ERISA Plans.

Plaintiffs assert ERISA claims related to all 508 individuals. (¶ 147.) In Counts 4 through 7, they assert state-law claims related to the same 508 individuals.[7] (¶¶ 190, 203, 210, 216.) Those claims are preempted and should be dismissed with prejudice.

"There are two strands to ERISA's powerful preemptive force. First, ERISA section 514(a) expressly preempts all state laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005). "Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. . . . A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of

---

[7] According to the Complaint, and as confirmed by Plaintiffs' counsel, Plaintiffs assert Counts 2 and 3 (breach of contract and bad faith) only as to non-ERISA plans.

action would not necessarily be preempted by section 514(a)." *Id.* (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4 (2004)).

For purposes of express preemption, state-law claims "relate to" an ERISA plan if they have a "reference to" or an "impermissible connection with" an ERISA plan. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019). A state-law cause of action "has a reference to an ERISA plan if it is premised on the existence of an ERISA plan or if the existence of the plan is essential to the claim's survival." *Id.* "A claim has an impermissible connection with an ERISA plan if it governs a central matter of plan administration or interferes with nationally uniform plan administration, or if it bears on an ERISA-regulated relationship." *Id.*

For purposes of conflict preemption, "[a] state cause of action that would fall within the scope of [ERISA's statutory] scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a)." *Cleghorn*, 408 F.3d at 1224. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore barred by conflict preemption." *Depot*, 915 F.3d at 667. "[A] state-law claim is not preempted if it reflects an attempt to remedy [a] violation of a legal duty independent of ERISA." *Id.* (citing *Davila*, 542 U.S. at 210, 214). "State-law claims are based on other independent legal duties when they are in no way based on an obligation under an ERISA plan and would exist whether or not an ERISA plan existed." *Id.*

Counts 4 through 7 are expressly and conflict preempted because they arise from Defendants' alleged failure to pay benefits under the terms of ERISA plans or otherwise are based on alleged procedural errors in administering the ERISA plans. This Court's decision in *ABC Services Group, Inc. v. Health Net of Cal.*, 2020 WL 2121372 (C.D. Cal. May 4, 2020) (Carter, J.) is directly on point. There, as in this case, an out-of-network substance use disorder treatment provider alleged claims for breach of ERISA

plan and related state-law contract and quasi-contract theories. *Id.* at *1–2. This Court ruled that the state-law claims were preempted to the extent they related to ERISA plans, and dismissed them with prejudice, because both sets of claims were premised on the same conduct—*i.e.*, the purported "wrongful denial of benefits." *Id.* at *4.

That is also the case here. In Count 4, Plaintiffs argue that prior authorization and verification of plan benefits formed an implied-in-fact contract to pay plan benefits (¶¶ 190–196), and that an implied-in-law contract required Defendants to pay "100% of covered charges" under the "plans at issue" (¶¶ 197–198). In Count 5, Plaintiffs argue that verification of plan benefits and prior authorization amounted to oral contracts to pay as required by the plans. (*Compare* ¶ 203 *with* ¶ 25.) In Count 6, Plaintiffs claim that prior authorization and verification of plan benefits were a promise to pay "on the same terms as provided for in the plans." (¶ 210.) In Count 7, Plaintiffs argue that the previously alleged "conduct" amounted to unfair competition. (¶ 216.) Elsewhere, Plaintiffs clarify that the "conduct" they refer to includes Defendants' "claims handling and processing obligations" (¶ 106) and an alleged failure to "provide the coverage mandated by the plans at issue" (¶ 111). As in *ABC*, these claims should be dismissed with prejudice.

### D.  The Claims for Breach of Written Contract Fail (Count 2).

In Count 2, Plaintiffs assert claims for breach of written contract. (¶¶ 158–177.) A breach claim requires allegations that plausibly show (1) the existence of a contract and its terms, (2) plaintiff's performance or excuse for nonperformance, (3) breach by defendant, and (4) that the breach caused the plaintiff's harm. *See Neumann v. Allstate Ins. Co.*, 638 F. App'x 619, 619 (9th Cir. 2016) (citing *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008)). This claim fails for reasons that parallel the ERISA claim analysis.

#### 1.  Plaintiffs Fail to Plead the Relevant Plan Terms.

Rather than allege specific plan terms, Plaintiffs allege the terms for all 508 plans generally. As discussed above in Part III.B.1, such generalized allegations do not plead

a contract under California law, any more than they do in the ERISA context.  *See, e.g.*, *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) (affirming dismissal of breach-of-contract claim because the plaintiffs "failed to allege any provision of the contract which supports their claim"); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) ("[A] plaintiff must, in actions involving breach of a written contract, allege the ***specific provisions*** in the contract creating the obligation the defendant is said to have breached."); *ABC Servs. Grp.*, 2020 WL 2121372, at *5 & n.3 (dismissing service provider's breach claim where it failed to "***specifically allege*** the contract terms," and noting that federal pleading standards apply to state-law claims filed in state court); *Manlin v. Ocwen Loan Servicing, LLC*, 2018 WL 3326656, at *4 (C.D. Cal. June 5, 2018) ("[A] plaintiff must allege the ***specific provisions*** in the contract . . . defendant is said to have breached.").

## 2.    Plaintiffs Fail to Plead Any Plausible Breach.

Plaintiffs also fail to plead any plausible breach.  Plaintiffs argue that they were paid only a percentage of their "***covered charges***" (¶ 25), after they supposedly provided "***medically necessary*** . . . ***and covered***" services (¶ 23), and that they are owed "***under the plans and the law***" (¶ 29) because a purported "***network gap***" (¶ 25) allegedly obligated Defendants to pay Plaintiffs "***100% of covered charges*** . . . or in any case ***substantially more*** than the contracted rates agreed to by an in-network provider" (¶ 197).  As discussed above in Part III.B.2, these bare assertions do not plausibly suggest that Plaintiffs were paid less than they were owed under the plans or any other alleged agreement with or obligation owed to Plaintiffs, any more than they did with respect to the ERISA claims.  *See Iqbal*, 556 U.S. at 678–80.

Indeed, several decisions from this district have rejected similar allegations, including complaints filed by Plaintiffs TML Recovery, LLC and MMR Services, LLC, for this reason.  *See TML Recovery, LLC v. Humana Inc.*, 2018 WL 8806104, at *2–4 (C.D. Cal. Nov. 26, 2018) (rejecting general breach allegations that lacked specifics about "the individual or even collective amounts billed" and "the reasons given for

denial of claims"); *Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 WL 6030260, at *1–4 (C.D. Cal. Nov. 27, 2017) (noting that insurers "normally" cover a "much lower" percentage for out-of-network providers, and dismissing similar breach claims because it was "not clear what Plaintiff is alleging Defendants owe it or based on what"); *Kent v. Microsoft Corp.*, 2013 WL 3353875, at *3 (C.D. Cal. July 1, 2013) (Carter, J.) (dismissing breach claim because "neither the terms of the contract, nor its manner of breach, have been asserted with sufficient detail").

### 3.   Plaintiffs Are Not Third-Party Beneficiaries of the Plans.

Plaintiffs acknowledge that they are "out-of-network," and "not contracted" with Defendants (¶¶ 23, 194), but they claim that they are entitled to sue for breach of their patients' plans because they are "third-party beneficiaries." (¶ 168).

Under California law, however, a contract must be "clear in its intention to benefit a third party in order for that party to establish beneficiary status." *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 781 F. Supp. 2d 926, 942 (N.D. Cal. 2011). Whether a party is a third-party beneficiary is a matter of contract interpretation. *Cal. Emergency Physicians Med. Grp. v. PacifiCare of Cal.*, 111 Cal. App. 4th 1127, 1138 (2003), *disapproved on other grounds by Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc.*, 1 Cal. 5th 994 (2016). "For that reason, the contract must be set out in the pleadings." *Id.* ("A plaintiff must plead a contract which was made expressly for his benefit and one in which it clearly appears that he was a beneficiary."). "The intended beneficiary bears the burden of proving that the promise he seeks to enforce was actually made to him personally or to a class of which he is a member." *The H.N. & Frances C. Berger Found. v. Perez*, 218 Cal. App. 4th 37, 43 (2013). It is not enough to show that the third party would have benefitted from the contract remotely or incidentally. *See id.*

Plaintiffs argue that they are third-party beneficiaries because the plans permit members to seek treatment from out-of-network providers, provide for payment for out-of-network providers, and incorporate regulations requiring adequate providers in the

CIGNA'S NOTICE & MOTION TO DISMISS;
MEMORANDUM OF POINTS & AUTHORITIES

event of a network gap.  (¶¶ 170–171.)  These arguments fail because, under "ordinary circumstances," out-of-network providers like Plaintiffs "would be only *incidental* beneficiaries" of their patients' insurance plans.  *Ochs v. PacifiCare of Cal.*, 115 Cal. App. 4th 782, 795 (2004) (sustaining demurrer to provider's third-party-beneficiary claim, and noting that an "agreement to pay for medical care is intended to benefit the enrollees, not treating physicians with whom there is no contractual relationship").  California Civil Code § 1559 "excludes enforcement of a contract by persons who are *only incidentally* or remotely benefited by it."  *Jones v. Aetna Cas. & Surety Co.*, 26 Cal. App. 4th 1717, 1724 (1994).

To the extent Plaintiffs argue that this is not the "ordinary circumstance," their generalized allegations regarding the hundreds of plans at issue do not support such a theory.  *See, e.g.*, *Prime Healthcare Servs.-Shasta, LLC v. United Healthcare Servs., Inc.*, 2017 WL 4340272, at *5 (E.D. Cal. Sept. 29, 2017) ("the contract must be set out in the pleadings"); *Cal. Emergency Physicians Med. Grp.*, 111 Cal. App. 4th at 1137 (affirming dismissal where non-contracted provider failed to plead the "specific policy language" supporting its claim).

> **4.**   **Plaintiffs Do Not Adequately Allege the Assignments and Lack Standing to Assert Claims Related to Plans with Anti-Assignment Provisions.**

Plaintiffs assert that that they obtained written assignments from each of the 508 individuals.  (¶ 163.)  However, as discussed above in Part III.B.4 regarding the ERISA claims, the Complaint does not quote or attach the assignments for any of the nine Plaintiffs or 508 patients, making it impossible to identify what, if anything, was assigned.  Moreover, many of the non-ERISA plans contain express anti-assignment provisions that prohibit the assignment of plan benefits.  (Russell Decl. ¶¶ 3, 5 & Exhibit B.)

For plans containing these provisions, any assignment Plaintiffs received is void, Plaintiffs cannot assert claims related to the non-assignable plans, and all claims governed by the non-assignable plans should be dismissed with prejudice.  *See, e.g.*,

*Cal. Surgical Inst., Inc. v. Aetna Life & Cas. (Bermuda) Ltd.*, 2019 WL 1581415, at *1, 3–4 (C.D. Cal. Feb. 6, 2019) (provider did not have standing to sue insurer for benefits under non-ERISA plan governed by California law because the plan contained a "non-assignment" clause); *see also Davidowitz*, 946 F.2d at 1478–81 (citing Restatement (Second) of Contracts and holding, based on general contract principles, that "ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan").

### E.      The Claims for Bad Faith Fail (Count 3).

In Count 3, Plaintiffs argue that Defendants "tortiously breached the plans and the implied covenant of good faith and fair dealing"—*i.e.*, that they acted in "bad faith" —by purportedly withholding proper payments, making unreasonable demands, failing to "fully and promptly" investigate Plaintiffs' claims, and other conduct. (¶¶ 178–188.)

However, as discussed above in Parts III.D.1 and III.D.2, Plaintiffs have not pled any plausible breach, which is the first element of a bad-faith claim. *See* Rutter Group, California Practice Guide: Civil Procedure Before Trial, Claims and Defenses Ch. 9 § 9:581 (2019) ("An insurer is not liable for bad faith without an underlying breach of the insurance contract."); *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151 (1990) ("There are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause.").

Moreover, the Complaint does not plausibly plead any bad-faith conduct.  While Plaintiffs claim they were denied the members' plan benefits (¶ 183), a mere denial of benefits—even an erroneous denial—does not establish bad faith; erroneous denial is at most a breach of contract.  *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (bad faith requires "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence . . . which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits

CIGNA'S NOTICE & MOTION TO DISMISS;
MEMORANDUM OF POINTS & AUTHORITIES

of the agreement"). Rather, a bad-faith claim requires plausible allegations that the defendant acted **unreasonably** in withholding benefits. *See Love*, 221 Cal. App. 3d at 1151 ("Where benefits are withheld for proper cause, there is no breach of the implied covenant. . . . [T]he reason for withholding benefits must have been unreasonable or without proper cause."); *Opsal v. United Servs. Auto. Ass'n*, 2 Cal. App. 4th 1197, 1205 (1991) ("[B]efore an insurer can be found to have acted tortiously, i.e., in bad faith . . . it must have done so without proper cause.").

There are no such factual allegations here. At most, Plaintiffs vaguely assert that Defendants acted in bad faith when processing their claims (¶¶ 27–28), but those allegations do not plausibly show that Defendants mishandled any of the hundreds or thousands of claims at issue. *See, e.g.*, *Redlands Country Club Inc. v. Cont'l Cas. Co.*, 2011 WL 13224843, at *4 (C.D. Cal. Jan. 28, 2011) (dismissing bad-faith claim premised on "bare allegations" that the defendant "failed to investigate or engaged in other wrongful conduct").

As Plaintiffs have failed to allege any plausible bad-faith conduct, the bad-faith claims "may be disregarded as superfluous as no additional claim is actually stated." *Careau*, 222 Cal. App. 3d at 1395; *see also Total Recall Techs. v. Luckey*, 731 F. App'x 706, 707–08 (9th Cir. 2018) (affirming dismissal of bad-faith claim that was "based solely on the failure to perform express contractual duties"); *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011) (dismissing duplicative bad-faith claim, and stating that such claims "may be disregarded as superfluous").

Finally, Plaintiffs also lack standing to assert these claims for the same reasons they lack standing to litigate the breach of written contract claims. As discussed above in Parts III.D.3 and III.D.4, Plaintiffs have not plausibly alleged that they are third-party beneficiaries of the plans, have not adequately pled the purported assignments, and lack standing to assert bad-faith claims to the extent the plans contain anti-assignment provisions. The bad-faith claims related to non-assignable plans should be dismissed with prejudice. And, to the extent Plaintiffs sue as assignees, they are limited to the

damages that would have been available to their patients.  *See Searles Valley Mineral Operations Inc. v. Ralph M. Parsons Serv. Co.*, 191 Cal. App. 4th 1394, 1402 (2011) ("An assignment merely transfers the interest of the assignor.").  Plaintiffs cannot seek damages for their *own* purported losses, as they attempt to do here.  (¶¶ 187–188.)

### F.      The Claims for Breach of Implied Contract Fail (Count 4).

In Count 4, Plaintiffs allege that Defendants breached contracts implied in fact and implied in law.  (¶¶ 189–201.)  These claims should be dismissed with prejudice.

### 1.      Plaintiffs Are Not Entitled to Implied-in-Fact Recovery.

Plaintiffs argue that implied-in-fact contracts arose from the "trade custom and usage associated with prior authorizations and verification of benefits; by Defendants' promises to pay Plaintiffs; and by Defendants' prior course of conduct and confirmations."  (¶ 196.)  This theory fails for at least five reasons.

First, as a matter of law, communications related to verification of benefits and prior authorizations do not create an implied contract or any other enforceable promise because there is no mutual intent to contract.  *See ABC Servs. Grp., Inc.*, 2020 WL 2121372, at *6 ("allegations about the authorization and verification process" did not create an enforceable promise); *Orthopedic Specialists of So. Cal. v. Cal. Pub. Emps. Ret. Sys.*, 228 Cal. App. 4th 644, 649 (2014) (no "implied oral promise" arose when insurer "authorized treatment" and stated that the provider "would be paid for the treatment"); *see also Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*, 520 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007) ("[V]erification cannot be construed as a binding contractual agreement."); *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay."); *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1507–08 (2012) ("[T]he very heart of this kind of agreement is an intent to promise.").

While "it is possible that a provider may be entitled to more payment if the insurer specifically agreed to pay the provider more," here there are no "specific facts" alleged

as to any promise for any of the 508 patients. *TML Recovery*, 2018 WL 8806104, at \*3 (dismissing claims for breach of implied contract, breach of oral contract, and promissory estoppel that were premised on preauthorization and verification communications for this reason); *Casa Bella Recovery Int'l*, 2017 WL 6030260, at \*4 (same); *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017) ("What type of treatment or the extent of treatment is not described.  In addition it does not appear the parties reached any sort of agreement as to the rate Blue Shield would pay.").

Second, reimbursement for Plaintiffs' services is governed by the patients' plans, and, therefore, cannot be the subject of a separate implied-in-fact contract.  *See Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975) ("There cannot be a valid, express contract and an implied contract each embracing the same subject matter, existing at the same time."); *see also Mountain View Surgical Ctr. v. Cigna Health Corp.*, 2013 WL 6491159, at \*2 (C.D. Cal. Dec. 10, 2013) (same); *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) ("[A]s a matter of law, a quasi-contract action . . . does not lie where, as here, express binding agreements exist and define the parties' rights.").

Third, Plaintiffs base this claim on communications made orally or in writing (¶ 126), which are incapable of forming an implied contract.  *See* Cal. Civ. Code § 1621 ("An implied contract is one, the existence and terms of which are manifested by conduct."); *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 873 (N.D. Cal. 2015) (dismissing an implied-in-fact contract theory that was premised on "statements and assurances" made "using words"); *San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*, 213 Cal. App. 4th 418, 439 (2013) ("A contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.").

Fourth, the Complaint's vague references to a "prior course of conduct" (¶¶ 193, 196) do not support this claim because Plaintiffs do not identify the conduct at issue.

*See Mountain View Surgical Ctr.*, 2013 WL 6491159, at *2 (rejecting a similar claim based on a "prior course of dealing . . . upon which the complaint does not elaborate"). To the extent the "conduct" consists of prior authorizations and verifications, that theory fails for the reasons discussed earlier in this section.  To the extent Plaintiffs rely on Defendants' prior payment history, that theory fails because the alleged "sporadic" and "inadequate" past payments (¶ 195) were not, and cannot be construed as, an agreement by Defendants to pay for *any* services provided to *any* member at *any* time in the future. *See IV Sols., Inc. v. United HealthCare Servs., Inc.*, 2017 WL 6372488, at *14 (C.D. Cal. Sept. 27, 2017) (rejecting a similar argument, and stating that "the parties clearly had not reached any spoken or unspoken agreement"); *Pac. Bay Recovery, Inc.*, 12 Cal. App. 5th at 216 (allegations of inadequate past payment "undermined" provider's claim that the parties ever agreed to the same contractual terms).

Last, Plaintiffs also fail to allege valid consideration.  *See* Cal. Civ. Code § 1550 (consideration is "essential"); *Div. of Labor Law Enf't v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977) ("As to the basic elements, there is no difference between an express and implied contract.").  Plaintiffs allege that Defendants impliedly promised to pay as required by the plans.  (*Compare* ¶ 25 *with* ¶ 191.)  A promise to perform a pre-existing legal duty is not valid consideration.  *See US Ecology, Inc. v. State of Cal.*, 92 Cal. App. 4th 113, 129 (2005) ("A promise to perform a preexisting legal duty is not supported by consideration."); *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 219 (1994) ("There is general support in the California case law for the proposition that consideration cannot consist of the promise to perform a preexisting duty owed to a third person.").

## 2.  Plaintiffs Are Not Entitled to Implied-in-Law Recovery.

Plaintiffs also argue that an implied-in-law contract existed based an alleged "network gap" and laws and regulations.  (¶ 197.)  However, Plaintiffs do not plausibly allege a network gap.  Plaintiffs argue that it is reasonable to infer that such a gap existed because Defendants allegedly "failed to arrange for in-network providers," forcing their

CIGNA'S NOTICE & MOTION TO DISMISS;
MEMORANDUM OF POINTS & AUTHORITIES

members "to seek the treatments and services rendered by Plaintiffs." (¶ 198.) But, as Plaintiffs acknowledge, the plans give members the "*option*" of seeking treatment in-network "*or choosing*" their own out-of-network providers (¶ 170). Because members were free to choose treatment out-of-network, the mere fact that they did so does not support an inference that they lacked in-network options. *See Iqbal*, 556 U.S. at 678 (a theory that is "merely inconsistent" with liability "stops short of . . . entitlement to relief"); *see also Casa Bella Recovery Int'l*, 2017 WL 6030260, at *4 ("Plaintiff hasn't alleged enough facts to support the existence of a network gap within Defendants' network of providers."); *Beacon Health Options*, 2017 WL 5665667, at *7 (N.D. Cal. Nov. 27, 2017) (rejecting similar "information and belief" allegations that the defendant "failed to maintain an adequate network").

Additionally, the statutes and regulations Plaintiffs cite (¶ 197) do not support this claim.[8] California has recognized a right to implied-in-law recovery where the law expressly (1) *requires* medical providers to render services, and (2) *requires* insurers to reimburse the providers for those services, such as in the case of emergency services. *See, e.g.*, *Bell v. Blue Cross of Cal.*, 131 Cal. App. 4th 211, 213–23 (2005). The statutes and regulations Plaintiffs cite (¶ 197) do not impose any similar obligations. California Insurance Code § 10133.5 merely directs the commissioner to promulgate regulations. Section 2240.1 of title 10 of the California Code of Regulations lists requirements for the "Adequacy and Accessibility of Provider Services."

Plaintiffs do not say what parts of the cited items they rely on, and thus fail to provide notice of the basis of their claims.[9] Regardless, neither item *requires* Plaintiffs to treat anyone and *requires* Defendants to pay Plaintiffs. Certainly not "almost 100 percent of [their] billed charges" (¶¶ 38 n.11), or "almost 100 percent of [their] covered charges," or "substantially more than the contracted rates agreed to by an in-network

---

[8] State laws regulating insurance plans governed by ERISA are preempted, as discussed above in Part III.C.

[9] Plaintiffs cite a number of other statutes and regulations throughout the Complaint, but do say how or whether they might support this claim.

provider" (¶ 197), as Plaintiffs claim.  *See Orthopedic Specialists of So. Cal.*, 228 Cal. App. 4th at 649 (rejecting out-of-network non-emergency provider's implied contract claim; "Unlike emergency physicians, who must treat all patients seeking emergency care, OSSC is free to pick and choose its patients . . . .").

To the extent Plaintiffs rely on the regulation at § 2240.1(e) for this argument, it does not help them because (1) it applies ***only if*** there is a network gap, which Plaintiffs have not plausibly alleged, as discussed earlier in this section, and (2) it only regulates what ***patients*** can be required to pay, but is silent as to what an insurer must pay a provider in the event of a network gap.[10]  Moreover, any implied-in-law recovery would be limited to the reasonable value of the services, *Bell*, 131 Cal. App. 4th at 217–18, which is not what Plaintiffs claim they are entitled to here.  (*See* ¶¶ 38 n.11, 197.)

### G.    The Claims for Breach of Oral Contract Fail (Count 5).

In Count 5, Plaintiffs argue that Defendants breached oral contracts that formed "as part of verifying benefits and authorizing treatment when necessary," and in unidentified "communications following admissions and the submission of claims." (¶¶ 202–208.)  This claim should be dismissed with prejudice.

Similar to the discussions above in Parts III.B.1 and III.D.1 regarding the other contract claims, Plaintiffs have not plausibly pled the alleged oral contracts—all 508 (or more) of them.  *See Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014) ("The elements of a cause of action for breach of oral contract are the same as those for a breach of written contract . . . .").  As discussed above in Part III.F.1, the alleged prior authorizations and verifications (¶ 203) are not a promise to pay, and generalized allegations as to other unidentified "communications" are inadequate, as there are no details as to "when Plaintiff[s] obtained authorization, for what types of service or how

---

[10]  Subsection (e) provides: "Networks must provide access to medically appropriate care from a qualified provider.  ***If*** medically appropriate care cannot be provided within the network, the insurer shall arrange for the required care with available and accessible providers outside the network, with ***the patient*** responsible for paying only cost-sharing in an amount equal to the cost-sharing they would have paid for provision of that or a similar service in-network. . . ."

many patients, or how much Defendants agreed to pay." *Casa Bella Recovery Int'l*, 2017 WL 6030260, at *4 (dismissing group-pled claims for breach of implied contract, breach of oral contract, and promissory estoppel for this reason); *see also TML Recovery*, 2018 WL 8806104, at *2–4 (same); *Pac. Bay Recovery*, 12 Cal. App. 5th at 216 (similar; "These allegations lack the specific facts for us to determine there was any meeting of the minds between the parties."). Indeed, while Plaintiffs claim Defendants promised to pay "between *50% to 80% of covered charges*, with the majority of claims promised by Defendants to be paid at 70% . . . ." (¶ 203), seven of them previously alleged different promises—*i.e.*, payments "equal to approximately *70% of covered expenses* . . . ."[11] Further, similar to the discussions above in Parts III.B.2 and III.D.2, Plaintiffs also fail to allege any plausible breach of the vaguely alleged oral contracts.

Finally, as discussed above in Part III.F.1, Plaintiffs also fail to allege any valid consideration. *See* Cal. Civ. Code § 1550; *US Ecology*, 92 Cal. App. 4th at 129 ("A promise to perform a preexisting legal duty is not supported by consideration."); *Cal. Grocers Ass'n*, 22 Cal. App. 4th at 219 ("[C]onsideration cannot consist of the promise to perform a preexisting duty owed to a third person."). Plaintiffs here allege that Defendants orally agreed to pay "between 50% to 80% of covered charges, with the majority of claims . . . to be paid at 70% of covered charges[] until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%." (¶ 203.) According to the Complaint (¶ 25), the written plans already required that.

## H.    The Claims for Promissory Estoppel Fail (Count 6).

In Count 6, Plaintiffs assert claims for promissory estoppel, on the theory that the preauthorization and verification communications were "a clear promise to pay . . . on

---

[11] *See* Case No. 8:20-cv-0269 Dkt. 1-1 ¶ 121 (TML Recovery, LLC); Case No. 8:20-cv-0271, Dkt. 1-1 ¶ 121 (MMR Services, LLC); Case No. 8:20-cv-0272, Dkt. 1-1 ¶ 121 (Southern California Recovery Centers Oceanside, LLC); Case No. 8:20-cv-0273, Dkt. 1-1 ¶ 121 (Addiction Health Alliance, LLC); Case No. 8:20-cv-0274, Dkt. 1-1 ¶ 121 (DR Recovery Encinitas, LLC); Case No. 8:20-cv-0787, Dkt. 1-1 ¶ 121 (12 South, LLC); Case No. 8:20-cv-0788, Dkt. 1-1 ¶ 121 (Southern California Addiction Center, Inc.).

the same terms as provided for in the plans"—*i.e.*, "between 50% to 80% of covered charges, with the majority of claims . . . to be paid at 70% of covered charges." (¶ 210.) These claims should be dismissed with prejudice.

First, as discussed above in Parts III.F.1 and III.G, the alleged preauthorizations and verifications do not create an enforceable promise to pay, and there are no details alleged as to "when Plaintiff[s] obtained authorization, for what types of services or how many patients, or how much Defendants agreed to pay." *Casa Bella Recovery Int'l*, 2017 WL 6030260, at *4 (dismissing group-pled claims for breach of implied contract, breach of oral contract, and promissory estoppel); *see also TML Recovery*, 2018 WL 8806104, at *2–4 (same); *Pac. Bay Recovery*, 12 Cal. App. 5th at 215 n.6 (similar; "Pacific Bay has not stated a cause of action for estoppel because it has not allege a promise clear and unambiguous in its terms."). Moreover, seven of the nine Plaintiffs previously alleged different promises—*i.e.*, that Defendants would pay "***70% of covered expenses*** . . . ." (*Compare, e.g.*, Dkt. 1-1 ¶ 128 *with* Dkt. 20 ¶ 210.)

Second, this claim fails because Plaintiffs allege bargained-for exchanges—*i.e.*, that Defendants would pay Plaintiffs in exchange for Plaintiffs treating their members. (¶¶ 210, 212; *see also, e.g.*, ¶ 26.) "[A] plaintiff cannot state a claim for promissory estoppel when the promise was given in return for proper consideration." *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 275 (2011), *disapproved on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 939 n.13 (2016); *see also Salone v. Bank of Am., N.A.*, 2018 WL 3815041, at *4 (C.D. Cal. June 22, 2018) (ruling that promissory estoppel claim failed as a matter of law because consideration was exchanged).

Third, any promises to pay pursuant to the plans were made to Defendants' members, not to Plaintiffs. *See Ochs*, 115 Cal. App. 4th at 795 ("[A] health care service provider's agreement to pay for medical care is intended to benefit the enrollees, not treating physicians with whom there is no contractual relationship."); *Buss v. Superior Court*, 16 Cal. 4th 35, 44 (1997) ("An insurance policy is a contract between an insurer

and an insured, the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss."). Plaintiffs thus fail to plead a promise relied on "by the party to whom the promise is made," which is required for a promissory estoppel claim. *See US Ecology, Inc. v. State of Cal.*, 129 Cal. App. 4th 887, 901 (2005).

## I.    The Claims for Unfair Competition Fail (Count 7).

In Count 7, Plaintiffs assert claims for purported unlawful, unfair, and fraudulent violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* This claim should be dismissed with prejudice for several reasons.

### 1.    Plaintiffs Can Only Assert Their Own Claims.

Standing under the UCL is limited to those who were directly injured by unfair competition. *See* Cal. Bus. & Prof. Code § 17204 (authorizing suit by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"). A party cannot acquire UCL standing by assignment. *See Amalgamated Transit Union, Local 1756 v. Superior Court*, 46 Cal. 4th 993, 1002 (2009) ("[U]nder the unfair competition law an . . . assignment of rights cannot confer standing on an uninjured assignee.").

Plaintiffs do not say on what basis they assert their UCL claims. To the extent they seek to stand in the shoes of the patients to assert UCL claims related to the patients' purported injuries, Plaintiffs lack UCL standing, and these claims fail as a matter of law. *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1185–86 (C.D. Cal. 2015) (health-care providers lacked UCL standing where the UCL claim was intertwined with ERISA claims asserted on behalf of the beneficiary-assignors); *In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 899 (C.D. Cal. 2012) (similar).

### 2.    Plaintiffs Have an Adequate Remedy at Law.

"A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1143, 1144 (2003). Aside from civil

penalties not relevant here, the only remedies available under the UCL are injunctive relief and restitution.  *See Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015).  Thus, "a plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available." *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015).

Courts have routinely dismissed UCL claims on the pleadings where other claims seek redress for the same harms.  *See, e.g.*, *Mullins v. Premier Nutrition Corp.*, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018) (dismissing UCL claims for restitution and disgorgement where the plaintiff alleged a legal claim to redress the same harm); *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, 2012 WL 13028094, at *2–3 (C.D. Cal. Apr. 4, 2012) (dismissing UCL claim where the plaintiff failed to explain why the damages it sought "elsewhere in its complaint are not adequate").  "Such is the case even if all of plaintiff's non-UCL claims ultimately fail." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. July 14, 2016) (dismissing UCL claim because of a parallel claim for benefits under an insurance contract).

That is the case here too.  For the UCL claims, Plaintiffs seek orders "enjoining Defendants . . . from unjustifiably withholding proper payment of claims," "appointing a receiver," and "restoring to Plaintiffs any money or property that was acquired through the foregoing acts of unfair competition."  (¶¶ 218–219.)  These claims should be dismissed with prejudice because Plaintiffs' other claims seek redress for the same alleged harms—*i.e.*, the alleged improper handling of claims for payment.

### 3.    Plaintiffs Cannot Recover Damages.

Damages are not available for violations of the UCL.  *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992).  The only monetary relief under the UCL is "the disgorgement of money that has been wrongfully obtained or, in the language of the statute, an order 'restor[ing] . . . money . . . which may have been acquired by means of . . . unfair competition.'"  *Id.* (citing Cal. Bus. & Prof. Code § 17203).  UCL restitution requires that the offending party "obtained something to which it was not

entitled and the victim must have given up something which he or she was entitled to keep." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998); *see also Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1122 (C.D. Cal. 2001) ("There is a difference between 'getting' and 'getting back.'  The abstract property rights that Watson invokes do not entitle it to get something it never had."). Otherwise, "any damage claim could be converted into an argument for restitution.  Section 17200 plainly did not intend such a result." *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 758 (N.D. Cal. 1993).  Thus, a plaintiff cannot maintain a UCL claim by recasting a request for damages as "restitution." *Korea Supply*, 29 Cal. 4th at 1151.  Here, it is clear that Plaintiffs do not seek restitution, but traditional damages allegedly suffered as a result of Defendants' purported non-payment.  (*See* ¶¶ 44, 51, 58, 65, 72, 79, 86, 93, 100.)

### 4.    Plaintiffs Cannot Plead an "Unfair" Violation.

Plaintiffs assert claims for "unfair" violation of the UCL.  (¶ 216.)  These claims should be dismissed with prejudice because only business competitors and consumers can litigate a claim for "unfair" violation of the UCL, and Plaintiffs are neither. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (affirming dismissal of UCL "unfair" claim because plaintiffs were "neither competitors nor powerless, unwary consumers"); *IV Sols., Inc. v. Conn. Gen. Life Ins. Co.*, 2015 WL 12843822, at *18 (C.D. Cal. Jan. 29, 2015) (dismissing health care provider's "unfair" UCL claim against a plan administrator because, "at the end of the day, this is a non-competitor business-to-business contract dispute").

Plaintiffs also do not plead unfair conduct.  The California Supreme Court has defined "unfair" conduct as conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Later appellate decisions have required the conduct to either meet that test or be "tethered to an[] underlying constitutional, statutory, or regulatory

provision." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010). Plaintiffs argue that Defendants engaged in unfair conduct by violating various laws, including "ERISA and California law," the Mental Health Parity and Addiction Equity Act, the Patient Protection and Affordable Care Act, and the California Unfair Insurance Practices Act. (¶¶ 106–109). These allegations are not plausible because Plaintiffs allege the purported violations only in conclusory terms. *See, e.g.*, *Prime Healthcare Servs.*, 2017 WL 4340272, at *4 (dismissing out-of-network provider's "unfair" UCL claim because it failed to "allege[] sufficient details" to make the claim plausible).

### 5. Plaintiffs Cannot Plead a "Fraudulent" Violation.

Plaintiffs assert claims for "fraudulent" violations of the UCL. (¶ 216.) They contend, that Defendants "engaged in . . . fraudulent and systematic policies, practices and decisions" (¶ 27), provided "either no, baseless, false, or dilatory reasons for not paying or underpaying" (¶ 106), and other alleged misconduct (*e.g.*, ¶¶ 107–111).

This claim should be dismissed with prejudice because Plaintiffs do not, and cannot, allege that members of the public were likely to be deceived. *See, e.g.*, *Prime Healthcare Servs.*, 2017 WL 4340272, at *4 (dismissing UCL fraudulent claim because the plaintiff failed to plead that the practice would "likely deceive the public").

While Plaintiffs suggest, for example, that Defendants "fraudulently misled" members to think that their plans would pay for out-of-network treatment (¶ 110), as discussed above in Part III.I, Plaintiffs only have UCL standing to raise their own claims. Plaintiffs' own claims fail because Plaintiffs are not members of the "public" for purposes of the UCL. *See TomTom Int'l, B.V. v. Broadcom Corp.*, 2015 WL 1608621, at *9 (C.D. Cal. Apr. 9, 2015) ("[M]embers of the public under the fraudulent prong . . . refers to consumers, not other business entities with a relationship with the alleged defrauder."); *see also Carlin v. DairyAmerica, Inc.*, 978 F. Supp. 2d 1103, 1117 (E.D. Cal. 2013) (dismissing UCL fraudulent claim between business entities; *Med. Instrument Dev. Labs. v. Alcon Labs.*, 2005 WL 1926673, at *5 (N.D. Cal. Aug. 10, 2005) (same).

Additionally, these claims should be dismissed because the Complaint does not allege fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; Plaintiffs simply assert that fraud occurred, but do not provide the "who, what, when, where, and how" of any of the alleged misconduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009) (affirming dismissal of conclusory UCL fraud allegations); *see Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1119 (E.D. Cal. 2014) (dismissing UCL fraud claim that similarly lumped defendants together and made "overbroad, conclusory" references to misconduct).

### 6.      Plaintiffs Have Not Pled an "Unlawful" Violation.

Last, Plaintiffs assert claims for "unlawful" violation of the UCL.  (¶ 216.)  "By proscribing unlawful business practices, the UCL borrow violations of other laws and treats them as independently actionable." *Dougherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 837 (2006).  The Complaint cites a laundry list of statues and regulations, including "ERISA and California law," the Mental Health Parity and Addiction Equity Act, the Patient Protection and Affordable Care Act, and the California Unfair Insurance Practices Act.  (¶¶ 106–109).

These allegations are inadequate and because there are no facts plausibly suggesting that any of the alleged violations actually occurred.  As with the other claims, Plaintiffs present nothing more general allegations and bare assertions, which cannot create a reasonable inference that Defendants are liable.  *See, e.g.*, *Prime Healthcare Servs.*, 2017 WL 4340272, at *4 (dismissing out-of-network provider's claim because the provider did not plead "what services [it] performed, when it performed then, when or how much [the defendant] paid [it], or how [the defendant's] payments diluted statutory standards"); *Daugherty*, 144 Cal. App. 4th at 837 (dismissing UCL "unlawful" claim because the complaint failed to adequately plead an underlying violation).

## IV.   CONCLUSION

For the reasons set forth above, Cigna respectfully asks the Court to dismiss all of Plaintiffs' claims.  Counts 1 through 3 should be dismissed with prejudice to the extent

they relate to plans containing anti-assignment clauses.  Counts 4 through 7 should be dismissed in their entirety and with prejudice.

Dated: June 3, 2020                      Respectfully submitted,

                                         COOLEY LLP

                                         */s/ Mazda K. Antia*
                                         Mazda K. Antia

                                         *Attorneys for Defendants Cigna Corporation, Cigna Health and Life Insurance Co., Connecticut General Life Insurance Co., Cigna Behavioral Health, Inc., Cigna Behavioral Health of California, Inc., Cigna Health Management, Inc., and Cigna Healthcare of California, Inc.*