**ARNALL GOLDEN GREGORY LLP**
Richard T. Collins (Bar No. 166577)
rich.collins@agg.com
Damon D. Eisenbrey (Bar No. 215927)
damon.eisenbrey@agg.com
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Phone: (202) 677-4030

**CALLAHAN & BLAINE, APLC**
Michael J. Sachs (Bar No. 134468)
mjs@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile:  (714) 241-4445

Attorneys for Plaintiffs and Counterclaim Defendants

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TML RECOVERY, LLC, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION, *et al.*<br><br>Defendants. | **Case No.: 8:20-cv-0269-DOC-JDE**<br><br>*Assigned to Judge David O. Carter*<br><br>Consolidated with:<br>8:20-cv-0271    8:20-cv-0272<br>8:20-cv-0273    8:20-cv-0274<br>8:20-cv-0787    8:20-cv-0788<br><br>**PLAINTIFFS' OPPOSITION TO MULTIPLAN'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE PREJUDICIAL EVIDENCE RELATED TO PURPORTED MISREPRESENTATIONS** |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, *et al.*<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>TML RECOVERY, LLC, *et al.*<br><br>Counterclaim Defendants. | Pre-Trial Conference:   July 24, 2023<br>Trial:                          July 31, 2023 |

ARNALL GOLDEN GREGORY LLP

A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs/Counterclaim Defendants TML Recovery, LLC ("TML"), MMR Services, LLC ("MMR"), Addiction Health Alliance, LLC ("AHA"), DR Recovery Encinitas, LLC ("DRR"), Southern California Recovery Centers Oceanside, LLC ("SCRCO"), and Plaintiffs Pacific Palms Recovery, LLC ("PPR"), Woman's Recovery Center, LLC ("WRC"), and Southern California Addiction Center, Inc. ("SCAC") (collectively, "Plaintiffs"), hereby submit their Response in Opposition to Defendants MultiPlan, Inc. and Viant, Inc.'s (collectively, "MultiPlan") Motion *in Limine* No. 1 to Exclude Prejudicial Evidence Relating to Purported Misrepresentations.

## I.    INTRODUCTION

Plaintiffs are out-of-network ("OON") substance use disorder ("SUD") providers and clinical laboratories.  Plaintiffs help people recover from SUDs and return to their lives as healthy and productive members of society.  Plaintiffs have rendered medically necessary SUD treatment to thousands of patients over the years, of which 503 were Cigna insureds.  Plaintiffs filed this action to hold Defendants accountable for their wrongful claim denials and gross underpayment of benefits.

The evidence confirms that, among other things, Defendants operated under financial conflicts of interest in handling and processing Plaintiffs' claims.  This includes, but is not limited to, Defendants using inapplicable Medicare rates and defective databases to price Plaintiffs' claims, which resulted in Defendants making more money on claims than Plaintiffs.  It also includes MultiPlan's misrepresentations to Plaintiffs during claim negotiations for Defendants' financial benefit.  To sterilize Plaintiffs' case, MultiPlan argues that its misrepresentations should be excluded as irrelevant and prejudicial.  MultiPlan is wrong.  The misrepresentations are relevant to Defendants' financial conflicts of interest, and evidence is not prejudicial simply because it is harmful to an opponent's case.  Accordingly, MultiPlan's motion in limine should be denied.

## II. MULTIPLAN'S MOTION IS A SUBSTANTIVE MOTION THAT SHOULD BE SUMMARILY DENIED

### A. Legal Standard for Motions *in Limine*

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial." *Weller v. Cnty. of Los Angeles*, 2016 WL 11760239, *1 (C.D. Cal. 2016). Motions in limine are "generally disfavored" but may be employed by the Court "to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial." *Id.* (citations omitted). A motion in limine, however, should not be employed to "seek exclusion of broad and unspecific categories of evidence" or "to "resolve factual issues or weigh evidence." *Espinoza v. Sniff*, 2015 WL 12660410, *1-2 (C.D. Cal. 2015). A motion in limine also "is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried;" and it is not the appropriate vehicle for addressing the strength of evidence or the substance of a complaint. *Weller*, 2016 WL 11760239, at *1; *see also*, *Johnson v. Gen. Mills Inc.*, 2012 WL 13015023, at *1 (C.D. Cal. 2012) ("A party cannot use a motion in limine to sterilize the other party's presentation of the case.").

While motions in limine may be employed to exclude inadmissible or prejudicial evidence in limited circumstances, courts have recognized that they are "almost always better situated during the actual trial to assess the value and utility of evidence." *Espinoza*, 2015 WL 12660410, at *1. "A motion in limine 'should be granted only if the evidence is clearly not admissible for any purpose. If there is any question on the issue, rather than barring the evidence before trial, the [c]ourt should reserve ruling on questions of admissibility until they actually arise, in the context of the trial.'" *Weller*, 2016 WL 11760239, at *2. Fed. R. Evid. 103 "does not require a court to rule on a motion in limine." *Espinoza*, at *2.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

### B.   MultiPlan's Motion Is an Improper Motion *in Limine*

MultiPlan's motion is a substantive motion disguised as a motion in limine, which the Court should summarily deny.  *See*, *e.g.*, *Chopourian v. Catholic Healthcare West*, 2011 WL 6396500, at *12 (E.D. Cal. 2011) (court may summarily deny "a substantive motion disguised as a motion in limine").  For instance, MultiPlan mainly: (1) argues that it is not an ERISA fiduciary; (2) discusses the allegations in Plaintiffs' complaint; (3) references its pending motion for summary judgment and Plaintiffs' opposition thereto; and (4) claims waiver of agency, alter-ego, and civil conspiracy theories of liability.  These are not proper grounds or matters for motions in limine.  *See Weller*, 2016 WL 11760239, at *1; *Espinoza*, 2015 WL 12660410, *1-2.

Moreover, MultiPlan's motion is vastly over broad and non-specific, rendering it an improper motion in limine.  MultiPlan's motion also makes numerous assertions of purported fact in connection with various topics, without declarations to support a finding that the facts exist.  *See*, *e.g.*, Fed. R. Evid. 43(b) ("When the relevance of the evidence depends on whether a fact exists, proof <u>must</u> be introduced sufficient to support a finding that the fact does exist.) (underscore added).  The foregoing are reasons alone to deny MultiPlan's motion.

### III.   MULTIPLAN'S MISREPRESENTATIONS ARE RELEVANT TO DEFENDANTS' FINANCIAL CONFLICTS OF INTEREST

### A.   Relevance and Prejudice

Fed. R. Evid. 401 prescribes that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  *Id*.  "To be admissible, evidence must be relevant under Fed. R. Evid. 402 and its probative value must not be substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403."  *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1019 (9th Cir. 2004).

Unfair prejudice does not mean harmful to a party's case.  All evidence sought to be introduced by an adverse party is harmful an opponent's case and will undermine the effectiveness of its defense.  Fed. R. Evid. 403 does not preclude such evidence.  *See*, *e.g.*, *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) ("FRE 403 favors admissibility" … [r]elevant evidence is inherently prejudicial"); *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 fn. 6 (3d Cir. 2002) (noting that "unfair prejudice" of Rule 403 "is often misstated as mere prejudice" but "any evidence that tends to harm a party's case could be said to be prejudicial" and is not the subject of Rule 403); *Bilal v. Lockhart*, 993 F.2d 643, 645 (8th Cir. 1993) ("A litigant's evidence is not prejudicial simply because it is damaging to his opponent's case.").  Rather, "'[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403, Adv. Comm. Notes, 1972 Proposed Rules.  Here, there is no unfair prejudice.

## B.      ERISA Financial Conflicts of Interest

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations and internal quotation omitted); *see also*, *LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015) ("[W]e have repeatedly stated that ERISA is remedial legislation that should be construed liberally to protect participants in employee benefits plans.") (citations and internal quotation omitted).

In this regard, the U.S. Supreme Court and the Ninth Circuit hold that courts must consider the effect a conflict of interest had on influencing ERISA benefit determinations.  *See*, *e.g.*, *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 ("If a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict <u>must</u> be *weighed as a factor* in determining whether there is an abuse of discretion." (italics original, underscore added, citation

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

- 4 -

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

1   and internal quotation omitted); *Saffon v. Wells Fargo & Co. Long Term Disability*

2   *Plan*, 522 F.3d 863, 868 (9th Cir. 2008) ("[W]hen reviewing a discretionary denial

3   of benefits by a plan administrator who is subject to a conflict of interest, we <u>must</u>

4   determine the extent to which the conflict influenced the administrator's decision

5   and discount to that extent the deference we accord the administrator') (underscore

6   added).[1]

7   **C.   <u>MultiPlan's Misrepresentations Are Admissible</u>**

8   MultiPlan's misrepresentations and fraudulent statements to Plaintiffs during

9   claim negotiations are relevant and admissible.  Plaintiffs believed that when

10   MultiPlan made representations and spoke about the claims at issue, it spoke the

11   truth.  The evidence proves otherwise.  As briefly explained herein, the evidence

12   shows that MultiPlan made misrepresentations to Plaintiffs for Defendants' financial

13   benefit.

14   For instance, for Patient 22 (CG), SCAC submitted claims to Cigna for two

15   days of intensive outpatient ("IOP") treatment totaling $5,750.  Cigna forwarded the

16   claims to MultiPlan.  MultiPlan provided SCAC with a single claim agreement

17   ("SCA") settlement offer of ███, which included a coversheet that read:



21   Declaration of Damon D. Eisenbrey ("Eisenbrey Decl.") filed concurrently

22   herewith, at Ex. A.

23   _____

24   [1]  *See also*, *Walker v. AT&T Benefit Plan No. 3*, 338 F.R.D. 658, 662 (C.D. Cal. 2021) ("[A]
'structural' conflict does not encompass every possible conflict of interest."); *Klein v. Northwestern
Mut. Life Ins. Co.*, 806 F.Supp.2d 1120, 1126 (S.D. Cal. 2011) ("A reviewing court using the abuse
26   of discretion standard <u>must</u> evaluate the nature, extent, and effect of the conflict in deciding how
skeptically to view the conflicted administrator's decision.") (underscore added); *Santos v.
Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 648 (E.D. Cal. 2009) ("Taken
27   together, *Glenn* and *Abatie* [*v. Alta Health & Lif. Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)] <u>require</u> a
district court to consider the conflict of interest as a factor whose weight depends on the 'nature,
28   extent, and effect' of the conflict on the decision-making process…") (underscore added).

PLAINTIFFS' OPPOSITION TO MULTIPLAN'S MOTION *IN LIMINE* NO. 1

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELE PHONE (202) 677-4030
WWW.AGG.COM

1   Based on MultiPlan's representations and statement that if the offer was not

2   accepted ███████████████████████, SCAC accepted the offer.  The

3   evidence in this case confirms that MultiPlan lied, this was not ██████████.  This

4   is established in documents Cigna was ordered to produce [*see* Dkt. 122, R&R No.

5   8; Dkt. 131, Order Adopting R&R No. 8], which show that Cigna made ██████████

6   on the two claims while MultiPlan made ████████, for a total of ██████████ to

7   Defendants.  That is █ times more than SCAC ($324) was paid on the claims.  This

8   type of scenario (*e.g.*, Defendants, individually and collectively as a group, using

9   MultiPlan to game the system to make more money on claims than SCAC) is

10  evidenced repeatedly in the record.  Eisenbrey Decl., at ¶ 4, Ex. B.

11      Likewise, for Patient 42 (GJ), AHA submitted a claim to Cigna for laboratory

12  services totaling $1,785.  Cigna forwarded the claim to MultiPlan.  MultiPlan

13  provided AHA with a SCA settlement offer of ████, which included a coversheet

14  that read: ██████████████████████████████████████



15  ████████████████████████████████████████████████

16  ████████████████████████ Eisenbrey Decl., Ex. C.

17      Based on MultiPlan's representations and statement that this was the ████████

18  and ██████████ it could offer on the claim and that the ██████████████ was the

19  same day the offer was made, AHA accepted the offer.  The evidence confirms that

20  MultiPlan lied, this was not ████████████ it could offer.  This is established in

21  documents Cigna was ordered to produce, which confirm that Cigna made ██████████

22  on the claim and MultiPlan made ████████, for a total of ██████████ to Defendants,

23  which is ██ times more than AHA.  Eisenbrey Decl., at ¶6, Ex. D.  This type of

24  scenario (Defendants' conspiring to secretly making more money on claims than

25  AHA) is evidenced repeatedly in the record.  Eisenbrey Decl., at ¶¶7, 8, and Exs. E,

26  F.

27      Further, for Patient 51 (KS), DRR submitted claims to Cigna for four days of

28  partial hospitalization ("PHP") treatment totaling $9,284.  Cigna forwarded the

ARNALL GOLDEN GREGORY LLP

A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

1   claims to MultiPlan.  MultiPlan provided DRR with a SCA settlement offer of



6   Eisenbrey, Decl., at Ex. G.

7        Based on MultiPlan's representations and statement that this was

8   ████████ on the claims and if declined ██████████████████████, DRR

9   accepted the offer.  The evidence confirms that MultiPlan lied, this was not ████

10  ████████ it could offer.  Cigna's ordered production confirms that Cigna made

11  ████████ on the claims and MultiPlan made ██████, for a total of ██████.

12  Eisenbrey Decl., at Ex. H.   This type of scenario (Defendants' financial conflicts of

13  interest resulting in Defendants making more money on claims than DRR) is

14  evidenced repeatedly in the record.  Eisenbrey Decl., at ¶¶10, 11 and Exs. I, J.   This

15  type of evidence is clearly relevant to Defendants' self-dealing and financial

16  conflicts of interest, and therefore, admissible.

17        MultiPlan's misrepresentations to Plaintiffs for Defendants' financial benefit

18  are not limited to the SCAs.  They also include the Global Agreements.  TML,

19  DRR, PPR, WRC, and SCAC signed Global Agreements with Cigna via Cigna's

20  agent MultiPlan.  The Global Agreements suffer from misrepresentations like the

21  SCAs.  For instance, SCAC's residential treatment ("RTC") claims for the following

22  insureds at issue have allowed amounts at ██████ of billed charges based on the Global

23  Agreement: Patients 14 (BT), 16 (CC), 22 (CG), 44 (GB), 54 (KA), 72 (OB), and 80

24  (PS).  Eisenbrey Decl., Ex. K.  At a minimum, all levels of care for these insureds

25  (and all other patients and dates of service subject to the Global Agreement) should

26  have allowed amounts at ██████ of SCAC's billed charges, but they do not.

27        Rather, the insureds' lower levels of care (e.g., PHP, IOP, and outpatient

28  ("OP") have allowed amounts at only 20%, 10%, or 5% of SCAC's billed charges.

- 7 -

1    Moreover, the evidence confirms that Defendants routinely reduced the allowed

2    amounts on claims for their financial benefit.  In this regard, Defendants shared in a

3    large percentage of the difference between SCAC's billed charges and the allowed

4    amount.  Defendants accomplished by, *inter alia*, utilizing inapplicable Medicare

5    rates and defective databases.  This resulted in Defendants making ██ times more

6    money on claims than SCAC.  Eisenbrey Decl., at ¶13, Ex. L.

7        Likewise, PPR's OP claims for the following insureds have allowed amounts

8    at ███ of billed charges based on the Global Agreement: Patients 46 (HM), 81

9    (QA), and 88 (SJ).  Eisenbrey Decl., at Ex. M.  At a minimum, all levels of care for

10   these insureds should have allowed amounts at ███ of PPR's billed charges, but

11   they do not.  Instead, the insureds' higher levels of care (*e.g.*, PHP and IOP) have

12   allowed amounts at only 6%, 8%, 17%, or 29% of billed charges.  Moreover, the

13   evidence confirms that Defendants routinely reduced the allowed amounts on claims

14   for their financial benefit.  Defendants accomplished this by, among other things,

15   using inapplicable Medicare rates and defective databases.  This resulted in

16   Defendants making █ times more money claims than PPR.  Eisenbrey Decl., at ¶¶15,

17   16 and Exs. N,O.  WRC (who was contracted to receive ████ of billed charges),

18   TML (███ of billed charges), and DRR (███ of billed charges) experienced the

19   same problems and issues with Defendants and the Global Agreements, which

20   evidence is also relevant and admissible.

21   **IV.    CONCLUSION**

22       Based on the foregoing, Plaintiffs respectfully request that the Court deny

23   MultiPlan's Motion *in Limine* No. 1.

24   Date:  July 17, 2023                                    **ARNALL GOLDEN GREGORY LLP**

25

26                                                          By: */s/ Damon D. Eisenbrey*
                                                            Richard T. Collins
27                                                          Damon D. Eisenbrey
                                                            Attorneys for Plaintiffs and
28                                                          Counterclaim Defendants

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELE PHONE (202) 677.4030
WWW.AGG.COM