Exhibit A-21 to the Declaration of Richard Collins in support of Plaintiffs' Opposition to Cigna's Motion for Summary Judgement
(ECF No. 225-21 redacted/ECF No. 242-5 sealed)

# EXHIBIT A-21

## ENTIRE DOCUMENT FILED CONDITIONALLY UNDER SEAL

## L.R. 79-5.2.2(c)

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

# STATEMENT OF WORK NO. 4
## Medical Review Analysis Services

This Statement of Work No. 4 (this "Statement of Work") is dated April 1, 2015 (the "SOW Effective Date") and is entered into between Company and Supplier pursuant to the Master Services Agreement between Cigna Corporate Services, LLC ("Company") and MultiPlan, Inc. on behalf of itself and its operating subsidiaries ("Supplier") dated April 1, 2015 (the "Agreement"). Supplier's principal place of business is located at 115 5th Avenue, New York, NY 10003. Capitalized terms used in this Statement of Work but not defined herein shall have the respective meanings set forth in the Agreement, including any Exhibit thereto.

1. **Scope of Work**

   1.1 **Services**

Supplier shall provide the following Services in accordance with the terms and conditions of the Agreement to Company: medical review analysis, including but not limited to, Inpatient Repricing Services (IPR), Outpatient Repricing Services (OPR) and DataiSight (DiS) Repricing Services, (collectively, "Medical Review Analysis" (MRA)) in accordance with all regulatory requirements and guidelines and as defined and described below.

**DEFINITIONS**

"Average Net Discounts" means discounts will be calculated as the total Net Savings returned to Company or its designated sources for EDI transmissions divided by the total covered charges returned to Company or its designated sources for EDI transmissions in that quarterly assessment period for claims priced via Data iSight. Net Savings is defined as Gross Savings minus Reversed Savings processed within that quarterly assessment period. Supplier's Average Net Discount is defined as Net Savings divided by covered charges for claims priced via Data iSight. Claims charges for claims not priced by Data iSight are not included in this calculation.

"Clean Claim" means a claim that contains all data elements necessary to adjudicate a claim.

"DiS Services", means repricing of eligible facility and practitioner claims utilizing Supplier's proprietary repricing methodologies.

"IPR Services" means the repricing of inpatient hospital facility claims by Supplier utilizing Supplier's proprietary hospital facility repricing methodology.

"OPR Services", means the repricing of outpatient facility claims by Supplier utilizing Supplier's proprietary repricing methodologies

"Repriced Amount" shall mean the allowable amount determined by Supplier in accordance with the methodologies outlined within this Statement of Work.

"Savings" is defined as the difference between the provider's original billed amount for services covered by Company and the Repriced Amount obtained by Supplier for such medical services.

"Target Price" shall mean the applicable maximum price which is determined by Company. Changes to Target Price calculation methodology shall be communicated by Company to Supplier at least ninety (90) calendar days before those changes become effective.

**SCOPE**

   A. **IPR Services**

      1. Supplier shall provide the following IPR Services for Company:

**Exhibit 10**
Monica Armstrong

Highly Confidential – Attorney's Eyes Only
MPI_Cigna0007231

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

    a. Supplier will establish and process a Repriced Amount, at or below Target Price, for inpatient facility claims using Supplier's proprietary methodology on claims of providers that do not participate in Company's network ("Non Par Providers") referred to Supplier by Company and any related submitted claims.

    b. In conjunction with IPR Services, and the related variance model, Supplier may also attempt to negotiate settlements with providers on certain claims that meet established criteria for negotiation within IPR Services.

    c. Supplier will close/return to Company all referred claims in accordance with the Company specified turnaround time, hereinafter "TAT", or designated due date, hereinafter "DDD", except where allowed time extensions are granted by Company.

    d. For each closed/returned claim, Supplier will submit to Company the following:
        i. Appropriate claim identification information,
        ii. Repricing/negotiation outcome (i.e., revised claim amount, savings obtained)
        iii. Other information as mutually agreed to by Supplier and Company.

    e. If the provider agrees to a Repriced Amount that is lesser than or equal to the Target Price as defined, Supplier will close the negotiation as successful. Otherwise, Supplier will close the claim as unsuccessful.

    f. For each successful negotiation that results in a lowered claim payment amount, Supplier will document the outcome of the negotiation by executing a written negotiation agreement with an authorized representative of the applicable provider. The template for such written negotiation agreements will be presented to Company for review annually and upon any material updates to the template will be reviewed and approved in advance by Company.

    g. Supplier is responsible for all of its costs related to the performance of IPR Services.

2. Company will provide the following in support of receiving the IPR Services:
    a. Company will forward claims to Supplier as determined by Company, in a mutually agreed upon file format.
    b. Notwithstanding any other provision of this Agreement and SOW, Company shall have the right to pay claims from providers in accordance with applicable benefit plans in lieu of accessing the Repriced Amount made available by Supplier.
    c. Company will place a message or remark code on the Explanation of Payment and Explanation of Benefits as instructed by MultiPlan and mutually agreed to by both parties.

## B. Outpatient Repricing Services ("OPR Services")

1. Supplier shall provide the following OPR Services to Company:

    a. Supplier will process and establish a Repriced Amount, at or below Target Price, for outpatient facility claims using Supplier's proprietary methodology on Non ParPprovider claims referred to Supplier by Company and any related submitted claims.

    b. Supplier will close/return to Company all referred claims in accordance with the Company specified turnaround time, hereinafter "TAT", or designated due date, hereinafter "DDD", except where allowed time extensions are granted by Company.

    c. For each closed/returned claim, Supplier will submit to Company the following:
        i). Appropriate claim identification information
        ii). Repricing outcome (i.e., revised claim amount, savings obtained)
        iii). Other information as mutually agreed to by Supplier and Company.

    d. When Supplier negotiates a claim, at or below Target Price, Supplier will document the outcome of the negotiation by executing a written negotiation agreement with an

Highly Confidential – Attorney's Eyes Only     MPI_Cigna0007232

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

authorized representative of the applicable provider. Supplier will maintain on file such written negotiation agreement and other appropriate documentation to memorialize successfully repriced claims. Templates for such negotiation agreements will be presented to Company for review annually and upon any material updates to the template will be reviewed and approved in advance by Company.

    e. Supplier is responsible for all of its costs related to the performance of OPR Services.

2. Company will provide the following in support of receiving the OPR Services:
   a. Company will forward claims to supplier as determined by Company, in a mutually agreed upon file format.
   b. Notwithstanding any other provision of this Agreement and SOW, Company shall have the right to pay claims from providers in accordance with the applicable benefit plans in lieu of accessing the Repriced Amount made available by Supplier.
   c. Company will place a message or remark code on the Explanation of Payment and Explanation of Benefits as instructed by MultiPlan and mutually agreed to by both parties.

## C. Data iSight (DiS)

1. Supplier shall provide the following DIS Services to Company::

   a. Supplier will process and reprice, if possible, eligible claims using proprietary repricing methodologies on Non Par claims referred to Supplier by Company.

   b. Supplier will close/return to Company all referred claims in accordance with the Company specified turnaround time, hereinafter "TAT", or designated due date, hereinafter "DDD", except where allowed time extensions are granted by Company.

   c. For each closed/returned claim, Supplier will submit to Company the following:
      i). Appropriate claim identification information
      ii). Repricing outcome (i.e., revised claim amount, savings obtained)
      iii). Other information as mutually agreed to by Supplier and Company.

   d. Supplier is responsible for all of its costs related to the performance of DiS Services.

   e. Provider Question Handling: If, after receipt of payment from Company, the provider has a question related to a claim repriced by Supplier, Supplier will respond to the question as designated in the then-current Company standard operating procedure document. provided to Supplier. The standard operating procedure includes, but is not limited to

      i. Supplier will contact provider and attempt to respond to the question within the parameters and conditions agreed to by Company during the program implementation and or amendments thereto.
      ii. Supplier will communicate the resolution with the provider to Company in a manner consistent with sub-paragraph 1(c) above.
      iii. Supplier will maintain on file any signed provider agreement and other appropriate documentation to memorialize successfully resolved questions.
      iv. Supplier will resolve all provider questions by one of the following:
         1. Provider agrees with original repriced amount;

Highly Confidential – Attorney's Eyes Only

MPI_Cigna0007233

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

2. Provider agrees with a revised repriced amount more than the original repriced amount and Savings; or
3. Supplier and provider agree that no Savings are retained.

This dispute handling process is separate from any benefit program mandated appeals process. Client shall be responsible for any benefit program related issues and its mandated appeals process.

2. Company will provide the following in support of receiving the DIS Services:
   a. Company will forward claims to supplier as determined by Company, in a mutually agreed upon file format.
   b. Notwithstanding any other provision of this Agreement and SOW, Company shall have the right to pay claims from providers in accordance with the applicable benefit plans in lieu of accessing the Repriced Amount made available by Supplier.
   c. Company will place a message or remark code on the Explanation of Payment and Explanation of Benefits as instructed by MultiPlan and mutually agreed to by both parties.

### D. Claim Dispute Handling

1. Supplier agrees to handle questions and disputes from members and providers.
2. Member/patient disputes and questions will be handled and communicated in accordance with the patient/member advocacy program
3. A provider may dispute Supplier's Repriced Amount paid by Company ("Provider Dispute").
4. A Provider Dispute may be sent to Company or Supplier. Regardless of which party receives the Provider Dispute, the Supplier will contact the Provider directly and is responsible for resolution of the dispute.
5. If a Provider Dispute is received by Company, it will be redirected to the Supplier for research and resolution. In these cases, Supplier will communicate the resolution to Company and will also reflect the outcome within the applicable standard monthly report shared with Company.
   a. Supplier agrees that the average turn around time for Provider Disputes reported by telephone or in writing by the Company to the Supplier will not exceed ten (10) business days in any quarter.
   b. If Company communicates a specific "due date" for resolution of the Provider Dispute, Supplier will resolve and communicate back to Company by that due date.
6. If Company communicates a specific "due date" for resolution of the Provider Dispute, Supplier will resolve and communicate back to Company by that due date.
7. Provider Disputes that result in a change to the original Claim Price will be communicated and reported to Company in a mutually agreed upon format and timeframe.
8. A Provider Dispute is deemed "Resolved" when:
   - Supplier has determined that the Repriced Amount was applied correctly and disputing provider is in agreement with said discount, or
   - Supplier has determined that the Repriced Amount was not applied correctly and sends communication to Company to correct the Repriced Amount and Savings, or
   - Supplier has negotiated a different Repriced Amount with the disputing provider and sends communication to Company to correct the Repriced Amount and Savings, or
9. Supplier is unsuccessful in retaining any savings with the disputing provider and sends communication to Company to remove all Savings.

Highly Confidential – Attorney's Eyes Only                                                                                        MPI_Cigna0007234

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

### 1.2 Service Levels

The Services shall be performed in accordance with the Service Levels set forth in Exhibit 2 and Exhibit 4 of the Agreement, if applicable, and the Service Levels set forth below, including corresponding measurement and reporting metrics, and any corresponding Performance Credits:

A. **Service Levels** – Vendor agrees to perform the Services in a manner that meets or exceeds the service levels as described:
  1. Turn Around Time (TAT) for Clean Claims is a follows:
     i. **IPR and OPR:** ▮ of claims completed within five (5) days, ▮ of claims completed within ten (10) days, commencing on the date that the Service receives a claim.
     ii. **Data iSight:** ▮ of claims sent to the Service will be completed within two (2) days and ▮ of claims sent to the Service will be completed within five (5) days, commencing on the date that the Service receives a claim. On a claim-by-claim basis, a claim is deemed complete when the Service Supplier closes out the claim and returns the same to Company.
     iii. The above TATs are required except in those cases where Company has granted Supplier an extension. In the event an extension is granted, Supplier shall meet the time for that extended period.
     iv. For certain states, specified in writing by Company, TAT for Clean Claims is ▮ of claims returned in the lesser of ten (10) days or in accordance with jurisdictional requirements.
  2. TAT calculations exclude weekends, and holidays. TATs are calculated from the time the Clean Claim is received by the Service to the time the file is closed by the Service.

B. **Service Level Failure** – In the event that Supplier performance does not meet the Service Levels for any of the above Service Levels for a period of greater than ninety (90) days, Company will notify Supplier in writing and grant Supplier an additional ninety (90) days to cure the performance issue and meet the applicable Service Level(s). Service Levels will be measured on a quarterly basis.

### 1.3 Deliverables

As part of the Services, Supplier shall provide the following deliverables, if any, to Company: N/A.

### 1.4 Reports

Supplier agrees to provide reports mutually agreed to, reports that support weekly operational meetings, monthly governance results for performance and service and quarterly performance planning on a regular basis and ad hoc basis as requested by Company.

### 1.5 Timeline and Project Plan: N/A

### 1.6 Service Locations

The Services shall be performed by Supplier at the locations set forth in the table below. For purposes of clarification, Supplier must list the office location(s) where the Supplier Personnel will be physically located when performing the services -- not just Supplier's main office location or the Company office location. Supplier employees performing work from a home office, are not required to be listed.

Highly Confidential – Attorney's Eyes Only     MPI_Cigna0007235

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

| Owner / Operator & Type of Facility | Street Address | City, State, Country ZIP |
|---|---|---|
| MultiPlan-Alpharetta | 3460 Preston Ridge Road, Suite 150 | Alpharetta, GA 30005-2058 |
| MultiPlan-Arlington | 1250 E Copeland Road, Suite 1200 | Arlington, TX 76011-1310 |
| MultiPlan-Bedford | 16 Crosby Drive | Bedford, MA 01730 |
| MultiPlan-Brentwood | 750 Old Hickory Boulevard, Suite 1-125 | Brentwood, TN 37027-4567 |
| MultiPlan-Chattanooga | 6116 Shallowford Road, Suite 109 | Chattanooga, TN 37421-7209 |
| MultiPlan-DePere | 301 N Broadway, Suite 301 | De Pere, WI 54115-2557 |
| MultiPlan-Honolulu | Pan AM Building 1600 Kapiolani Boulevard, Suite 502 | Honolulu, HI 96814 |
| MultiPlan-Irving | 222 West Las Colinas Boulevard, Suite 1500, North Tower | Irving, TX 75039 |
| MultiPlan-Kansas City | 2405 Grand Boulevard, Suite 1030 | Kansas City, MO 64108-2507 |
| MultiPlan-Lake Forest | 25550 Commercentre Drive, Suite 200 | Lake Forest, CA 92630-8855 |
| MultiPlan-Mandeville | 2140 8th Street, Suite B | Mandeville, LA 70471-1924 |
| MultiPlan-Mesa | 1855 West Baseline Road, Suite 230 | Mesa, AZ 85202 |
| MultiPlan-Naperville | 535 East Diehl Road, Suite 100 | Naperville, IL 60563 |
| MultiPlan-New Orleans | 1100 Poydras Street, Suite 2600 | New Orleans, LA 70163-2602 |
| MultiPlan-New York | 115 Fifth Avenue | New York, NY 10003-1004 |
| MultiPlan-Omaha | 444 Regency Parkway Drive, Suite 206 | Omaha, NE 68114 |
| MultiPlan-Rockville | 2273 Research Boulevard | Rockville, MD 20850-3378 |
| MultiPlan-Rosemont | 9701 W Higgins Road, Suite 700 | Rosemont, IL 60018-4720 |
| MultiPlan-St. Petersburg | 4020 Park Street North, Suite 101 | St. Petersburg, FL 33709 |
| MultiPlan-Salt Lake City | 1105 W 2400 South | Salt Lake City, UT 84119-1547 |

Highly Confidential – Attorney's Eyes Only					MPI_Cigna0007236

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

| | | |
|---|---|---|
| MultiPlan-San Antonio | 16414 San Pedro Avenue, Suite 630 | San Antonio, TX. 78232 |
| MultiPlan-Tampa | 500 N West Shore Boulevard, Suite 800 | Tampa, FL 33607-5749 |
| MultiPlan-Waltham | 1100 Winter Street | Waltham, MA 02451-1440 |
| MultiPlan-West Chester | 1615 West Chester Pike, Suite 102 | West Chester, PA 19382 |

1.7  Supplier Key Employees

The following roles are determined by the parties to perform critical functions in the delivery of the Services as of the SOW Effective Date:

| Title/Role |
|---|
| Senior National Account Manager |
| National Account Manager |
| EVP, Sales and Account Manager |
| Chief Information Officer |
| Chief Operations Officer |

The individuals assigned to the roles listed above are employees of Supplier unless otherwise indicated. Upon request, Supplier shall provide Company with a list of any relevant qualifications of any new individuals performing these roles.

1.8  Permitted Subcontractors

Company hereby approves the following subcontractors of Supplier for purposes of performing the Services listed below:

| Name | Subcontracted Services | Location |
|---|---|---|
| Data Marshall Inc* | Provider data matching | US: 7 Valentine Drive Albertson New York-11507<br>INDIA: Banjara Hills, Hyderabad, INDIA |
| Lexis-Nexis (Enclarity) | Provider Demographics | US: 300 W DUNBAR RD WEST COLUMBIA SC 29170 |
| Smart Data Solutions LLC* | Provider Matching (claim fallout to match providers) | US: 1120 CENTRE POINTE DR STE 100 MENDOTA HEIGHTS, MN 55120<br>INDIA: 1516, RUPA SOLITAIRE, 15th Floor, MAHAPE MBP, Navi Mumbai PIN 400710 Maharashtra, India. |
| Sutherland Global Services* | Provider Matching (claim fallout to match providers), Provider Demographics | US: 2 Brighton Road, Suite 300 Clifton, NJ 07012<br>INDIA: Survey no. 185 (P), 2nd floor, Kondapur Village, Serilingampally, Hyderabad, India - 500133 |

Highly Confidential – Attorney's Eyes Only
MPI_Cigna0007237

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

| Name | Subcontracted Services | Location |
|---|---|---|
| TECHNOSOFT Business Solutions | Provider Demographics | US: 28411 NORTHWESTERN HWY STE 640 SOUTHFIELD MI 48034    INDIA: 4th Floor, Block 5, DLF IT SEZ, 1/124 Shivaji Gardens, Ramapuram, Chennai 600 089 |
| Sutherland Healthcare Solutions, Inc.* | Review and correct fallout according to established guidelines | Survey no. 185 (P), 2nd floor, Kondapur Village, Serilingampally, Hyderabad, India - 500133 |
| Tata America International Corporation | Application Development Partner | 101 Park Avenue, 26th Floor New York New York 10178 |
| Cognizant Technology Solutions* | Application Development Partner | 211 Quality Circle College Station, TX 77845 |
| CitiusTech, Inc. | Application Development Partner | 2 Research Way, 2nd Floor Princeton, NJ 08540 |
| Qualitest (IBASE of Fairfield County LLC, dba Qualitest) | Application Development Partner | 1139 Post Road Fairfield, CT 06824 |
| Fluke Networks | Network Sniffer | 6920 Seaway Boulevard Everett, WA 98203 |
| Dell SecureWorks | Firewall Protection | 1 Concourse Parkway NE Suite 500 Atlanta, GA 30328 |
| InterPlan* | Extender Network Service | 222 West Las Colinas Boulevard, Suite 600N Irving, TX 75039 |
| The Initial Group* | Extender Network Service | 6556 Jocelyn Hollow Road Nashville, TN 37205 |
| Three Rivers Provider Network* | Extender Network Service | 901 Hale Place Suite 101 Chula Vista, CA 91914 |
| CyrusOne | Colocation | 1649 W. Frankford Road Carrollton, TX 75007 |
| Connectria Company | Colocation | 10845 Olive Boulevard, Suite 300 St. Louis, MO 63141 |

*Denotes a PHI Subcontractor

1.9     Statement of Work Representative

Each Party shall designate individuals who shall be the principal points of contact for obtaining such decisions, information, approvals and acceptances required under the Statement of Work and shall have day-to-day responsibility for (i) managing the relationship of the Parties in connection with the delivery and receipt of Services; (ii) the implementation and operation of the Statement of Work and (iii) the interaction between the Parties in relation to the Statement of Work. A party may change its Representative by providing written notice to the other Party.

Highly Confidential – Attorney's Eyes Only                                    MPI_Cigna0007238

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

| Statement of Work Representative | Name | Phone | Email address |
|---|---|---|---|
| Supplier | Sandy Slowik | ▮ | ▮ |
| Company | Michael Battistoni | ▮ | ▮ |

## 2. Supplier Systems and Supplier Software

Supplier shall provide to Company the following Supplier Systems and Supplier Software, as applicable, and corresponding Documentation:

Repricing Engine. Platform for claims repricing, claims repricing results. Company has 'view only' access to view how claims were priced by Supplier.

Remote Repricing Tool. This provides the Company with 'view only' access Supplier repricing and negotiation information. It is used to enter information to obtain pricing for a claim the Company cannot send to Supplier electronically.

Service Portal Tool. System utilized by Company to enter and communicate to and from Supplier related to claim pricing disputes.

## 3. Acceptance Procedure:

Company and Supplier agree to follow the acceptance process as outlined in each Change Order submitted to Supplier by Company associated with this Statement of Work. The acceptance of the applicable Services and Supplier Systems and Supplier Software, as agreed to by the parties in the Change Order, will be determined based on the results of either the integrated testing between Company and Supplier or the results of evidence based testing as provided to Company by Supplier (whichever testing approach is requested by Company).

## 4. Change Order Procedure

The Change Order Procedures are as follows:

4.1 Either party may request or document a change by completing the Change Order Form in Exhibit 2 to this Statement of Work and submitting it to the other party's Statement of Work Representative or their designated representative. Each party will consider Change Orders from the other party in good faith and in a commercially reasonable manner, and will promptly provide notice explaining the basis for any disagreement with any Change Order. Changes will be memorialized in a Change Order Form substantially similar to the Change Order Form in Exhibit 2 to this Statement of Work which will become effective once fully executed by the parties. Signed Change Orders will become part of and modify the applicable Statement of Work.

4.2 No change shall be implemented without Company's approval, except as may be necessary on a temporary basis to maintain the continuity of the Services. Company and Supplier will cooperate in good faith in establishing an action plan that would enable the change to be implemented, if Company determines that the change is possible under certain contingencies.

4.3 With respect to all changes, Supplier shall: (i) other than those changes made on a temporary basis to maintain the continuity of the Services, schedule changes so as not to unreasonably interrupt Company's business operations, (ii) prepare and deliver to Company each month a rolling schedule for ongoing and planned changes for the next calendar quarter and (iii) monitor the status of changes against the applicable schedule.

4.4 With respect to any change made on a temporary basis to maintain the continuity of the Services, Supplier shall document and provide to Company notification (which may be given orally provided that any oral notice must be confirmed in writing to Company within five (5) business days thereafter) of the change and the expected duration thereof no later than the next business day after the change is made.

Highly Confidential – Attorney's Eyes Only

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

4.5 All Change Orders shall specify the additional work to be performed, the period of performance and the costs, if applicable, based upon the following hourly rate: ▮ Hourly rates will not apply to simple table updates (e.g., SIU exclusions, Account/BenOp exclusions) and any new project that generates additional revenue for Supplier.

5. **Term**

Unless earlier terminated in accordance with the Agreement, this Statement of Work shall commence on the SOW Effective Date and continue until March 31, 2019.

6. **Fees and Invoicing**

6.1 The fees for the Services shall be as follows: Company will pay Supplier only for successfully priced claims resulting in Savings, in accordance with the following fee schedule.

Fees will not be paid for claims that were not successfully reduced and for which Savings were not achieved. Supplier expenses incurred for unsuccessfully priced claims will be the responsibility of Supplier.

| Service | Fee |
|---|---|
| IPR Services | ▮ of Savings† |
| OPR Services | ▮ of Savings† |
| Data iSight* | ▮ of Savings** |

† The Company's fee for IPR/OPR services shall be reduced to ▮ starting in the beginning of the second Contract Year if the Company's fee payments to Supplier in totality for all Services set forth in the Statements of Work exceed ▮ for the first Contract Year. If Company's fee payments in the first Contract Year in totality for all Services set forth in the Statements of Work are less than ▮ the IPR/OPR fee shall remain at ▮ of Savings for the second Contract Year. "Contract Year" means the period from April 1 to March 31 for each year during the term.

The Company's fee for IPR/OPR services shall be reduced to ▮ of Savings for the third Contract Year if the Company's fee payments in totality for all Services set forth in the Statements of Work exceed ▮ for the second Contract Year. If second Contract Year fee payments in totality for all Services set forth in the Statements of Work are more than ▮ the fee will be ▮ of Savings for the third Contract Year and the balance of the Contract term. If second Contract Year fee payments in totality for all Services set forth in the Statements of Work are less than ▮ the Complementary Network fee will be ▮ of Savings for the third Contract Year and the remainder of the term of this Statement Work.

** The Data iSight fee will be changed to ▮ of Savings on the date when Data iSight is implemented on all Company MRC2 enhanced claims (non-participating provider claims paid as in-network). The Data ISight fee will be changed to ▮ of Savings One hundred eighty (180) calendar days from the change to ▮

6.2 **Alternate Fees**

If applicable law requires a different basis for calculating Fees for these Services, then an Alternate Fee shall apply as determined by both parties. These Fees will be reviewed semi-annually at the option of either party to assure rate equity for both parties.

The parties agree that the alternate fees shall be calculated at a percentage of billed charges as set forth below:

| Service | Indiana Fee | California Fee |
|---|---|---|
| Data ISight | ▮ | ▮ |

Highly Confidential – Attorney's Eyes Only                                                                                                                MPI_Cigna0007240

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

| Service | Indiana Fee | California Fee |
|---|---|---|
| IPR Services | ■ | ■ |
| OPR Services | ■ | ■ |

6.3 Sales Tax; Jurisdiction

The sales taxes collected for the Services shall be as follows: Supplier is not an insurance company and does not offer insurance services in locations where such services are subject to sales tax. Company will review and determine whether any use tax obligation exists and will self-assess as needed. Should Company need any data solely in Supplier's possession to assist Company to allocate service fees, Supplier will reasonably cooperate with Company in making such data available.

6.4 Invoicing

Company is Self-Billing; Supplier does not invoice Company for Services. Payment is generated to Supplier via Company Vendor Fee Reimbursement System or other applicable Company network payment system. All payments shall be made within thirty days after the end of the month in which the claim data is reported.

6.4 Fee Reconciliation and Audit

Company maintains a review and reconciliation process of all provider payments and associated Supplier fees. Fees paid to Supplier will be adjusted in accordance with the Company's claim data.

Upon thirty (30) days' notice from Supplier, Company agrees to provide Supplier, in a format mutually agreed upon, with sufficient data to permit Supplier to calculate the Savings applied by the Company to allow for validation of the accuracy of the Savings calculation and the payment of the fees received from Company. Company shall provide reasonable assistance to Supplier to facilitate such audit. The rights set forth in this provision shall survive the termination of this Agreement for three (3) years.

7. Termination Assistance

In accordance with the Agreement, Supplier will provide Termination Assistance Services to Company at the termination of this Statement of Work in accordance with Exhibit 1 attached hereto, Termination Assistance.

8. Incorporation and Ratification of Agreement

This Statement of Work is governed by the terms and conditions of the Agreement, which are hereby incorporated by reference and ratified by the parties. The Agreement and this Statement of Work represent the entire agreement between Company and Supplier with respect to the subject matter hereof. No change, amendment, or modification of this Statement of Work shall be binding unless in writing and executed by the parties hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Statement of Work to be executed as of the SOW Effective Date by their respective duly authorized representatives.

CIGNA CORPORATE SERVICES LLC

Signature: _____
Print Name: Anthony P. Abate
Title: Vice President and Chief Procurement Officer
Date: 7/22/15

MULTIPLAN, INC., on behalf of itself and its operating subsidiaries

Signature: _____
Print Name: Dale A. White
Title: EVP
Date: July 16, 2015

Highly Confidential – Attorney's Eyes Only

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

## Exhibit 1 to Statement of Work
## Termination Assistance Services

Following termination of this Statement of Work or any of the Services under this Statement of Work:

1. Supplier will use its commercially reasonable efforts to retain key personnel on the Company account from the notice of termination and during the period that Supplier is providing Termination Assistance Services unless mutually agreed between both parties, subject to Supplier's ability to release or reassign key personnel if they are not reasonably expected to be needed by Supplier to fulfill its obligations during the Termination Assistance period mutually agreed to by the parties.

2. Supplier shall cooperate and provide commercially available means to help effect a smooth transition to Company or to any supplier designated by Company of any and all administrative functions performed by Supplier under this Statement of Work, consistent with the terms of the Agreement and this Statement of Work. To that end, Termination Assistance Services shall include support for the following areas:
   a. Assist with the development of a mutually agreed upon transition plan for the transition of Services from the Supplier back to the Company or any new supplier as designated by Company;
   b. Provide assistance in resolving operational issues and escalations, data migration, and testing until successful completion of the transition plan.

3. Company shall have the right to retain and utilize Supplier operational and process documents developed and maintained for the provision of the Services, to the extent that Supplier company information is not contained in such documents.

4. To the extent practicable, Supplier shall return or destroy all Company records, work products, files, and equipment within a mutually agreed upon timeframe and manner.

5. Supplier shall use reasonable efforts to meet existing Service Levels following any notice of termination in accordance with the Agreement.

Highly Confidential – Attorney's Eyes Only                                    MPI_Cigna0007242

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

Exhibit 2 to Statement of Work
Change Order Form



## CHANGE ORDER

| Client Name: | CIGNA | | |
|---|---|---|---|
| Requestor: | | Phone Number: | |
| Project Name: | | | Change Order: |

**Overview of Enhancement/Change Request:**

**Requirements Detail:**

**Cost/Resource Estimates:**

| | Hours | Total |
|---|---|---|
| Project Management | | |
| Business Analysis | | |
| Development | | |
| Quality Assurance | | |
| Client Testing | | |
| Monitor production | | |
| Total | | |

Highly Confidential – Attorney's Eyes Only                                    MPI_Cigna0007243

Master Services Agreement No.: MSA107409-MultiPlan-2014
Statement of Work No.: SOW108314-Multiplan, Inc.-2015

| Cost: | |
|---|---|
| Assumptions: | |
| Open Issues: | |

| Requested Completion Date | | |
|---|---|---|
| Requestor Signature | | Date: |
| Authorized Approver Signature | | Date: |
| Date Approved | | |

Highly Confidential – Attorney's Eyes Only       MPI_Cigna0007244