# ECF 251-5

# EXHIBIT A-5

                                                            Page 1

              UNITED STATES DISTRICT COURT

      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION


   TML RECOVERY, LLC, et al.,

                Plaintiffs,

          vs.                            No.
                                         8:20-cv-0269-DOC-JDE

   CIGNA CORPORATION, et al.,

                Defendants.
   _____/

   CIGNA HEALTH AND LIFE

   INSURANCE COMPANY, et al.,


        Counterclaim Plaintiffs,

             vs.

   TML RECOVERY, LLC, et al.,

        Counterclaim Defendants.
   _____/


                    -- CONFIDENTIAL --


      VIDEO-RECORDED FEDERAL RULE 30(B)(6) DEPOSITION OF
         CIGNA CORPORATION, ET AL., BY TERRI COTHRON
                  Remote Zoom Proceedings
                  Visalia, California
                 Friday, March 31, 2023


   REPORTED BY:

   LESLIE ROCKWOOD ROSAS, RPR, CSR 3462

   Pages 1 - 174                      Job No. 5843782

Page 102

A.   I am familiar with them.

Q.   Do you negotiate administrative services agreements?

A.   No, I do not.

Q.   And you have an understanding as to how the -- how Cigna charges fees under those -- can we all them ASOs?

A.   We can.

Q.   Okay.  Do you know how Cigna charges its fees under those ASOs?

A.   I am familiar with how the client fees are set up, yes.

Q.   And how are they set up?

A.   They are set up -- again, it's between sales underwriting and product as far as like what the fees will be for a given client.  Our standard ASO fee agreements are based on a percent of savings that are achieved through our programs for -- for all the various techniques.

Q.   Do you know in 2015 what that percentage of savings was for the cost containment vendor programs?

MR. ANTIA:  Objection to form.

THE WITNESS:  I do not know what the standard was back then.  I would have to go back and look.

Q.   BY MR. COLLINS:  Does 29 percent sound about

Page 103

right?

A.  29 percent sounds about right.

Q.  And that 29 percent would be applied to the difference between the amount that the provider billed for the service minus the amount actually allowed by Cigna; correct?

A.  Our savings are the difference between what the provider billed, which is what the customer would be liable for up to that total charge, and the allowable the vendor is able to achieve on that claim.  The difference is the savings from which the fees are calculated.

Q.  So the lower the allowed amount, the greater the difference; correct?

A.  Said another way, the lower the allowable amount, the greater savings that we're achieving for our clients and the customers for protection from balanced billing through our programs.  But it's definitely driven by the providers' charges.

Q.  And the greater the fee Cigna receives; correct?

MR. ANTIA:  Objection to form.

THE WITNESS:  The fees are calculated based on the savings as described.  So if you get greater savings, the fees would be greater as well.

Q.  BY MR. COLLINS:  And another way to say that is the lower the reimbursement rate, the greater Cigna's

Page 104

fee?

MR. ANTIA:  Objection to form.

THE WITNESS:  The more successful in savings that we can achieve through our programs results in additional savings, which fees would be based on.

Q.  BY MR. COLLINS:  And so another way to say that is:  The lower the rate, the higher Cigna's fee.

Would you agree?

MR. ANTIA:  Objection to form.

Q.  BY MR. COLLINS:  Would you agree that's accurate?

A.  The more savings achieved on that claim --

Q.  You don't want to say it.  (Laughter.)  I understand you don't want to say it.

But don't you agree that's accurate?  The lower the rate -- the lower the reimbursement rate, the greater Cigna's fee.  Isn't that just a factual -- just a factual obvious conclusion?

MR. ANTIA:  Objection to form.  Argumentative.

You can answer if you understand the question.

THE WITNESS:  The savings would be greater the more successful we are.  And so, yes, I guess if they were able to negotiate a rate that's -- that's accepted, then the fee would be higher because of the success rate on how much savings was achieved.

CONF 30(b)(6) Terri Cothron                    March 31, 2023
TML Recovery, LLC vs CIGNA Corporation

Page 108

Q.  And do you recall if those reports showed an increase in Cigna's fees earned through its suite of cost containment programs?

A.  Throughout the years, through target pricing and other initiatives to improve our programs' performance and save more money on these out-of-network claims, the fees generated have increased over time.

Q.  And did Cigna ever receive complaints from its self-funded employer plan sponsors that the suite of cost containment program fees under the ASO agreements were getting too high?

MR. ANTIA:  Objection.  Form.  Vague as to time.

Q.  BY MR. COLLINS:  Since 2015.

A.  ASO clients get monthly reporting of the savings achieved through the programs, and I am aware that on occasion, a particular claim or provider claim would stand out in a report based on how successful they were getting savings on a claim that was -- had a very high charge.

So they would question, come back and kind of talk through those kind of issues with sales product.

Q.  Are you aware of Cigna reducing its fee under ASOs for its suite of cost containment programs due to the annual increasing of retained savings?

MR. ANTIA:  Objection to form.

Veritext Legal Solutions
800.808.4958                                                    770.343.9696

Page 109

THE WITNESS:  We did make an update -- I would have to look back on the actual year -- in which that we made the decision to put in a -- what was called the fee cap on our cost containment programs to help alleviate the egregious billing situations in which we were getting savings on a charge where the providers' charges were pretty high.

Q.  BY MR. COLLINS:  How did the fee caps address egregious billing?  I thought it was addressing Cigna's ever-increasing fees under the ASOs.

Are you saying that was solely attributable to egregious billing healthcare providers, that the men and women who are providing lifesaving treatment, they're egregious billers, and that's why Cigna's fees increased year-over-year based on retained savings that had nothing to do with the ever-reducing reimbursement rates that Cigna was generating?

Do I have that right?

I want to make sure that the Judge and the jury hear that correctly, that it's the men and women providing the lifesaving treatment who are the sole cause of the problems here.  They're the egregious billers.

Is when is that who we're talking about when you say egregious billing?

MR. ANTIA:  Objection to form.  Argumentative.

Page 156

THE WITNESS:  Again, I -- I challenge the "untruthful" type of statement.  You know, if I were to read this and see this in -- in -- in writing in it, and I am assuming that it was done by the negotiator, I -- if I had seen this example, I would have given feedback that this statement is not the best wording that they could have used, and they need to not say that.

Q.   BY MR. COLLINS:  Thank you.

I understand that -- that Cigna allows MultiPlan, Viant, DataiSight to negotiate directly with the providers.  Was there a time where Cigna allowed them to negotiate with the members?

A.   Not that I'm aware of, and I'm not sure what they would be negotiating with the member about.  It's between the provider and MultiPlan.

Q.   And in terms of the claims, maybe the claims dispute-handling services is more appropriate.  Was there a time where Cigna allowed MultiPlan, Viant, DataiSight to communicate directly with its customers?

A.   Again, I think that, you know, we kind of talked about the PAD letters before.  And early on, Viant did direct the customer to Viant, but the outcome of that customer contacting them and if they had been billed was then for Viant to reach out to the provider.

So the negotiation in the process would still be

Page 157

between the vendor and the provider, not the customer

directly.

Q.  Back when Cigna allowed MultiPlan, Viant,

DataiSight to communicate directly with its members

concerning claims repriced through Viant or DataiSight,

did Cigna have any expectation or requirement that

MultiPlan be truthful and accurate in its communications

with the Cigna members or customers?

MR. ANTIA:  Objection to form.

THE WITNESS:  I'm not sure how to take that

question, either.

Q.  BY MR. COLLINS:  Well, let me ask it this way:

As part of the negotiation of a Statement of Work that

involved these claim dispute-handling services where

Viant/DataiSight would be the first level of

communication with the members, back during that time

frame, were there any kind of safeguards or guardrails

put in place to ensure that the communications with

Cigna's members would be truthful and accurate.

MR. ANTIA:  Objection to form.  And outside the

scope.

THE WITNESS:  Any communication with our

customers -- and again, it was very minimal -- I think --

I mean, the -- the vendor would be truthful, and there

would be no expectation that the vendors would not be

Page 158

appropriate and truthful.  I don't know where this is going.

Q.  BY MR. COLLINS:  Well, I appreciate that. And -- and -- and given that expectation, was there anything written into an agreement or, say, a Statement of Work that obligated MultiPlan, either through its Viant or DataiSight services, to be truthful and accurate when communicating with Cigna's members?

MR. ANTIA:  Objection to form.

THE WITNESS:  I don't recall anything in the SOWs related in that wording about interaction with customers.  And that is from a quite a while ago. Because our direction today -- and I don't recall when we changed it, but it was probably around the time we updated our PAD letters, if a customer were to call Viant, DataiSight, or MultiPlan directly, they're directed back to Cigna.  They do not interact with the customers.

Q.  BY MR. COLLINS:  And -- and given the expectation that Cigna did have of MultiPlan being truthful and accurate in its communication with members before Cigna took that responsibility back, did -- did Cigna have that same expectation of MultiPlan when it allowed MultiPlan to continue its communications with its members' providers?

CONF 30(b)(6) Terri Cothron                    March 31, 2023
TML Recovery, LLC vs CIGNA Corporation

Page 165

THE WITNESS:  In looking at the codes, the remarked codes that you have highlighted, they were priced through OPR.

Q.  BY MR. COLLINS:  Yes.

Now if we scroll over to column DJ, you'll see the amount billed.  It's that same $6836 amount that we saw on the EOB in Exhibit 11.

Do you see that?

A.  Yes.

MR. ANTIA:  Rich, just for my clarification, are you on row 2?  Is that where you're reading it from?

MR. COLLINS:  Yes.

MR. ANTIA:  Okay.

Q.  BY MR. COLLINS:  And you'll see the next column is "sum covered," and the entire amount was covered.

Do you see that?

A.  I do.

Q.  And then the next column over, you see the amount allowed through the Viant OPR, which is that $523.80 amount.

You see that?

A.  Yes.

Q.  And that next column DM, "Sum Account Fee," do you see that $2234.52 amount?

A.  Yes.

Veritext Legal Solutions
800.808.4958                                              770.343.9696

Page 166

Q.  That's Cigna's fee; right?

MR. ANTIA:  Objection to form.  Lacks foundation.

THE WITNESS:  That is the category of that column.

Q.  BY MR. COLLINS:  And -- and you'll see that Cigna's fee --

THE REPORTER:  Excuse me.  That is the category of that what?

MR. COLLINS:  I believe she said for that column.

THE REPORTER:  Column?  Thank you.

THE WITNESS:  Yes, correct.  Column.

Q.  BY MR. COLLINS:  And -- and you'll see that that -- that fee that Cigna earned for -- for cutting this bill is -- is more than four times the amount that was actually paid to the provider.

You see that?

MR. ANTIA:  Objection to form.  Lack of foundation.

THE WITNESS:  I see that.

Q.  BY MR. COLLINS:  Now is -- is that reasonable to you, when you see that, when you see that Cigna's fee is four times the amount of the allowed amount?  And mind you, the entire amount was deemed covered.  Is -- is does

Page 167

that seem reasonable to you that Cigna would receive a fee four times greater than what the provider received just for cutting the bill?

MR. ANTIA:  Objection to form.  Lacks foundation.  And outside the scope.

THE WITNESS:  And if the provider did accept that allowed amount, the savings would be correct, and based on how fees are calculated for cost containment programs, the fees are correct.

Q.  BY MR. COLLINS:  And you don't see a problem with that?

MR. ANTIA:  Objection to form.

THE WITNESS:  It is working as designed.

Q.  BY MR. COLLINS:  Thank you.

And you'll see in the column DO, that's the vendor fee.  That would be the amount paid to -- to MultiPlan for its Viant services; right?

MR. ANTIA:  Objection to form.  Lacks foundation.

THE WITNESS:  That is correct, based on the category of the column.

Q.  BY MR. COLLINS:  And you'll see, if you look and compare the amount that MultiPlan received, even MultiPlan was paid more than the provider who provided intensive outpatient services for somebody suffering with

Page 173

STATE OF CALIFORNIA     ) ss:

COUNTY OF MARIN         )

        I, LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3452, do
hereby certify:

        That the foregoing deposition testimony was
taken before me at the time and place therein set forth
and at which time the witness was administered the oath;

        That testimony of the witness and all objections
made by counsel at the time of the examination were
recorded stenographically by me, and were thereafter
transcribed under my direction and supervision, and that
the foregoing pages contain a full, true and accurate
record of all proceedings and testimony to the best of my
skill and ability.

        I further certify that I am neither counsel for
any party to said action, nor am I related to any party
to said action, nor am I in any way interested in the
outcome thereof.

        IN WITNESS WHEREOF, I have subscribed my name
this 5th day of April, 2023.

                    LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462