**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

TML RECOVERY, LLC, *et al.*,
Plaintiffs,
v.

CIGNA CORPORATION, *et al.*,
Defendants.

---

CIGNA HEALTH AND LIFE INSURANCE COMPANY, *et al.*,
Counterclaim Plaintiffs,
v.
TML RECOVERY, LLC, *et al.*,
Counterclaim Defendants.

**Case No. SA CV 20-00269-DOC (ADS)**

**ORDER GRANTING IN PART AND DENYING IN PART PARTIES' MOTIONS FOR SUMMARY JUDGMENT [138, 139, 141] AND DENYING WITHOUT PREJUDICE MOTIONS IN LIMINE [287, 290-92, 294-99, 302-08]**

# Table of Contents

**I. BACKGROUND** .......... 4
A. Facts .......... 5
1. Parties .......... 5
2. MultiPlan's Business Model and Relationship with Cigna .......... 5
3. Cigna's Plans & Reimbursement Methodologies .......... 7
4. Verification of Benefits and Pre-Authorization .......... 9
5. Cigna's Investigations into Providers .......... 9
B. Procedural History .......... 10
**II. LEGAL STANDARD** .......... 11
**III. DISCUSSION** .......... 12
A. MultiPlan's Motion on Plaintiffs' Claims .......... 12
1. Plaintiffs' ERISA Claim against MultiPlan .......... 13
2. Plaintiffs' Breach of Contract Claim and Promissory Estoppel Claim against MultiPlan .......... 16
B. Cigna's Motion on Plaintiffs' Claims .......... 17
1. Plaintiffs' ERISA Claim against Cigna .......... 18
2. Plaintiffs' Breach of Contract Claim against Cigna .......... 30
3. Plaintiffs' Promissory Estoppel claim against Cigna .......... 30
C. Cigna's Motion on its Counterclaims .......... 34
D. Providers' Motion on Cigna's Counterclaims .......... 35
1. Intentional Interference with Contractual Relations .......... 35
2. Violation of California's Unfair Competition Law (UCL) .......... 37
3. Restitution under ERISA .......... 38

E. Motions in limine ........................................................................................................ 40

**IV. DISPOSITION** ........................................................................................................ 40

Before the Court are Defendants TML Recovery, LLC ("TML"), MMR Services, LLC ("MMR"), Southern California Recovery Center Oceanside, LLC ("SCRCO"), Addiction Health Alliance, LLC ("AHA"), and DR Recovery Encinitas, LLC's ("DRR") (collectively, "Providers") Motion for Partial Summary Judgment ("Providers' MSJ") (Dkt. 138); Defendants, Viant, Inc. ("Viant") and MultiPlan, Inc.'s ("MultiPlan") (collectively, "MultiPlan" or "MultiPlan Defendants") Motion for Summary Judgment ("Multiplan MSJ") (Dkt. 139), and Defendants Cigna Corporation, Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, Cigna Behavioral Health, Inc., Cigna Behavioral Health of California, Inc., Cigna Health Management, Inc., and Cigna Healthcare of California, Inc.'s (collectively, "Cigna") Motion for Summary Judgment (Dkt. 141) ("Cigna MSJ"). The Court heard oral argument on August 16 and 17, 2023. For the reasons described below, the Court GRANTS MultiPlan's Motion, GRANTS IN PART and DENIES IN PART Cigna's Motion, and GRANTS IN PART and DENIES IN PART Providers' Motion.

## I. BACKGROUND

In brief, Providers allege that the Cigna and MultiPlan Defendants failed to properly pay Plaintiffs for substance use disorder (SUD) treatment and laboratory services they provided between 2016 and 2020 to more than 500 patients with Cigna-run health insurance plans for which MultiPlan provided cost management and negotiation services. Cigna counterclaims that Plaintiffs breached the terms of their members' benefit plans by systematically failing to bill members or collect member responsibility amounts (MRAs), resulting in Cigna remitting payment to Plaintiffs to which they were not entitled.

**A. Facts**[1]

**1. Parties**

Plaintiffs, TML Recovery, LLC ("TML"), MMR Services, LLC ("MMR"), Southern California Recovery Centers Oceanside, LLC ("SCRCO"), Addiction Health Alliance, LLC ("AHA"), DR Recovery Encinitas, LLC ("DR Recovery"), Southern California Addiction Center, Inc. ("SCAC"), 12 South, LLC ("12 South"), Woman's Recovery Center, LLC ("WRC"), and Pacific Palms Recovery, LLC ("Pacific Palms"), are out-of-network ("OON") substance use disorder ("SUD") treatment providers and clinical laboratories. Pls.' Resp. to Multiplan's SUF (Dkt. 240-2) ¶ 1. Defendant MultiPlan Inc. Inc., a New York corporation with its principal place of business in New York, operates a nationwide preferred provider organization ("PPO"). *Id.* ¶ 10. Viant, Inc. is a wholly owned subsidiary of MultiPlan. *Id.* ¶ 23. Viant has a similar business model to MultiPlan, in that it provides healthcare cost-management services to clients. *Id.* Defendants and Counterclaim Plaintiffs Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively, "Cigna") are insurance companies licensed to do business in the state of California as providers of health insurance benefits.

**2. MultiPlan's Business Model and Relationship with Cigna**

Among other products, MultiPlan operates a non-risk-bearing complementary PPO network that does business nationwide by contracting, on the one hand, with healthcare providers, such as hospitals, physicians, physician groups, and ancillary providers, which then become participating providers in MultiPlan's complementary PPO network and agree to discount their billed charges and accept negotiated reimbursement rates as payment for health care services rendered to individuals covered by health benefit programs insured and/or administered by MultiPlan's clients. *Id.* ¶ 12. MultiPlan essentially acts as a middle-man— one with negotiation power— between providers and health insurers. It receives electronic claims

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

information from its insurer clients, calculates pricing recommendations for those claims in accordance with the discounts offered by the providers or based upon proprietary databases—depending on the particular cost management service(s) that those clients have chosen to support their reimbursement of OON benefits—and electronically transmits its pricing recommendations back to Cigna and other insurer clients. *Id.* ¶ 18.

Neither Viant nor MultiPlan, however, are healthcare payors or do business in the United States as health insurance companies. *Id.* ¶ 25. MultiPlan and Viant do not and did not participate in the preauthorization of health care services or the verification of benefits with respect to any of Plaintiffs' claims. *Id.* ¶ 30. No claims for reimbursement were ever submitted by, or on behalf of, any of the Plaintiffs directly to MultiPlan or Viant. *Id.* ¶ 31. MultiPlan and Viant had no role in evaluating the eligibility of Plaintiffs' claims for benefits under any health plan, or in approving or denying any claim submitted by Plaintiffs. *Id.* ¶ 32. MultiPlan and Viant did not generate or issue any explanation of benefit ("EOB") to Plaintiffs in connection with any of the claims at issue. *Id.* ¶ 33. Nor did they issue payments to any of the Plaintiffs in connection with any of the claims at issue. *Id.* ¶ 34.

Cigna is a client of MultiPlan, a third-party vendor which Cigna has contracted with to provide healthcare cost-management products and services. *Id.* ¶ 43. MultiPlan entered into a Master Services Agreement ("MSA") with Cigna Corporate Services, LLC, effective April 1, 2015, executed by Cigna and MultiPlan pursuant to the MSA (collectively, the "Cigna-MultiPlan MSA" or Agreement"). *Id.* ¶ 51. Cigna is responsible for determining which of its claims are referred to MultiPlan, as well as which claims are eligible for which MultiPlan service(s). *Id.* ¶ 62. Cigna asks MultiPlan to reprice OON claims billed by OON providers via (1) MultiPlan's own network of providers with pre-negotiated contracts with MultiPlan, (2) single-case or single-claim agreements negotiated between MultiPlan and OON providers, (3) proprietary methodologies and databases using Viant's Inpatient Repricing Services ("IPR"), Outpatient Repricing Services ("OPR") and Data iSight Repricing Services ("DIS"), after which negotiations with OON providers are conducted to have them agree to the repriced amounts. Dkt. 260-3 ¶ 125. If a claim is successfully repriced, Cigna and MultiPlan each

receive a fee which is calculated as a percentage of the net savings on the claim. *Id.* ¶ 131. Providers signed numerous Single Case Agreements ("SCAs") with Defendants Multiplan, Inc. and Viant, Inc. Dkt. 228 ¶ 10. When an OON provider accepts an SCA, they are prohibited from balance billing the Cigna member, a practice where a healthcare provider bills a patient for the difference between the total cost of services being charged and the amount the insurance pays. Dkt. 260-3 ¶ 127. Providers TML and DRR signed Global Agreements with Multiplan. Dkt. 228. ¶ 11.

**3. Cigna's Plans & Reimbursement Methodologies**

Cigna acts as an administrator for self-funded employer benefit plans, whereby Cigna provides third-party administrative services, including claims processing and adjudication services, but the payments are financed by the employer. Dkt. 260-3 ¶ 18. For self-funded Plans, which comprise the vast majority of plans at issue in this litigation, Cigna enters into Administrative Services Only (ASO) Agreements with the Plan sponsors. *Id.* ¶ 20. Cigna also offers a fully-insured product in which Cigna adjudicates claims and makes benefit payments itself. *Id.* ¶ 21.

For purposes of this litigation, the parties selected an exemplar patient pool comprised of 106 unique patients (the "Exemplar Patients") for discovery and subsequent proceedings. *Id.* ¶ 6. Of the Exemplar Patients, 97 have claims governed by an ERISA Plan and 10 have claims governed by non-ERISA Plans. *Id.* ¶ 10. For some patients, Providers required that they sign an Assignment of Benefits form. Dkt. 228 ¶ 4. When Cigna processed a treatment claim for patients, it issued an Explanation of Payment ("EOP") to Providers. *Id.* ¶ 3. For payments made to Providers in connection with self-funded plans, the payments were made from the self-funded customer's assets, not Cigna's assets. *Id.* ¶ 9.

Cigna's health benefit plans allow members like the Exemplar Patients to obtain SUD services from an in-network provider or an out-of-network (OON) provider, like Providers. Dkt. 228 ¶ 1. In-network providers contract with Cigna to provide services to Cigna members at pre-negotiated rates and are generally prohibited from balance billing members. Dkt. 260-3 ¶ 24. Cigna's Plans also cover certain amounts for services, including for substance abuse

treatment, provided by OON providers. The amounts covered for services provided by OON providers are set forth in the Plans and, as an insurer or claims administrator, Cigna must process claims according to the terms and conditions set forth in each member's Plan. *Id.* ¶ 25. OON providers' fees are not capped by Cigna in the same manner as for in-network providers. *Id.* ¶¶ 26-27.

The Plans provide that the reimbursement amount on a particular claim depends on the determination of the Maximum Reimbursable Chart ("MRC"), pursuant to a percentile elected by the plan sponsor. *Id.* ¶ 133. The methodology for determining the MRC is selected by the plan sponsor, and the plans are categorized as MRC I or MRC II plans depending on the chosen MRC methodology. *Id.* ¶ 134. MRC I Plans generally calculate reimbursement based on "[a] percentile of charges made by providers of such service or supply in the geographic area where the service is received" based on charges "compiled in a database [Cigna has] selected" to determine the MRC. *Id.* ¶ 135. MRC II Plans generally calculate reimbursement based on "a methodology similar to a methodology utilized by Medicare to determine the allowable fee for similar services within the geographic market." *Id.* ¶ 137.

Plan sponsors of MRC I plans must select the percentile they want Cigna to use to price their OON claims. The percentile chosen represents the percentile of billed charges at a given rate with the database (e.g., if a plan sponsor elects the 80th percentile, then the MRC I amount would be higher than 80% of the billed charges compiled in the database). Thus, the higher the percentile, the higher the OON costs. *Id.* ¶ 139. For MRC I plans, the database varies depending on the type of service claims billed. For certain professional claims (i.e., claims submitted by medical professionals like physicians), Cigna applied the rates recommended by FAIR Health's database. *Id.* ¶ 140. FAIR Health is a nonprofit company that collects data for and manages the nation's largest database of privately billed health insurance claims. *Id.* ¶ 141. FAIR Health organizes the claims data they receive by procedure code and geographic area as well as into percentiles that reflect the percent of fees billed in a particular geographic area. *Id.* ¶ 142. For most of the relevant time period, FAIR Health did not publish a database for outpatient facility claims, and Cigna used the Viant OPR database to price these types of claims. *Id.* ¶ 143. Viant

collects and maintains a database of charge data for facilities, broken down by geographic area, which it uses to determine a recommended rate. *Id.* ¶ 144.

Cigna develops its MRC II fee schedule based on Medicare's methodology and incorporates published Medicare rates. *Id.* ¶ 145. It uses a "crosswalk" methodology to develop fees for claims that its plans cover but Medicare does not. *Id.* Cigna crosswalks outpatient facility claims, which do not have corresponding Medicare rates. *Id.* ¶ 146. In the case of intensive outpatient services, Cigna crosswalked those services to Medicare's rates for partial hospitalization services. *Id.* ¶ 147.

**4. Verification of Benefits and Pre-Authorization**

Plaintiffs, or their billing companies, typically contact Cigna by phone to confirm that patients are enrolled in a Cigna health plan and have OON benefits for SUD services ("VOB" calls). *Id.* ¶ 148. VOB calls usually take place before a provider admits a new patient for SUD services and give providers basic information about a patient's health plan, the benefits provided thereunder, member responsibility amounts, and unmet out-of-pocket maximums. *Id.* ¶ 149. Some Plans require pre-authorization for certain types of treatment. *Id.* ¶ 154. Where a provider seeks pre-authorization, they typically do so by calling Cigna and providing the patient's diagnosis and proposed course of treatment, so that Cigna may determine whether the treatment is medically necessary and appropriate. *Id.* ¶ 155.

**5. Cigna's Investigations into Providers**

In 2015, Cigna's Special Investigations Unit (SIU) opened an investigation into Plaintiff TML which identified concerns held by Cigna, including alleged practices of billing for services not rendered, misrepresentation of services, and suspected waiver of member responsibility amounts ("MRAs"). *Id.* ¶ 100. The SIU ultimately informed TML of its audit findings by letter in October 2019 and identified damages owed to Cigna by TML in the amount of $5,536,838.22 based on TML's alleged failure to render services as billed, misrepresentation of services, and failure to adhere to Cigna's behavioral health guidelines. *Id.* ¶ 107. The SIU subsequently sent letters to other Plaintiffs informing them that due to alleged failure to respond to the SIU's audit requests in similar investigations, the findings of the TML

audit would be applied against them. *Id.* ¶ 112.

**B. Procedural History**

Plaintiffs originally filed individual suits in the Superior Court of California, Orange County, on different dates (Dkt. 1-1). Defendants removed those suits to this Court (Dkt. 1). After a series of orders by this Court consolidating Plaintiffs' cases, Plaintiffs filed their Consolidated Amended Complaint ("CAC") (Dkt. 20) on March 30, 2020, that brought seven causes of action. On March 29, 2021, this Court granted Defendants' motion to dismiss the CAC ("Order") (Dkt. 75) but granted leave to amend on all claims, except for Plaintiffs' state law claims that depend on existence of an ERISA plan. On April 28, 2021, Plaintiffs filed their Second CAC ("SCAC") (Dkt. 79) alleging that the Cigna and MultiPlan Defendants failed to properly pay Plaintiffs for SUD treatment and laboratory services they provided to 508 patients with health insurance plans that were sold, insured, managed, and/or administered by Cigna. Plaintiffs brought seven causes of action including claims for plan benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), breach of written contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and unfair competition. *See generally* SCAC.

On June 11, 2021, Cigna and Multiplan filed motions to dismiss (Dkts. 83, 84). Plaintiffs opposed on July 7, 2021 (Dkt. 88). Cigna and Multiplan submitted their replies on July 14, 2021 (Dkts. 92, 93). On July 26, 2021, the Court granted in part the motions to dismiss ("Minute Order") (Dkt. 94). Specifically, the Court denied Defendants' Motion to Dismiss Plaintiffs' claim for violating ERISA under 29 U.S.C. § 1132(a)(1)(B), claim for breach of express contract, and claim for promissory estoppel. The Court granted Defendants' Motion to Dismiss Plaintiffs' claim for bad faith, claim for breach of implied contract, claim for breach of oral contract, and unfair competition claim. *See* Minute Order. On August 17, 2021, Defendant Cigna filed its Answer to Plaintiffs' Consolidated Second Amended Complaint and asserted several counterclaims against Providers including (1) fraud, (2) negligent misrepresentation, (3) conversion, (4) breach of contract, (5) intentional interference with contractual relations, (6) violation of California's Unfair Competition Law, (7) restitution under ERISA § 502(a)(3), and

declaratory and injunctive relief under ERISA § 502(a)(3). *See* Cigna's Answer & Counterclaim (Dkt. 99). On August 18, 2021, Multiplan and Viant filed their answer (Dkt. 100). On September 21, 2021, Providers filed their answer to Cigna's counterclaims (Dkt. 106).

On April 17, 2023, the parties moved for summary judgment. Specifically, Providers filed a motion seeking partial summary judgment on Cigna's intentional interference with contractual relations claim, UCL claim, and claim for restitution under ERISA § 502(a)(3). *See* Providers' MSJ (Dkt. 139). Cigna opposed Providers' Motion on May 8, 2023 ("Cigna Opp'n") (Dkt. 226). Providers filed their reply on May 22, 2023 ("Providers' Reply") (Dkt. 258). Defendants Viant and Multiplan also moved for summary judgment on Providers' claims, Multiplan MSJ (Dkt. 139), which Plaintiffs opposed on May 8, 2023 ("Pls.' Opp'n to Multiplan MSJ"). Viant and Multiplan filed their reply on May 22, 2023 ("Multiplan Reply") (Dkt. 256). Cigna filed its motion for summary judgment on April 17, 2023 ("Cigna MSJ") (Dkt. 141), which Plaintiffs opposed on May 8, 2023 ("Pls.' Opp'n to Cigna MSJ") (Dkt. 224). Cigna filed its reply on May 22, 2023 ("Cigna Reply") (Dkt. 261). The Court heard oral argument on August 16 and 17, 2023.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving

party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III. DISCUSSION

### A. MultiPlan's Motion on Plaintiffs' Claims

MultiPlan asks the Court to grant summary judgment as to the SCAC in its entirety as it concerns MultiPlan. *See generally* Multiplan MSJ.

MultiPlan argues Plaintiffs' first claim for plan benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B) fails because MultiPlan is not a fiduciary of the ERISA plan and thus is not a proper defendant on a claim for plan benefits. *Id.* at 8-11. MultiPlan next asserts Plaintiffs' second claim for breach of written contract fails because Plaintiffs cannot produce evidence indicating MultiPlan was obligated under any contract to reimburse Plaintiffs for the services they rendered to the patients at issue. *Id.* at 11-12. Next, MultiPlan argues it is entitled to summary judgment on Plaintiffs' claim for promissory estoppel because Plaintiffs cannot establish that MultiPlan promised to pay them for treatment and services provided to patients or that Plaintiffs relied on

any such promise by MultiPlan such that MultiPlan should reasonably have expected to induce Plaintiffs' actions. *Id.* at 12-14. Finally, MultiPlan argues the theories of liability on which Plaintiffs' claims are based, of agency, alter ego, and civil conspiracy, all fail, and that MultiPlan is therefore entitled to summary judgment on all claims against it. *Id.* at 14-23.

In response, Providers assert that MultiPlan's role as an administrator, specifically in generating reimbursement rates and handling claim negotiations, was sufficiently substantive that it became an ERISA fiduciary. Pls.' Opp'n to Multiplan MSJ at 3-9. Plaintiffs also contend that MultiPlan was acting as an agent of Cigna when it performed claims administration functions. *Id.* at 13-14. The Court finds neither argument persuasive and thus GRANTS summary judgment to MultiPlan on all claims.

**1. Plaintiffs' ERISA Claim against MultiPlan**

Providers' first cause of action is for plan benefits under ERISA, 29 U.S.C. § 1132(a)(1). "Suits under § 1132(a)(1)(B) to recover benefits may be brought against the plan as an entity and against the fiduciary of the plan." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014) (internal quotation and emphasis omitted). "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.'" *Pegram v. Hedrich*, 530 U.S. 211, 222 (2000) (citing 29 U.S.C. §§ 1002(21)(A)(i)–(iii)). It is possible for a third-party administrator to become an ERISA fiduciary. "A fiduciary is any entity that 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... [or] has any discretionary authority or discretionary responsibility in the administration of such plan.' " *Spinedex*, 770 F.3d at 1298 (quoting 29 U.S.C. § 1002(21)(A)). "While the mere provision of contractual benefits does not make an insurance company a fiduciary under ERISA, an insurer will be found to be an ERISA fiduciary if it has the authority to grant, deny, or review denied claims." *Kyle Railways, Inc. v. Pac. Admin. Services, Inc.*, 990 F.2d 513, 518 (9th Cir. 1993) (holding that benefit plan insurer did not exercise sufficient discretion over claim payments of Plan assets to be considered an ERISA fiduciary where its duties were limited to reimbursing plaintiff for benefits).

Plaintiffs do not contend that MultiPlan is an ERISA plan, but instead that it is "a plan fiduciary" under ERISA insofar as it had "discretionary authority to determine the amount of benefits owed for medically necessary covered services, pursuant to a service agreement that incentivized MultiPlan to reduce the amount of benefits paid to Plaintiffs, using MultiPlan's pricing database…." SCAC ¶ 158. According to Providers, the pricing and negotiation services that MultiPlan provides for Cigna fall beyond the scope of "purely ministerial functions" that are insufficient to make an entity an ERISA fiduciary. *See* Dep't of Labor, Interpretive Bulletin 75-829 C.F.R. § 2509.75-8 ("[A] person who performs purely ministerial functions […] for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so."); Pls.' Opp'n to Multiplan MSJ at 4. Providers emphasize that MultiPlan operated its own pricing database, outside of the framework established by the Plans and that MultiPlan agreed to accept Cigna's delegation of authority as a third-party administrator for claims that MultiPlan processed and negotiated on behalf of Cigna. *See generally id.*

MultiPlan argues the evidence establishes that Cigna has the discretion to either accept a pricing recommendation made by MultiPlan and pay a provider in accordance with the recommended amount, or to reject MultiPlan's pricing recommendation and pay a provider some other amount as determined by Cigna in the administration of its benefit plans. MultiPlan MSJ at 10-11. As Cigna, not MultiPlan, has the ultimate discretion over how much the provider is paid, MultiPlan argues it is not an ERISA fiduciary. *Id.*

MultiPlan relies on *In re Out of Network Substance Use Disorder Claims against UnitedHealthcare*, No. 819CV02075JVSDFMX, 2022 WL 17080378, at *6 (C.D. Cal. Oct. 14, 2022) ("*UnitedHealthcare*"), which presents a substantially similar set of facts. In that case, the court granted summary judgment to MultiPlan on the plaintiffs' ERISA claim on the grounds that

MultiPlan's services for United were purely ministerial and, as such, it was not an ERISA fiduciary. *Id.* at *6. Plaintiffs argue the present set of facts are distinguishable, specifically pointing to MultiPlan's role in negotiating Global Agreements and Single Case Agreements. Pls.' Opp'n to Multiplan MSJ at 14.

The Court finds the material facts of this case do not differ from those supporting the court's decision in *UnitedHealthcare* such that the Court would reach a different conclusion here. Here, as in *UnitedHealthcare*,

> "While MultiPlan generated price recommendations, it lacked the authority to bind [Cigna] to that recommendation. MultiPlan was not reviewing plan documents, and instead was negotiating and recommending rates based on the parameters provided to it by [Cigna]. In every instance, the claim was referred back to [Cigna] to make the ultimate determination of what to pay on the claim."

*UnitedHealthcare*, No. 819CV02075JVSDFMX, 2022 WL 17080378, at *6.

Plaintiffs do not point to any language that supports a finding that Cigna delegated to MultiPlan, or that MultiPlan accepted any such delegation of, discretionary authority and/or control with respect to the management of any health benefit plan or the disposition of any health benefit plan assets. Further, Plaintiffs do not point to any evidence that Cigna delegated to MultiPlan or that MultiPlan exercised final, decision-making authority to determine the amount of reimbursement that would be paid to Plaintiffs for any of their claims. The functions performed by MultiPlan, primarily making recommendations for reimbursement amounts that were submitted to Cigna for approval, appear to be purely ministerial in nature. *See* 29 C.F.R. § 2509.75–8(D–2) (listing several "purely ministerial functions," the performance of which do not make an entity an ERISA fiduciary, including "calculation of benefits," "processing of claims," and "making recommendations to others for decisions with respect to plan administration"). Based on the undisputed facts, the Court has no basis to conclude that MultiPlan is an ERISA fiduciary. *Kyle Railways*, 990 F.2d at 518 ("Guarantee did not exercise sufficient discretion over claim payments or the Plan's assets to be considered an ERISA fiduciary.").

Accordingly, the Court concludes that MultiPlan is not an ERISA fiduciary

and GRANTS summary judgment to MultiPlan on Providers' first claim.

**2. Plaintiffs' Breach of Contract Claim and Promissory Estoppel Claim against MultiPlan**

Although Plaintiffs assert their breach of contract and promissory estoppel claims are brought under theories of agency, alter-ego, and civil conspiracy liability, Plaintiffs have seemingly abandoned the latter two arguments, as they do not address either in their Opposition. *See, e.g.*, *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (arguments are waived when party does not raise them in opposition to summary judgment). The Court therefore only addresses Providers' agency theory of liability as to MultiPlan.

**a. Agency**

California law defines an agent as "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code. § 2295. The essential characteristics of an agency relationship are "(1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (2007) (internal quotation omitted).

The record does not support Providers' argument that MultiPlan was an agent of Cigna. The evidence demonstrates that Cigna retained the authority to decide whether to accept any individual negotiation or pricing recommendations made by MultiPlan and whether to access MultiPlan's contract rates, and Cigna paid money directly to Plaintiffs upon doing so. MultiPlan's recommendations were not binding and did not alter any legal relationship between the Providers and Cigna. Accordingly, Providers fail to demonstrate that MultiPlan meets the required elements of an agency relationship. *See Schaffer Fam. Invs. LLC v. Sonnier*, 2016 WL 6917269, at *3–4 (C.D. Cal. July 5, 2016) (finding insufficient evidence to establish the existence of an agency relationship where "Plaintiffs did not give Defendant the power to contract with third parties on their behalf" and "Plaintiffs retained the authority to decide whether to accept any individual investment before it was made, and paid money directly to [third parties] upon doing so").

The conclusion that MultiPlan is not Cigna's agent under California law is bolstered by the terms of the agreement between the two entities, which expressly defines MultiPlan's relationship with Cigna "as that of an independent contractor and not that of a servant, agent, or employee" and states that neither MultiPlan nor its personnel "will hold itself out as, or claim to be acting as, an employee, agent, or servant" of Cigna. Declaration of Monica Armstrong ("Armstrong Decl.") (Dkt. 139-4) at ¶ 42; *see also* MSA General Terms and Conditions, § 2.1 (MPI_Cigna0007133), Armstrong Decl. Ex. 1. The MSA states that MultiPlan "is not authorized to and will not make any agreements or representations on behalf of" Cigna. *Id.* While this language alone is not dispositive, Plaintiffs have not produced any evidence that would persuade the Court to ignore these clear statements.

Additionally, as the court noted in *UnitedHealthcare*, even if Providers were able to establish that MultiPlan was an agent of Cigna, that alone does not suffice to establish liability here. Under California law, "in contrast to the vicarious liability of principals, agents are not vicariously liable for the torts of their principals." *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 888 (E.D. Cal. 2019) (quoting *Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 692 (2018)). Thus, if Providers established that MultiPlan is directly liable for any of the claims, then that liability could also be attributed to Cigna. However, as the alleged agent, MultiPlan cannot be held liable for torts committed by Cigna. *See Malibu Behavioral Health Servs. Inc. v. Magellan Healthcare, Inc.*, 2021 WL 2457155, at *5 (C.D. Cal. June 16, 2021) (dismissing claims against administrator because even if the insurer may be liable for representations made by its agent, that does not create liability on behalf of the agent).

Accordingly, the Court concludes that Providers have failed to demonstrate a triable issue of fact that MultiPlan is Cigna's agent or that it could hold MultiPlan liable for Cigna's actions under an agency theory of liability. The Court therefore GRANTS MultiPlan's motion for summary judgment on Providers' claims for breach of contract and promissory estoppel.

**B. Cigna's Motion on Plaintiffs' Claims**

Cigna seeks summary judgment on all Plaintiffs' remaining claims, namely their ERISA

claim, Breach of Contract claim, and Promissory Estoppel claim. *See generally* Cigna MSJ.

Cigna argues that Plaintiffs' ERISA and Breach of Contract claims fail for four reasons: (1) that Cigna adjudicated the claims in accordance with Plan terms and Plaintiffs have no evidence that either the law or the Plans required Cigna to pay Plaintiffs more than they have already received; (2) that Plaintiffs failed to appeal a majority of their claims and thus failed to exhaust their administrative remedies as required by ERISA, and under state contract law for the non-ERISA claims; (3) that Plaintiffs are not proper assignees; and (4) several claims are barred by the statute of limitations. Cigna MSJ at 11-24. As to Plaintiffs' promissory estoppel claim, Cigna asserts it is entitled to summary judgment on the grounds that: (1) this claim is based on the same facts as the ERISA claim, and is thus preempted by ERISA, as this Court has already ruled (*see* Dkt. 75 at 6); and (2) the evidence demonstrates that Cigna never made a clear and unambiguous promise to pay a percentage of Plaintiffs' billed charges. *Id.* at 24-27.

To Cigna's first set of arguments, Plaintiffs respond that (1) Cigna's benefits decisions were arbitrary and capricious and driven by Cigna's structural conflicts of interest; (2) Cigna did not reimburse Providers according to the Plan terms when it used inapplicable Medicare rates instead of billed charges; (3) that Plaintiffs are proper assignees; (4) Plaintiffs are not subject to the exhaustion requirement; (5) the applicable statute of limitations is four years. Pls.' Opp'n to Cigna MSJ at 10-27. As to Cigna's second set of arguments, Plaintiffs respond that Cigna's verifications of benefits and prior authorizations support and create a dispute of fact as to Plaintiffs' promissory estoppel claim. *Id.* 27-29.

As detailed below, the Court finds many disputed issues of fact exist on Plaintiffs' claims, and thus GRANTS IN PART and DENIES IN PART summary judgment to Cigna on all Plaintiffs' remaining claims.

**1. Plaintiffs' ERISA Claim against Cigna**

Cigna argues that it is entitled to summary judgment because Plaintiffs have not met their burden to prove that they are entitled to the benefits they seek because they have complied with all required Plan terms. *See Wit v. United Behav. Health*, 58 F.4th 1080, 1097-98 (9th Cir. 2023)

(holding that ERISA plan beneficiaries were required to comply with plan's requirements before bringing action for denial of benefits). Additionally, Cigna argues Plaintiffs cannot establish that Cigna failed to comply with the terms of any of the Plans. Cigna MSJ at 11.

**a. Standard of Review**

Providers and Cigna dispute which standard of review applies to Plaintiffs' ERISA claim against Cigna.

"[D]enial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "Where an ERISA Plan grants discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a plan administrator's interpretation of a plan is reviewed for abuse of discretion." *O'Rourke v. N. Cal. Elec. Workers Pension Plan*, 934 F.3d 993, 998 (9th Cir. 2019) (quoting *Lehman v. Nelson*, 862 F.3d 1203, 1216 (9th Cir. 2017)). A defendant bears the burden of proving that a plan grants it discretionary authority. *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir. 2015).

Cigna argues that the ERISA plans, as evidenced by the Summary Plan Descriptions (SPDs) and Administrative Services Only (ASO) Agreements, grant Cigna discretionary authority to determine coverage under the plan. If granted this discretionary authority, Cigna's decisions should be evaluated under the abuse of discretion standard. *Wells v. Reliance Standard Life Ins. Co.*, 285 F. App'x 343, 344-45 (9th Cir. 2008); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). Cigna MSJ at 12. Providers respond that Cigna has not met its burden to show that the Plans unambiguously grant it fiduciary discretion, *Noah U. v. Tribune Co. Med. Plan*, 138 F. Supp. 3d 1134, 1146 (C.D. Cal. 2015), and so ask the Court to apply a de novo standard of review. Pls. Opp'n to Cigna MSJ at 11-12.

Plaintiffs do not dispute that the documents provided by Cigna, the SPDs and ASOs, delegate discretion to Cigna to interpret Plan terms, make factual determinations, and determine eligibility for benefits. *See id.* Instead, Plaintiffs contend that the Court cannot rely on these

documents because they are not the "actual Plans." *Id.* The Court disagrees.

The Ninth Circuit has concluded "the [summary plan description] is a plan document and should be considered when interpreting an ERISA plan." *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002). The Ninth Circuit has also held that the abuse of discretion standard applies where a summary plan description ("SPD") "unambiguously confers upon the Plan administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan." *Gertjejansen v. Kemper Ins. Cos.*, 274 F. App'x 569, 570 (9th Cir. 2008). "[A]n SPD may constitute a formal plan document [] so long as the SPD neither adds to nor contradicts the terms of existing Plan documents." *Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017). Here, Plaintiffs do not meaningfully dispute that the SPDs confer upon Cigna discretionary authority to determine eligibility for benefits and construe the terms of the plan. Nor do they provide any evidence that contradicts the terms of the SPDs. In line with other courts in this Circuit, the Court therefore applies an abuse of discretion standard to Cigna's benefits determinations.

**b. Conflicts of Interest**

Providers argue that, should the Court apply an abuse of discretion standard, it should take into account Cigna's alleged conflicts of interest, the presence of which preclude any ruling as a matter of law on summary judgment. Pls.' Opp'n to Cigna MSJ at 14-16. If a conflict of interest exists, such a conflict should be "weighed as a factor in determining whether there is an abuse of discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (citing *Firestone*, 489 U.S. at 113). The significance of a conflict of interest varies from case to case and is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (en banc). Additionally, when issues regarding the nature and impact of a conflict of interest arise, "summary judgment may only be granted if after viewing the evidence in the light most favorable to the non-moving party, there are [no] genuine issues of material fact." *Stephan v. Unum Life Ins. Co. of America*, 697 F.3d 917, 930 (9th Cir. 2012).

The Ninth Circuit has recognized that the types of conflicts of interests that may arise differ between self-funded plans (those in which the benefits are paid by the employer and Cigna acts only as an administrator) and fully-funded plans (those in which Cigna both funds the plans and acts as an administrator). The Ninth Circuit has held that fully-funded plans produce an inherent structural conflict. *See Abatie*, 458 F.3d at 965 (citing *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999). Accordingly, the Court finds there to be a conflict of interest at play for the fully-funded plans in this case, while recognizing that is a small minority of the plans at issue. When such a conflict arises, the Court will weigh it as a factor in determining whether there was abuse of discretion. *Stephan*, 697 F.3d at 921.

Providers argue the conflict in self-funded plans arises from Cigna's decision to employ MultiPlan and apply the crosswalking methodology to inappropriately reimburse Plaintiffs at Medicare rates, thereby drastically increasing its own profits. Pls. Opp'n to Cigna MSJ at 15. Providers contend that Cigna's profit-driven shift from reimbursing OON treatment at billed rates to reimbursing through its cost containment program creates a clear conflict of interest. *Id.* Further, Providers allege Cigna reimbursed their claims at inapplicable crosswalked Medicare rates, through an agreement with MultiPlan that financially incentivized each of them to further under-reimburse Providers, generated millions of dollars in profit for Cigna. *Id.* Plaintiffs contend that Cigna's cuts to Plaintiffs' billed charges caused Cigna to earn in fees approximately double what it paid out on Plaintiffs' claims on the savings. *Id.*

Under ERISA, Cigna has a duty to make claim determinations "solely in the interests of the [plan's] participants and beneficiaries. *Stephan*, 697 F.3d at 929 (quoting *Glenn*, 554 U.S. at 106). The percentage of fees that Cigna receives in exchange for its cost containment program gives rise to a certain "degree of skepticism," as it could incentivize Cigna to under-reimburse claims in order to earn a higher percentage of savings. *Id.* Although this is a contractual term agreed upon by Cigna and the patients' employers, the incentive to under-reimburse claims remains. Furthermore, the evidence before the Court indicates that Cigna expressly contemplated the amount it would save by implementing this methodology. Notably, Plaintiffs produce emails from Cigna to that effect. *See* Declaration of Nathaniel Izzo ("Izzo Decl.")

(Dkt. 241-3) Ex. C-1 at 1-2. ("Most of the facility claims are still paying at billed charges. The issue here is there are no Medicare rates for substance abuse, so MRC pricing kicks back to billed charges."; "When it comes to labs, the enterprise is working on a coverage policy change around the number of tests allowed per screening as well as denying quantitative text when a customer has a negative qualitative test."; "We got approval last week to move forward with the pilot to change the way we're reimbursing these labs, a change we estimated would have been worth over $6M in 2014 to IFP [Individual and Family Plans] alone.").

Thus, the Court finds that a conflict of interest exists regarding plans using Cigna's cost containment program. "[W]hen reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, we must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference we accord the administrator's decision." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008). Cigna stresses that the conflict of interest analysis should only apply to reviewing whether Cigna approved or denied a benefit claim, not the amount. Cigna Reply at 11. The Court does not see a compelling reason why Cigna's financial conflict of interest would be relevant to reviewing a wholesale denial of a claim but irrelevant to reviewing a reimbursement of a claim at 5% of the billed amount (or in other words, a denial of 95% of the billed amount). Therefore, the Court will take into account whether Cigna's conflicts of interest played a role in choosing to rely on MultiPlan's repricing methodology and how that methodology was applied.

**c. Whether Cigna's Benefit Determinations Were Arbitrary and Capricious**

Under the abuse of discretion standard, an administrator's decision will not be disturbed if it is the 'result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Swearingen v. Westlake Healthcare Plan, 2021 WL 3733242*, at *7 (C.D. Cal. Aug. 24, 2021) (quoting *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), aff'd sub nom. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).). Plaintiffs bear the burden of establishing that Cigna abused its discretion. *Webb v. Hartford Fin. Servs. Group, Inc.*, 608 F. Supp. 2d 1218, 1224 (C.D. Cal. 2009). Here, genuine disputes of fact exist as to whether Cigna abused its discretion in

selecting and applying methodologies for reimbursing Plaintiffs' claims.

"An ERISA fiduciary is said to abuse its discretion if it renders decisions without explanation, or construe[s] provisions of the plan in a way that clearly conflicts with the plain language of the plan." *Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*, 329 F. Supp. 2d 1198, 1211 (C.D. Cal. 2004) (citation omitted). Cigna argues its payments were not an abuse of discretion because they complied with the Plan terms in three ways: (1) it paid according to the MRC; (2) through MultiPlan or Zelis, Plaintiffs agreed to a specific rate, which Cigna then paid; or (3) no payment was owed to Plaintiffs because the services provided were not covered under the Plan. The Court addresses each argument in turn.

**a. MRC Reimbursement**

Cigna argues that for the claims that required payment pursuant to the Plan MRC election, Cigna paid those claims in accordance with the MRC terms in the Plans. Cigna MSJ at 14-16.

Under Cigna's MRC I plans, the MRC value is typically determined based on the lesser of the provider's normal charge for a similar service or supply or a percentile of charges made by providers of such service or supply in the geographic area where the service is received. These charges are compiled in a database selected by Cigna. Dkt. 260-3 ¶ 135. Plan sponsors of MRC I Plans must select the percentile they want Cigna to use to price their OON claims. This is not a percentage of Plaintiffs' billed charges, but a percentage applied to the database (e.g., if a plan sponsor elects the 80th percentile, then the MRC I amount would be higher than 80% of the billed charges compiled in the database). For most of the relevant time period, Cigna used MultiPlan's database, which reprices claims based on Medicare rates to reimburse non-Medicare providers. *Id.* 143.

MRC II plans, meanwhile, typically provide that the MRC value is determined based on the lesser of the provider's normal charge for a similar service or supply or a percentage of a schedule that Cigna has developed that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for similar services within the geographic market. Dkt. 260-3 ¶ 137. Cigna develops its MRC II fee schedule based on Medicare's methodology and incorporates published Medicare rates. For claims that its plans cover but

Medicare does not, Cigna uses a "crosswalk" methodology, where it essentially applies Medicare rates for other types of services to those claims. *Id.* 145.

Cigna argues its use of MultiPlan's database is in accordance with the language of MRC I and MRC II plans. Cigna MSJ at 15-18. Opposing, Plaintiffs assert that Cigna's reliance on a database that used Medicare rates for different types of providers of different types of services, i.e., not connected to the substance use disorder services Plaintiffs provided, conflicts with MRC plan language referring to "similar services." Pls.' Opp'n to Cigna MSJ at 13-14.

While the Court is aware of no authority indicating that the use of MultiPlan's data, which reprices claims based on Medicare rates to reimburse non-Medicare providers, is an abuse of discretion, that fact is not conclusive. It is undisputed that there are no Medicare rates that cover the type of SUD services that Plaintiffs provided to Cigna's members. The central question is therefore whether Cigna's application of Medicare rates to Providers' claims for reimbursement conflicted with the terms of MRC I or MRC II plans because those rates were not for similar services. When viewed in the context of Cigna's conflicts of interest, namely its financial incentive in applying Medicare rates and earning a percentage of the associated savings, the Court cannot determine at this stage that there was no abuse of discretion. Accordingly, the Court DENIES summary judgment on Plaintiffs' ERISA claims pursuant to Cigna's MRC methodologies.

**b. Negotiated Claims through MultiPlan or Zelis**

Plaintiffs do not dispute that Cigna is entitled to summary judgment on claims negotiated through Zelis, an independent entity from MultiPlan. *See* Pls. Opp'n to Cigna MSJ at 20-22. Accordingly, the Court grants Cigna's motion for summary judgment on each claim negotiated through Zelis.

As to claims negotiated through MultiPlan, Cigna argues it is entitled to summary judgment because Plaintiffs entered into Single Case Agreements (SCAs) where they accepted a negotiated payment in full for those claims and Cigna paid the negotiated amounts. Dkt. 260-3 ¶ 129. Plaintiffs oppose, arguing the negotiated payments were misleading and similarly premised on inapplicable Medicare rates and defective databases. Pls. Opp'n to Cigna MSJ at 20-22.

The Court acknowledges that Plaintiffs have not submitted evidence sufficient to invalidate each of the 570 SCAs. The Court has concerns, however, over how these SCAs were negotiated, especially in the context of Cigna's financial incentive to push Providers into accepting low payouts. The documents produced in discovery show that, as a result of these negotiated SCAs, Cigna regularly made significantly more than the Providers. In just one illustrative example, Cigna made $1,920.80 on two claims for which they reimbursed a Provider only $324 for billed costs of $5,750. *Id.* This gross disparity between Cigna's profits and the reimbursement rates raises questions about the propriety of Cigna's reimbursement methodology.

Furthermore, the negotiated offers, communicated to Providers by MultiPlan and ultimately controlled by Cigna, were routinely presented to Plaintiffs on a take-it-or-leave-it basis. Coversheets on settlement offers included language such as "***DEADLINE AND CLOSURE TODAY, 6/28/19, AT 10 AM MST*** [] ***MRC2 BEST OFFER*** [] This is the BEST and HIGHEST offer that I can extend on this MRC2 claim[,]" and "****MAX PER MRC2**** [] Claim is MRC2 option allowing as low as 110% of Medicare rate, if declined the claim will be returned to CIGNA for the MRC2 processing and once processed CIGNA will not allow any appeals. [] This is the max I can offer on this case." Pl.'s Opp'n to Cigna MSJ at 20-21. Plaintiffs, faced with the prospect of reimbursement of 5% of their billed charges or nothing, understandably opted for the low payout. In these circumstances, that Plaintiffs signed the SCAs and Cigna complied with the terms of those SCAs does not conclusively determine that Cigna did not abuse its discretion. The Court finds the issue of whether Providers were misled in signing the SCAs inappropriate for resolution here and DENIES Cigna's motion for summary judgment on the negotiated claims.

**c. Claims Deemed Not Medically Necessary**

Cigna next argues it is entitled to summary judgment on the claims at issue that they denied on the basis that the services were not covered at all under the Plans, including because the services were not medically necessary under Cigna's behavioral health guidelines. *See* Dkt. 242-1 169 (1,346 claims at issue were denied because as not medically necessary). While the parties assert that Cigna either has or has not met its burden to show that the services were in

fact not medically necessary, neither party points to compelling evidence supporting their arguments. Given the sparse evidentiary record before the Court on this point, the Court cannot determine whether these denials were an abuse of discretion and so finds summary judgment inappropriate. Accordingly, the Court DENIES Cigna's motion for summary judgment on Plaintiffs' claims denied as not medically necessary, as it finds this issue better suited for resolution at trial.

**d. Member Responsibility Amounts (MRAs)**

Cigna next argues that it is entitled to summary judgment on claims where Plaintiffs engaged in fee forgiving and did not collect member responsibility amounts. Cigna MSJ at 16-18. Cigna argues that Providers' claims fail as a matter of law where it engaged in this practice because the applicable plans provide that no benefits are available if a provider has forgiven, waived, or failed to collect MRAs (collectively "member responsible amounts") from members. *Id.*

The plan provisions at issue here purport to allow Cigna to deny the payment of benefits when a provider "has waived, reduced, or forgiven any portion of its charges and/or any portion of copayment, deductible, and/or coinsurance amount(s) [a member is] required to pay for a Covered Service … without Cigna's express consent[.]" *Id.* at 17. The Ninth Circuit has held that such a provision is permissible. *See Smile care Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

As Providers note, however, the actual collection of member cost share amounts is not a condition of coverage under the plans. Specifically, Cigna employee Sean Petree testified that Cigna only requires providers to make "reasonable efforts" to collect, as "there are circumstances where patients will not pay" their providers. Declaration of Damon D. Eisenbrey ("Eisenbrey Decl."), Ex. B-9, Deposition of Sean Petree, ("Petree Depo.") (Dkt. 229-9) at 47:1-6, 52:24-53:4, 56:23-57:3.

Plaintiffs point to evidence of what they claim are reasonable efforts to collect, including having the insureds sign agreements confirming they are financially responsible for costs not paid by insurance, and at least some action to collect amounts from patients, including

invoicing patients for MRAs. *See, e.g.*, Dkt. 260-3 ¶ 120. While Cigna contends this evidence, and Providers' efforts to collect, are insufficient, the Court finds that a genuine dispute exists regarding whether Plaintiffs waived or failed to make reasonable efforts to collect MRAs from Cigna's members. As such, the Court DENIES Cigna's motion for summary judgment on the grounds that Providers did not collect MRAs.

**d. Exhaustion Requirement**

Cigna next argues it is entitled to summary judgment on the ERISA cause of action for every claim in which Plaintiffs failed to exhaust the plan's administrative remedies. Cigna MSJ at 18-20. Plaintiffs respond that they were entitled to pre-litigation notice from Cigna of all mandatory plan appeal procedures, deadlines, and exhaustion requirements, which Cigna failed to provide. Pls. Opp'n to Cigna MSJ at 24. As a result, Plaintiffs believe any plan exhaustion requirements were waived or rendered inapplicable. *Id.*

Typically, Plaintiffs would be required to exhaust all administrative remedies available to them, including an insurer's internal appeals process, before they may take separate legal action. *See Wit*, 58 F.4th at 1097 (quoting *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1088 (9th Cir. 2012)); *Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1485-86 (9th Cir. 1995). In similar circumstances, however, courts in this district have held that inadequate notice from an insurer can waive the exhaustion requirement. *See In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare*, No. SACV192075JVSDFMX, 2023 WL 2808747, at *22 (C.D. Cal. Jan. 13, 2023) ("*UnitedHealthcare*") (noting that while the Ninth Circuit has not addressed this particular question, other circuits have held that inadequate notice excuses a party from its obligation to exhaust administrative remedies prior to filing a civil suit).

Cigna does not dispute that it is required to provide notice to Plaintiffs as assignees but argues instead that its notice was sufficient. Cigna Reply at 15-16. The Court disagrees. Cigna points to one typical EOP, which explains the timeframe for initiating appeals and advises providers:

"You will be notified of the final decision in a timely manner, as described in your plan

materials. If your plan is governed by ERISA, you may also bring legal action under section 502(a) of ERISA following our review and decision."

*See* Dkt. No. 216-7 at 3. Contrary to Cigna's assertions, this advisal does not unambiguously inform the Providers of an exhaustion requirement. It does not state in plain language, for example, that Plaintiffs cannot bring legal action under section 502(a) of ERISA if they do not seek Cigna's review and decision. The Court does not find this language satisfies the adequate notice as a matter of law and so declines to grant summary judgment on this ground.

**e. Time-Barred Claims**

Cigna argues certain ERISA claims are time-barred on two grounds. Cigna MSJ at 20-21. First, certain claims are brought under Plans that require ERISA claims to be brought within three years and were brought after the expired limitations period. *Id.* Second, some claims are for services which fall outside ERISA's four-year statute of limitations. *Id.* Plaintiffs oppose only the first ground. *See* Pls. Opp'n to Cigna MSJ at 25.

As Plaintiffs do not dispute and the Court finds no independent reason to find that claims in which Cigna made payment before December 31, 2015 are time-barred, the Court grants Cigna's motion for summary judgment on those claims. The only remaining question is then whether the Court should apply the three-year limitations period included in certain Plans.

ERISA does not provide its own statute of limitations for suits to recover benefits. *Nathaniel W. v. United Behavioral Health*, 2018 WL 3585180, at * 4 (N.D. Cal. July 26, 2018). Accordingly, Courts apply the state law statute of limitations for written contracts to ERISA claims. *See Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 646–48 (9th Cir. 2000) Therefore, the default statute of limitations for an ERISA action to recover benefits in California is four years. *See Wetzel*, 222 F.3d at 646. However, "in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Heimeshoff*, 571 U.S. at 109.

Additionally, ERISA mandates that plan administrators give claimants notice of adverse

benefit determination and to include in such notices specific information regarding their appeal rights. Pertinent here is the requirement that plan administrators include "any additional material or information necessary for the claimant to perfect the claim" and a "description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action." 29 C.F.R. § 2560.503-1(g).

Providers argue that the Court should apply California's four-year statute of limitations, not the Plans' limitations, because Cigna failed to provide them with "any additional material or information necessary for the claimant to perfect the claim," namely pre-litigation notice of those limitations. 29 C.F.R. §2560.503–1(g). Pls.' Opp'n to Cigna MSJ at 25-26. The Court agrees. Significantly, Cigna's Explanation of Benefits (EOBs) that it sends to Providers apparently did not include notice of the time limitations in the members' plans. *See, e.g.*, Dkts. 216-7, 216-8, 216-9. Cigna points to no other evidence that it provided Plaintiffs with pre-litigation notice of these plans' time limits for pursuing an ERISA claim. Cigna has therefore not shown an absence of a genuine dispute of material fact on this claim.

For these reasons, the DENIES Cigna's motion for summary judgment on the grounds that Providers did not comply with the Plans' time limitations.

**f. Assignee Standing**

Lastly, Cigna asks the Court to grant summary judgment on Plaintiffs' claims with respect to the 67 Exemplar Patients whose Plans prohibit assignment of benefits. Cigna MSJ at 22. Opposing, Plaintiffs argue Cigna waived an anti-assignment defense because it never advised Plaintiffs about any anti-assignment provisions in the health plans at issue, nor did it deny Plaintiffs' claims on the grounds of any anti-assignment provisions. Pls.' Opp'n to Cigna MSJ at 26. The Court finds a genuine dispute exists as to whether Cigna waived the anti-assignment provisions in the plan and so declines to grant summary judgment on that ground.

In sum, the Court DENIES Cigna's motion for summary judgment on all Plaintiffs' ERISA claims, except those for which Cigna made payment before December 31, 2015.

**2. Plaintiffs' Breach of Contract Claim against Cigna**

Cigna next argues that it is entitled to summary judgment on Plaintiffs' breach of contract claim, which is limited to only 11 non-ERISA plans. Cigna MSJ at 23-24. The arguments it presents, as Cigna acknowledges, are almost exactly the same as its arguments in support of summary judgment on Plaintiffs' ERISA claim. Specifically, Cigna asserts: (1) it committed no breach of contract as to paid claims, because its payments on Plaintiffs' OON claims were based on its determination of the MRC in accordance with the plan benefits or an agreed-upon amount; (2) there was no breach of contract by Cigna as to claims denied because they were not medically necessary under Cigna's behavioral health guidelines or where Plaintiffs failed to collect MRAs; and (3) the breach claim is premised on Plaintiffs being assignees of the non-ERISA Plans as well as alleged third-party beneficiaries, but Plaintiffs have provided no evidence of third-party beneficiary status.

As to Cigna's first two arguments, the Court's analysis under Cigna's motion for summary judgment on Plaintiffs' ERISA claim is directly applicable. The Court will therefore not engage in duplicative discussion. Cigna's third argument, the only distinct argument in the breach of contract claim, also fails because even if Plaintiffs are not third-party beneficiaries, they can bring their breach of contract claim as assignees. As discussed under Plaintiffs' ERISA claim, the Court rejects Cigna's argument that it is entitled to summary judgment based on anti-assignment provisions. The Court therefore DENIES Cigna's motion for summary judgment on Plaintiffs' breach of contract claim.

**3. Plaintiffs' Promissory Estoppel claim against Cigna**

As a threshold matter, the Court agrees with Cigna that Plaintiffs' promissory estoppel cause of action must be limited to a small subset of the claims at issue in this lawsuit. This Court has previously dismissed with prejudice any promissory estoppel claim "to the extent [it] depend[s] on the existence of an ERISA plan." Dkt. 75 at 6-7. Plaintiffs' promissory estoppel claim is therefore limited to the 11 non-ERISA Plans at issue. Plaintiffs' scant arguments to the contrary, *see* Pls'. Opp'n to Cigna MSJ at 28-29, are unavailing. Additionally, Plaintiffs do not

dispute, and the Court agrees, that Cigna is entitled to summary judgment on Plaintiff's promissory estoppel claims for which Cigna made payment before December 31, 2017, based on the applicable two-year statute of limitations. *See id.*; *Vahora v. Masood*, 2017 WL 1213423, at *16 (E.D. Cal. Apr. 3, 2017).

Cigna asks the Court to grant summary judgment on the remaining claims (those for non-ERISA plans for which Cigna did not make payment before December 31, 2017), contending that Plaintiffs cannot establish any element of promissory estoppel— a clear and unambiguous promise to pay by Cigna, reasonable and foreseeable reliance by Plaintiffs, or injury. Cigna MSJ at 25-27. In response, Plaintiffs point to Cigna's verifications of benefits and prior authorizations as evidence of Cigna's promises. Pls.' Opp'n to Cigna MSJ at 27-28.

Under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth.*, 23 Cal.4th 305, 310, (2000). The elements of promissory estoppel are: (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) the reliance is both reasonable and foreseeable; and (4) the party asserting estoppel is injured by his reliance. *U.S. Ecology Inc. v. State of California*, 129 Cal. App. 4th 887, 901 (2005).

**a. Promise to Pay**

Under the first element, calls limited to verifying whether a patient is a Cigna member cannot on their own constitute a guarantee of future payment or be construed as a promise to pay. *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007); *UnitedHealthcare*, No. SACV192075JVSDFMX, 2023 WL 2808747, at *27. Courts have also found that merely representing the terms of insurance policies is not a "clear and unambiguous promise" to pay for services sufficient to support a promissory estoppel claim. *Summit Estate, Inc. v. Cigna Healthcare of Calif., Inc.*, 2017 WL 4517111, at * 6 (N.D. Cal. Oct. 10, 2017).

Plaintiffs argue that in verification calls, Cigna went beyond representing the terms of the insurance policies and contained statements from Cigna sufficient to meet the first element of promissory estoppel. Pls. Opp'n to Cigna MSJ at 27-29. In support of their argument that these verification and pre-authorization calls preclude a grant of summary judgment here, Plaintiffs rely heavily on the Ninth Circuit's holding in *Bristol SL Holdings, Inc. v. Cigna Health Life Insurance Company*, 2022 WL 137547, at *1 (9th Cir. Jan. 14, 2022). There, the Ninth Circuit reversed the lower court's grant of summary judgment on the plaintiff's promissory estoppel claim, holding that "the hundreds of verification and authorization calls, … evidence of a prior course of dealing with Cigna, specific and individualized treatment plans, [and] agreements over specific percentages of [usual, customary, and reasonable] UCR rates for the services rendered" was sufficient evidence for a "reasonable factfinder to conclude that an enforceable contract had been formed under governing California law." *Id.* at *1.

The evidence here is similar to the evidence sufficient to create a dispute of fact in *Bristol*, albeit less robust. It is undisputed that hundreds of VOB and pre-authorization calls took place. Dkt. 260-3 at ¶¶ 148-157. Plaintiffs have also provided evidence of a prior course of dealing with Cigna. Prior to 2015, the insurer had been reimbursing Plaintiffs' OON SUD claims at higher rates than those imposed through the cost containment program. *See, e.g.*, Declaration of Nathaniel Izzo on behalf of TML ("TML Decl.") at ¶ 7; Declaration of Nathaniel Izzo on behalf of DRR ("DRR Decl.") at ¶ 7; Declaration of Ryan Schrier on behalf of PPR ("PPR Decl.") at ¶ 7; Declaration of Ryan Schrier on behalf of WRC ("WRC Decl.") at ¶ 7; Declaration of Aaron Brower on behalf of SCAC ("SCAC Decl.") at ¶ 7. The record also reflects that Cigna was aware of and discussed with Providers specific and individualized treatment plans. *See, e.g.*, Dkt. 260-3 at ¶ 155 (noting that when a provider seeks pre-authorization, they typically do so by calling Cigna and providing the patient's diagnosis and proposed course of treatment).

Whether Cigna made any agreements on these calls about the rates at which Plaintiffs would be reimbursed, however, is less clear. Plaintiffs assert that on these VOB calls, Cigna informed Plaintiffs that their "claims will be reimbursed at the rate and manner promised, which

is Plaintiffs' billed charge minus any member deductible or coinsurance" *See, e.g.*, Dkt. 260-3 ¶ 2. The evidence in the record, however, does not support this statement. Deposition testimony of Providers' witnesses instead reflect that Cigna promised to adjudicate claims consistent with the patient's benefit plan, as laid out during the VOB call. *See, e.g.*, Dkt. 142-3, Deposition of Nathaniel Izzo, at 71:17-72:2 ("Q: Is it fair to say that the promise you're referring to [on the VOB call] is a promise to adjudicate claims consistent with the terms of the patient's benefit plan? A: Based on the terms provided during the verification of benefits process." ).

Cigna argues that summary judgment is appropriate here primarily because there was no promise by Cigna to pay a specified rate. Cigna MSJ at 25. Not so. As discussed above, what reimbursement rate the terms of the plan entitled Plaintiffs to is in dispute. If, as Plaintiffs assert, the plan terms entitled them to reimbursement at a higher rate than the Medicare rates used by Cigna, then laying out the terms of the member plan could be interpreted as a promise by Cigna to pay. The Court does not reach a conclusion on that issue here but finds granting summary judgment in Cigna's favor would be premature. In reversing the district court in *Bristol*, the Ninth Circuit held that the "factual dispute" between the two parties regarding the percentage of costs that Cigna would reimburse for plaintiff's services "proves summary judgment was inappropriate." 2022 WL 137547, at *1. The same reasoning applies here. Whether the evidence in the record is sufficient to prove that Cigna promised to pay a Plaintiffs' billed charges minus deductions as Providers allege is a question better left for trial.

**b. Reasonable Reliance**

Cigna next argues that even if Providers could identify a promise by Cigna, they cannot show they reasonably relied on such a promise. Cigna MSJ at 26-27. They point primary to the fact that these calls include recorded disclaimers, which specifically state that "the following covered services information does not guarantee coverage or payment" and "pre-approval is not a guarantee of coverage," before they are connected with a Cigna representative to discuss verification or pre-authorization. Dkt. 260-3 ¶¶ 151, 157. Cigna asserts that given these disclaimers, "no one could reasonably rely on the subsequent call to support a promise to pay." Cigna MSJ at 26.

Under Ninth Circuit law, Cigna's argument is not persuasive. In *Bristol*, the court held substantially similar disclaimers were insufficient to defeat a promissory estoppel claim and, in fact, could support the proposition that the parties had formed a contract with payment contingent on provision of services. 2022 WL 137546, at *1. Here too, Cigna has not met their burden to show that Plaintiffs could not have reasonably relied on the information Cigna communicated in the calls based only on the included disclaimers.

In sum, although Cigna may not have promised to pay a specific reimbursement rate on the VOB calls, the Ninth Circuit's reasoning in *Bristol* rests on several categories of evidence. The evidence in the record is sufficient at this stage to create a dispute of fact over whether Cigna made a promise to pay and whether Providers relied on that promise to their detriment. Accordingly, the Court GRANTS Cigna's motion for summary judgment on ERISA plan claims and time-barred claims and DENIES Cigna's motion for summary judgment on the remainder of Plaintiffs' claims under their promissory estoppel cause of action.

**C. Cigna's Motion on its Counterclaims**

Additionally, Cigna asks the Court to grant summary judgment on its counterclaims for Intentional Interference with Contractual Relations, Breach of Contract, and Conversion. Cigna MSJ at 28-30. Cigna also seeks under its ERISA § 502(a)(3) counterclaim: (1) a judicial declaration that Counterclaim-Defendants are not entitled to the amounts they allege, or to any additional payments, unless and until they reimburse Cigna for all amounts that were wrongfully obtained as a result of their waiver of the MRAs; and (2) an injunction prohibiting Counterclaim-Defendants from submitting claims for payment to Cigna that are governed by plans that prohibit waiver or forgiveness or MRAs. *Id.*

Cigna sole argument in support of motion for summary judgment on its counterclaims for Breach of Contract and Intentional Interference with Contractual Relations, as well as the relief it seeks specific to its ERISA claim, is that Plaintiffs' alleged waiver and deliberate failure to collect MRAs entitles it to summary judgment on these claims. *Id.* Plaintiffs' waiver of MRAs is also a critical component of its cause of action for conversion. *Id.* at 29-30. As the Court has discussed above, however, the evidence in the record does not conclusively establish that

Plaintiffs systematically waived MRAs. It follows that issuing summary judgment on Cigna's counterclaims on that basis would be similarly premature, and that these claims would be better resolved at trial. The Court therefore DENIES Cigna's motion for summary judgment on its counterclaims for intentional interference, breach of contract, and conversion. The Court also declines to issue a judicial declaration or injunction regarding the ERISA counterclaim.

**D. Providers' Motion on Cigna's Counterclaims**

Providers ask the Court to grant partial summary judgment against Cigna's Counterclaim for Intentional Interference with Contractual Relations, Violation of California's Unfair Competition Law (UCL), and Restitution Under ERISA. *See generally* Providers' MSJ.

Providers argue that Cigna cannot prove interference with contractual relations because "Providers, as provider-assignees with a direct and legitimate interest in the scope and course of Cigna's conduct under the plans, are not strangers or interlopers to the plans." Providers' MSJ at 4. Providers also argue that Cigna cannot prove violation of California's UCL "because Cigna does not have the required UCL injury in fact." *Id.* at 6. Finally, Providers argue that Cigna cannot prove restitution under ERISA § 502(a)(3) "because Cigna cannot establish that Providers maintain possession over specific funds that Cigna paid them." *Id.* at 7. Cigna responds that Providers have not met their burden to show an absence of genuine disputes of material facts for each claim. Cigna's Opp'n to Providers' MSJ at 6.

**1. Intentional Interference with Contractual Relations**

Intentional interference with contractual relations requires a showing of "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

In its counterclaim, Cigna asserts that Providers intentionally and wrongfully interfered with two distinct contractual relationships: (1) Cigna's contractual relationship with its clients, the employer sponsors of the Plans, as detailed in the ASO Agreements between Cigna and the

Plan sponsors; and (2) Cigna's relationship with Plan members, as detailed in each member's Plan. Dkt. 99 at ¶¶ 83-88, 90. Providers only seek summary judgment on the second claim, that they intentionally interfered with Cigna's contractual relationship with Plan members. Providers' argument is premised entirely on the fact that Providers are assignees and thus parties to the contract with Cigna— as such, they cannot be liable under a theory of contractual interference. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 513-14 (1994) ("[T]he tort cause of action for interference with a contract does not lie against a party to the contract."). Providers' MSJ at 4-6. As discussed above, *see Section* "Assignee Standing," however, genuine disputes of fact exist as to whether Providers are valid assignees for plans with anti-assignment provisions and whether Cigna waived those provisions. Accordingly, the Court DENIES Providers' motion for summary judgment for intentional interference on all claims with anti-assignment provisions.

For those patients where there is no anti-assignment provision in the Plan, Cigna next argues a genuine question of fact exists as to as to the existence and scope of each individual patients' assignment and to whether Plaintiffs are provider assignees. Cigna's Opp'n to Providers' MSJ at 9-11.

For an assignee to have derivative standing under ERISA, the asserted claims must be within the scope of the assignment. *Spinedex*, 770 F.3d at 1289. "To determine the scope of the assignment, a court must look to the language of an ERISA assignment itself." *Creative Care, Inc. v. Connecticut Gen. Life Ins. Co.*, 2017 WL 5635015, at *2 (C.D. Cal. July 5, 2017) (citing *In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012)).

As Cigna notes in opposition, Providers' Motion only provides evidence of six assignments in connection. *See* Cigna's Opp'n to Providers' MSJ at 10. Of those, two only authorize Cigna to make payments to specified entities (Dkts. 138-6, 138-13), while the remaining four grant Providers the right to seek benefit payments in accordance with the Plans. *See* Dkt. 138-19. The Court rejects Cigna's contention that an assignment of the right to receive or pursue benefit payments does not confer derivative standing. An assignment of the right to

receive payment of benefits generally includes the limited right to sue for non-payment [], which empowers a participant or beneficiary to bring a civil action 'to recover benefits due to her under the terms of the plan.'" *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 877 (9th Cir. 2017) (citing *Spinedex*, 770 F.3d at 1297).

The language in the six assignments attached to Providers' motion suffices to confer derivative standing to Providers as provider assignees for the purpose of these claims. The Court therefore GRANTS Providers' motion for summary judgment on Cigna's counterclaim for intentional interference on claims with demonstrated valid assignments.

As to the remaining claims, Providers claim that "Cigna's contention that Providers failed to attach assignments for all exemplar patients is a red herring." Providers' Reply to Cigna's Opp'n at 8. According to Providers, their respective assignments are materially the same for each of their patients, and each confers derivative standing. *Id.* Providers argue that if the other assignments deviated materially from those submitted in this proceeding, Cigna would have raised that issue, so asks the Court to enter an order stating material facts regarding the submitted assignments are not genuinely in dispute and treating them as established pursuant to Fed. R. Civ. P. 56(g). Each Cigna member's plan, however, is unique and Providers must establish assignment of benefits for each Cigna member. Granting summary judgment would be inappropriate based on the evidentiary record before the Court, and the Court DENIES Providers' motion for summary judgment on the remaining claims underlying Cigna's counterclaim for intentional interference.

**2. Violation of California's Unfair Competition Law (UCL)**

Cigna alleges that Providers violated California's UCL by submitting false claims for payment in violation of state and federal law. Dkt. 99, ¶¶ 91-95. Providers seek summary judgment on the grounds that Cigna lacks standing to bring UCL claims on behalf of the self-funded Plans, as Cigna lacks the required injury in fact. Providers' MSJ at 6-7. Cigna responds that even if it does not own the funds it paid Providers, the control it had over those funds confers Cigna standing for a UCL claim. Cigna's Opp'n to Providers' MSJ at 12-13.

As an initial matter, the parties do not dispute that Cigna has standing to bring a UCL claim on behalf of the seven patients with fully-insured Plans, and that their motion is limited to self-funded Plans. *See* Providers' MSJ at 6. The Court confirms here that Cigna's UCL claims related to fully-insured Plans is not resolved here and must be decided at trial.

"To have standing under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F. 3d 955, 959 (9th Cir. 2009); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011). It is undisputed that the payments to Providers in connection with self-funded plans were made from the self-funded customer's assets, not Cigna's assets. Dkt 228 at 9. Providers argue that this fact alone is fatal to Cigna's UCL claim.

Providers point to *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, 2015 WL 12778048, at *21-23 (C.D. Cal. Oct. 23, 2015), where the court found the insurer did not have standing to assert its UCL claim. The court reasoned that a plaintiff does not have standing to assert a UCL claim simply because at some point in time it controlled funds belonging to others. *Id.* In reaching that conclusion, the court carefully considered California courts' analyses of the meaning of "lost money or property." *Id.* While the Court recognizes other courts in this district have since taken a different approach and found control over funds *does* confer UCL standing, and despite the allegations that Cigna is contractually obligated to seek recovery of funds improperly paid out, the Court remains unconvinced that Cigna has adequately demonstrated that it has "lost money or property" for purposes of UCL standing. As in *Almont*, "[t]he fact remains that the funds sought do not belong and never belonged to Cigna." No. CV1403053MWFVBKX, 2015 WL 12778048, at *23. The Court therefore GRANTS Providers' motion for summary judgment on Cigna's UCL counterclaims for self-funded plans.

### 3. Restitution under ERISA

In the final counterclaim challenged by Providers, Cigna seeks restitution through the imposition of an equitable lien by agreement and/or a constructive trust over the funds it paid to Providers, or assets that can be traced from the funds Cigna paid. Dkt. 99 at ¶¶ 97-105.

Providers argue they are entitled to summary judgment on this claim because they cannot establish that Providers currently maintain possession over the specific funds Cigna paid them in connection with patients. Providers' MSJ at 8. Cigna asks the Court to defer ruling on Providers' motion due to discovery disputes between the parties. Cigna's Opp'n to Providers' MSJ at 16-17. In the alternative, Cigna argues that it is seeking specifically identified payments made to Providers in connection with treatment, which is sufficient to satisfy the tracing requirement for the creation of an equitable lien. *Id.*

An equitable lien by agreement requires three elements: "First, there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party. Second, the reimbursement agreement must 'specifically identify] a particular fund, distinct from the [beneficiary's] general assets,' from which the fiduciary will be reimbursed. Third, the funds specifically identified by the fiduciary must be 'within the possession and control of the [beneficiary].'" *Bilyeu*, 683 F. 3d at 1092-93 (9th Cir. 2012) (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363-64 (2006) (internal citations omitted).

Putting aside the parties' discovery dispute, the Court finds sufficient evidence in the record to establish Cigna has met the tracing requirement. Cigna seeks recovery of funds it paid to Providers, which were deposited into Providers' bank accounts. *See, e.g.*, Dkt. 226-12, Ex. 11 to Declaration of Clair Olin (Q: If TML received a check from Cigna, what would TML do with that check? A: It would endorse the back of the check and it would deposit the check into its account. Q: Into one of the two accounts that you've mentioned earlier today? A: Yes). Unlike in *Bilyeu*, where the defendant had spent the funds, Plaintiffs here do not demonstrate that they currently lack possession over the funds, 683 F. 3d at 1094. Cigna seeking the return of particular sums paid to Plaintiffs is adequate here to defeat Plaintiffs' motion, and so the Court DENIES Plaintiffs' motion for summary judgment on Cigna's counterclaim for restitution under ERISA.

**E. Motions in limine**

Plaintiff and Defendants filed several motions in limine before the Court ruled on the parties' cross-motions for summary judgment. As the Court's order here substantially narrows the issues to be resolved at trial, the Court DENIES WITHOUT PREJUDICE all pending motions in limine (Dkts. 287, 290-92, 294-99, 302-08). The parties may renew any motions that remain relevant at a later time by refiling the same motions or seeking leave to file short supplemental briefs in support of the motions.

## IV. DISPOSITION

For the foregoing reasons, the Court:

- GRANTS MultiPlan's motion for summary judgment (Dkt. 139). As no claims remain against them, Defendants MultiPlan, Inc. and Viant, Inc. are dismissed from the lawsuit.
- GRANTS IN PART and DENIES IN PART Cigna's motion for summary judgment (Dkt. 141):
    - DENIES Cigna's motion for summary judgment on all Plaintiffs' ERISA claims, except those for which Cigna made payment before December 31, 2015;
    - DENIES Cigna's motion for summary judgment on Plaintiffs' breach of contract claims;
    - GRANTS IN PART Cigna's motion for summary judgment on Plaintiffs' promissory estoppel claim as to all ERISA plan and time-barred claims and DENIES Cigna's motion as to all other remaining claims; and
    - DENIES Cigna's motion for summary judgment on its counterclaims.
- GRANTS IN PART and DENIES IN PART Providers' motion for summary judgment on Cigna's counterclaims (Dkt. 138):
    - GRANTS Providers' motion for summary judgment on Cigna's counterclaim for intentional interference on claims with demonstrated valid assignments and DENIES the motion for all other claims;
    - GRANTS Providers' motion for summary judgment on Cigna's UCL

counterclaim as to self-funded plans and DENIES the motion as to the extent Providers seek summary judgment on fully-funded plan claims; and

- DENIES Providers' motion for summary judgment on Cigna's counterclaim for restitution under ERISA.

- DENIES WITHOUT PREJUDICE the parties' pending motions in limine (Dkts. 287, 290-92, 294-99, 302-08).

DATED: March 18, 2024

David O. Carter

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE